Zoho Sign Document ID: 3041BA23-SPGY6ZFNCZHNR1Y2GPDSMEXHUM4ISMKEZKTDZE5FC2S

suspicion of any violation. Any Incentive linked to any alleged breach or violation shall become the sole property of Innovative.

6. **PAYMENTS AND ACCOUNT STATEMENTS**

   a. For any transaction that results from Recruiter, its Staff, or Sub-recruiter bringing in a new Limited Partner which becomes approved by Innovative, Innovative will account to Recruiter (or Sub-recruiter, if Innovative has elected to pay or account to the Sub-recruiter directly) for the linked Incentive and the Non-Advance Incentive (if applicable).

   b. Innovative shall provide to Recruiter (or Sub-recruiter if Innovative has elected to pay or account to the Sub-recruiter directly), a monthly statement of account showing any Debit Amounts ("Recruiter Account Statement"). Once a Recruiter or Sub-recruiter is no longer providing services to Innovative, Innovative will provide a Recruiter Account Statement only upon written request.

   c. Recruiter and Sub-recruiter will be deemed to have acknowledged, approved, and consented to the Recruiter Account Statement and the amounts stated therein (e.g., the amount of any Incentive and Non-Advance Incentive (if applicable)), and such Recruiter Account Statement will conclusively bind Recruiter and Sub-recruiter to the stated amounts, and not be subject to any objection for any reason unless the objecting party provides a detailed written objection within thirty (30) days from the date the specific Recruiter Account Statement is provided or made available to Recruiter.

   d. After the passage of thirty (30) days as set forth above in subsection (c), neither Recruiter nor Sub-recruiter, shall have a right: (i) to file or commence any lawsuit, file any lien, or initiate any other proceeding against Innovative or its owners or officers in connection with or relating to the specific Recruiter Account Statement, or (ii) to challenge the payments in the Recruiter Account Statement. If any objection is made after thirty (30) days, Recruiter is solely and exclusively responsible for any disparity, including if any objection is made by a Sub-recruiter.

   e. Any and all rights to challenge the accuracy of anything in the Recruiter Account Statement if not expressly objected to within thirty (30) days is hereby expressly waived.

   f. If a detailed written objection is made timely by Recruiter or Sub-recruiter, and Innovative determines, in its sole discretion, that the objection has merit, Innovative and Recruiter shall use their best efforts to remedy the discrepancy.

   g. In any event, and even if Innovative determines the objection has merit, Innovative shall only be responsible for the amount of the discrepancy, as to each Recruiter Account Statement, up to $5,000. If the discrepancy on a specific Recruiter Account Statement exceeds $5,000, Innovative shall not be liable or responsible for any discrepancy amount over $5,000.

Zoho Sign Document ID: 3041BA23-SPGY6ZFNCZHNR1Y2GPDSMEXHUM4ISMKEZKTDZE5FC2S

## 7. INCENTIVES AND INCENTIVE ADVANCE

a. Recruiter or Sub-recruiter may, in Innovative's sole discretion, receive an Incentive Advance from Innovative or a third party. Innovative or a third-party may charge administrative fees for administering and maintaining accounts associated with the Incentive Advance.

b. If Recruiter or Sub-recruiter receives an Incentive Advance, Innovative may deduct from any account payable to Recruiter or Sub-recruiter (or its affiliates or successors) -- even if the specific account did not receive the Advance -- an amount necessary to repay the Incentive Advance and fees.

c. To the extent Innovative determines that repayment of the Incentive Advance and fees may not be made timely by Recruiter or Sub-recruiter, for any reason — including for an average persistency over 10%, -- Innovative may deduct from any amounts payable to Recruiter or Sub-recruiter (or its affiliates or successors) -- even if the specific account or affiliate/successor did not receive the Advance -- an amount necessary to repay the Incentive Advance and fees.

    1. For the avoidance of doubt, Recruiter and its affiliates and successors are ultimately responsible for the repayment of any Incentive Advance and fees for its or its *Sub-recruiter(s)*, regardless of which account received the advance.

    2. Also, for the avoidance of doubt, Innovative may deduct from any amount or account payable to Recruiter or Sub-recruiter (or its affiliates or successors) – including from a Non-Advance Incentive account or amount payable.

d. Once the Advance Incentive and fees have been repaid in full, if there remains any Incentive money in Recruiter's or Sub-recruiter account or due to Recruiter or Sub-recruiter, Recruiter and/or Sub-recruiter (as applicable) are eligible, at Innovative's discretion, to be paid that remaining Incentive money if Recruiter or Sub-recruiter has vested by providing services under this Agreement to Innovative for 24 consecutive months and is in Good Standing.

## 8. NON-ADVANCE INCENTIVES

a. Recruiter or Sub-recruiter may, in Innovative's sole discretion, receive a Non-Advance Incentive, which will be paid monthly.

b. Innovative may deduct from any Non-Advance Incentive account or amount payable to repay any Advance Incentive owed by Recruiter or Sub-recruiter.

## 9. LIMITATION OF DAMAGES

**Carson Attachment KK, Page 17 of 28**

Zoho Sign Document ID: 3041BA23-SPGY6ZFNCZHNR1Y2GPDSMEXHUM4ISMKEZKTDZE5FC2S

a. Subject to Section 6, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL INNOVATIVE OR ITS OWNERS OR OFFICERS BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, DIRECT, INDIRECT, SPECIAL, PUNITIVE OR OTHER DAMAGES WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATED TO THE PROVISION OF SERVICES UNDER THIS AGREEMENT OR THE PAYMENT OR REPAYMENT OF AN INCENTIVE, INCENTIVE ADVANCE OR A NON-ADVANCE INCENTIVE.  IN NO EVENT SHALL INNOVATIVE BE LIABLE FOR DAMAGE OF ANY KIND, LOSS OF DATA, LOSS OF PROFITS, INTERRUPTION OF BUSINESS, OR OTHER FINANCIAL LOSSES ARISING DIRECTLY OR INDIRECTLY FROM THE PROVISION OF SERVICES UNDER THIS AGREEMENT OR THE PAYMENT OR REPAYMENT OF AN INCENTIVE, INCENTIVE ADVANCE OR A NON-ADVANCE INCENTIVE USE OF THIS PRODUCT. ANY LIABILITY OF INNOVATIVE WILL BE EXCLUSIVELY LIMITED TO $50,000.

## 10. INNOVATIVE'S RIGHT TO INSPECT

Innovative has the right to conduct, at any time and without notice, on-site audits, inspections of books and records (including any electronic records), and inspections of physical business operations of Recruiter and or Sub-recruiter. Innovative may, at its sole discretion, conduct quality calls (e.g., secret shoppers) to monitor Recruiter, its Staff and Sub-recruiter.

## 11. RECRUITER'S OBLIGATIONS TO NOTIFY INNOVATIVE

If Recruiter learns or suspects that it, any of its Staff, or Sub-recruiters violated the terms of this Agreement, Recruiter shall notify Innovative within three (3) calendar days. If Recruiter learns or suspects that a complaint, investigation, regulatory or governmental inquiry exists or is threatened, or there exists an allegation of a violation of any law or regulation in connection with services provided under this Agreement, Recruiter shall notify Innovative within three (3) calendar days. If Recruiter receives information that Recruiter, its Staff, or Sub-Recruiters is planning to or already has granted a lien or assigned any rights to any, it shall notify Innovative immediately.

## 12. ASSIGNMENT

Innovative may freely transfer or assign its rights under this Agreement. Recruiter, its Staff, or Sub-recruiter may not transfer or assign any rights under this Agreement without the prior written consent of Innovative.

## 13. LIMITATION OF AUTHORITY

Except as expressly authorized in this Agreement, Recruiter, its Staff, and Sub-recruiter do not have authority to take any action on behalf of the Innovative.

## 14. INDEMNIFICATION BY RECRUITER

Zoho Sign Document ID: 3041BA23-SPGY6ZFNCZHNR1Y2GPDSMEXHUM4ISMKEZKTDZE5FC2S

Recruiter agrees to fully indemnify and hold Innovative (and its owners and officers) harmless from any and all costs, expenses (including attorneys' fees), damages, judgments, and liability, whether by investigation, fine, penalty, claim, complaint, petition, judgment, settlement or otherwise, of every kind and nature that arises or results by reason of any action or inaction of Recruiter, or its Staff, or Sub-recruiter in connection with providing services under this Agreement ("Proceeding"). Innovative shall have the right to select counsel and defend itself (and control the defense) with regard to any Proceeding, and is entitled to be reimbursed fully by Recruiter for all fees, costs and expenses, fines, penalties, settlements, and damages. This Section is to be interpreted broadly.

## 15. TERMINATION

a. This Agreement may be terminated without cause by Innovative or Recruiter (or Sub-recruiter) with ten (10) days written notice of termination. If the Agreement is terminated without cause, Recruiter and its Sub-recruiter shall retain the right to receive future Incentives if (1) the Recruiter (or Sub-recruiter) has been providing services to Innovative for the preceding two years; and (2) to the extent Recruiter (or Sub-recruiter) does not have a debit balance with Innovative or the third-party advancer at the time of termination. To the extent Recruiter or Sub-recruiter has such a debit balance at the time of termination, Innovative shall be entitled to apply any account payable to Innovative to pay back any Advance.

b. Innovative may immediately terminate the Agreement for cause by sending a written notice to Recruiter (or a Subrecruiter) identifying any breach(es) of this Agreement or any representation or warranty. If the Agreement is terminated for cause, Recruiter (or Subrecruiter): (1) forfeits the right to any future Incentive; (2) forfeits the right to any Non-Advance Incentive; (3) any Debit Balance owed to Innovative or to the third party advancer shall be and is immediately due and payable; and (4) any account payable to Innovative or the advance partner may be used to pay the Debit Balance, even if the Debit Balance is not linked to the accounts payable.

## 16. CONFIDENTIAL INFORMATION

a. Recruiter, its Staff, and Sub-recruiter agree they receive access to confidential information. Recruiter, its Staff, and Sub-recruiter agree to maintain as confidential any "Confidential Information" received pursuant to providing services under this Agreement. "Confidential Information" includes oral and written communications, and the exchange of information and documents, whether in draft or in final form, irrespective of the format or medium by which any information or document is created, maintained, stored, or transmitted. Confidential Information also includes, but is not limited to, DATA, research, opinions, information, documents, technical information, factual summaries, data, interview reports, summaries, analyses, compilations, reports, procedure, tactics, products, programs, methods, systems, price-books, rating tools, know-how, plans or policies, and any information about Potential Limited Partners or Limited

Zoho Sign Document ID: 3041BA23-SPGY6ZFNCZHNR1Y2GPDSMEXHUM4ISMKEZKTDZE5FC2S

Partners, any information contained on Innovative's software platform, and information concerning any benefits or programs approved by Innovative.

b. Recruiter, its Staff, and Sub-recruiter shall keep all Confidential Information confidential and not use, disclose, disseminate, publish, reproduce, or otherwise make available any Confidential Information to any person, firm, corporation, or other entity, except for the purpose of performing services under this Agreement. Recruiter (and/or Sub-recruiter) also agrees to take reasonable steps to ensure that its Staff does not disclose any Confidential Information, including obtaining enforceable contractual commitments not to disclose the information.

c. Recruiter agrees not to directly or indirectly solicit, request, or encourage anyone to cancel a Limited Partnership, or benefit thereof. Recruiter also agrees not to directly or indirectly recruit, sell, market, or cooperate in the recruitment, sale, or marketing to any Limited Partner on any non-Innovative benefit or program while this Agreement is active and for a period of two (2) years from the date of its termination.

d. Any breach of this Agreement, including an actual or threatened imminent disclosure of Confidential Information in violation of the terms of this Agreement, could not be adequately remedied by damages. Therefore, it is agreed that injunctive relief (temporary, preliminary, and permanent) to enforce specifically the terms of this Agreement would be necessary and appropriate.

e. These provisions survive any termination of this Agreement.

## 17. PRIVACY

Recruiter agrees to abide by all applicable privacy laws and regulations and shall have at all times a compliant Privacy Policy. To the extent Recruiter violates any privacy law or regulation, Recruiter is solely responsible for such violation.

## 18. APPLICABLE LAW AND FORUM

This Agreement shall be governed by, interpreted under, and enforced under the laws of the state of Texas, without regard to conflict of laws principles. Any claims arising out of or related to this Agreement or the provision of services hereunder shall be commenced in federal or state court having jurisdiction over Dallas County, Texas. The prevailing party shall be entitled to recover its attorney's fees and costs.

## 19. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement of the Parties to this Agreement regarding the subject matter herein. No amendment, modification, supplement, or waiver of any provision of this Agreement or any rights or obligations of any Party shall be effective, except pursuant to a writing signed by all Parties, and any such amendment, modification, supplement, or waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

Zoho Sign Document ID: 3041BA23-SPGY6ZFNCZHNR1Y2GPDSMEXHUM4ISMKEZKTDZE5FC2S

## 20. SEVERABILITY

If any provision of this Agreement is found or deemed to be invalid or unenforceable by law, then such provision will be deemed stricken from this Agreement, and the remaining provisions of this Agreement will continue in full force and effect.

## 21. NOTICES

To the extent that any provision of this Agreement contemplates or requires a Party to provide notice to any other Party to this Agreement, such notice shall be made effective by emailing and certified U.S. mail.

Notice to Innovative Partnership LP.

2234 N Federal Highway #2862 Boca Raton FL ᵒᵒᵃᵒᵃ contracting@innovativepartnerslp.com

Notice to  True Progress LLC

[ 8101 NW 51st Place Coral]Springs, FL 33067

service@trueprogress.info

## 22. PERSONAL GUARANTEE

To induce and in consideration of Innovative to enter into this Agreement, the undersigned for Recruiter (herein also referred to as "Guarantor") unconditionally, personally, individually, jointly, and severally guarantees the performance of Recruiter and its Sub-recruiter(s) under this Agreement and the payment and repayment of all sums due, including but not limited to the Incentive Advance.

## 23. Effective Date

The effective date of this Agreement shall be the date the last signature required in the signature blocks below is added to this Agreement.

**Innovative Partners LP:**

By:  *Jimmie Sutton*

Printed Name:  Jimmie Sutton

Title:  General Partner

Dated:  Jul 25 2023 10:40 EDT

**RECRUITER and GUARANTOR:**

By:  *Thomas Puglisi Jr*

Printed Name:  Thomas Puglisi Jr

Title:  Manager

Dated:  Jul 26 2023 15:43 EDT

# EXHIBIT "B"

Carson Attachment KK, Page 22 of 28

## Exhibit A
## Innovative Partners LP Recruiter Enrollment Incentive Schedule

Innovative Partners LP aims to enlist Active Limited Partners who will act as committeed stakeholders working towards the overall financial prosperity of the enterprise. To incentivize the recruitment process, Innovative Partners LP will offer the following commissions to it's Recruiters, which will be determined by the premiums paid by Active Limited Partners to join the self-funded Benefit Plan.

| Plan Name | Plan Type | Plan Incentive |
|---|---|---|
| Optimum 1 | Stand-alone | 40% |
| Optimum 2 | Stand-alone | 45% |
| Optimum 3 | Stand-alone | 45% |
| Optimum 4 | Stand-alone | 45% |
| Optimum 5 | Stand-alone | 45% |
| Optimum 6 | Stand-alone | 45% |
| Optimum 7 | Stand-alone | 45% |
| Elite 2 | Stand-alone | 40% |
| Elite 4 | Stand-alone | 40% |
| Elite 6 | Stand-alone | 40% |
| Guardian 5000 | AD&D | 70% |
| Guardian 10000 | AD&D | 70% |
| Guardian 15000 | AD&D | 70% |
| Guardian 20000 | AD&D | 70% |
| Guardian 25000 | AD&D | 70% |
| Guardian 35000 | AD&D | 70% |
| Guardian 50000 | AD&D | 70% |
| Essential 5000 | CI | 60% |
| Essential 10000 | CI | 60% |
| Essential 15000 | CI | 60% |
| Essential 20000 | CI | 60% |
| Essential 25000 | CI | 60% |
| Essential 35000 | CI | 60% |
| Essential 50000 | CI | 60% |
| Dental 1000 | Dental | 40% |
| Dental 3000 | Dental | 40% |
| Dental 5000 | Dental | 40% |
| **Payout Method** | Advance (6 month) | |

IN WITNESS WHEREOF, the parties have executed this Exhibit A as of the date written below.

_____
Recruiter Signature

_____
Recruiter Name

_____
Date

_____
Innovative Partners LP

_____
General Partner Signiature

_____
Date

**Carson Attachment KK, Page 23 of 28**

## Exhibit A
## Innovative Partners LP Recruiter Enrollment Incentive Schedule

Innovative Partners LP aims to enlist Active Limited Partners who will act as committeed stakeholders working towards the overall financial prosperity of the enterprise. To incentivize the recruitment process, Innovative Partners LP will offer the following commissions to it's Recruiters, which will be determined by the premiums paid by Active Limited Partners to join the self-funded Benefit Plan.

| Plan Name | Plan Type | Marketing Fee | Non Comp | Service Fee |
|---|---|---|---|---|
| | | Fee Schedule | | |
| Optimum 1 | Stand-alone | N/A | $10.25 | $25.00 |
| Optimum 2 | Stand-alone | N/A | $10.25 | $25.00 |
| Optimum 3 | Stand-alone | N/A | $10.25 | $25.00 |
| Optimum 4 | Stand-alone | N/A | $10.25 | $25.00 |
| Optimum 5 | Stand-alone | N/A | $10.25 | $25.00 |
| Optimum 6 | Stand-alone | N/A | $10.25 | $25.00 |
| Optimum 7 | Stand-alone | N/A | $10.25 | $25.00 |
| Elite 2 | Stand-alone | N/A | $10.00 | $25.00 |
| Elite 4 | Stand-alone | N/A | $10.00 | $25.00 |
| Elite 6 | Stand-alone | N/A | $10.00 | $25.00 |
| Guardian 5000 | AD&D | $1.00 | $2.50 | N/A |
| Guardian 10000 | AD&D | $1.00 | $2.50 | N/A |
| Guardian 15000 | AD&D | $1.00 | $2.50 | N/A |
| Guardian 20000 | AD&D | $1.00 | $2.50 | N/A |
| Guardian 25000 | AD&D | $1.00 | $2.50 | N/A |
| Guardian 35000 | AD&D | $1.00 | $2.50 | N/A |
| Guardian 50000 | AD&D | $1.00 | $2.50 | N/A |
| Essential 5000 | CI | $1.00 | $2.50 | N/A |
| Essential 10000 | CI | $1.00 | $2.50 | N/A |
| Essential 15000 | CI | $1.00 | $2.50 | N/A |
| Essential 20000 | CI | $1.00 | $2.50 | N/A |
| Essential 25000 | CI | $1.00 | $2.50 | N/A |
| Essential 35000 | CI | $1.00 | $2.50 | N/A |
| Essential 50000 | CI | $1.00 | $2.50 | N/A |
| Dental 1000 | Dental | $0 | $5.00 | N/A |
| Dental 3000 | Dental | $0 | $5.00 | N/A |
| Dental 5000 | Dental | $0 | $5.00 | N/A |

## Payout Method

IN WITNESS WHEREOF, the parties have executed this Exhibit A as of the date written below.

_____   _____   _____

Recruiter Signature                 Recruiter Name                    Date


_____   _____   _____

Innovative Partners LP              General Partner Signature          Date

# EXHIBIT "C"



**May 30, 2025**

**Thomas Puglisi Jr.**
True Progress LLC
8101 NW 51st Place
Coral Springs, FL, 33067

**Subject: Notice of Immediate Termination of the Recruiter Agreement and Demand for Damages**

Dear Mr. Puglisi

We are writing regarding the Recruiter Agreement ("Agreement") dated July 26, 2023, between Innovative Partners, LP ("Innovative") and you, as recruiter and guarantor, on behalf of True Progress LLC ("Recruiter"). Pursuant to Section 15(b) of the Agreement, this letter serves as formal notice of termination for cause. **Because Recruiter has breached the Agreement, Innovative demands payment of Recruiter's total Debit Balance of $975,855.48. Because Innovative is terminating the agreement for cause, the total Debit Balance is due and payable immediately.**

**Recruiter's Breaches of the Agreement**

**Interference with Contractual Relations:** Innovative has learned that Recruiter has leveraged its position to encourage another recruiter to violate the terms of its agreement with Innovative. Specifically, Recruiter has encouraged another recruiter refuse to cooperate in audit procedures requested by Innovative. Recruiter has engaged in this conduct despite Innovative's contractual right to audit Recruiter's business operations at any time. Recruiter is certainly aware of this requirement, as it is a part of Recruiter's Agreement as well (*see* Section 10). Recruiter's conduct constitutes tortious interference with contractual relations under Texas law and violates Section 3 of the Agreement. Recruiter's conduct has caused Innovative damages and Innovative is ready and willing to pursue its legal remedies.

**Failure to Meet Performance Obligations:** In addition, Recruiter materially breached the Agreement because Recruiter's Incentive Advance Account has a persistency above 10% in violation of Section 3(g) of the Agreement. Further, Recruiter is no longer in "good standing" under Section 1(r) of the Agreement for at least the following three additional reasons: (1) Recruiter is no longer providing services to Innovative; (2) the Agreement has been terminated for cause; and (3) Recruiter has not provided services to Innovative for 24 consecutive months. Moreover, as Recruiter knows, Recruiter is responsible and liable for its sub-recruiters failure to perform. Consequently, Recruiter must pay all Debit Balances immediately.

**Carson Attachment KK, Page 26 of 28**



**Provisions Effective Immediately**

The following contractual provisions are now in effect:

**Forfeiture of Incentives:** Recruiter forfeits all rights to any future Incentives or Non-Advance Incentives (as defined in Sections 1(k) and 1(m) of the Agreement).

**Immediate Payment of Debit Balances:** The Debit Balances currently owed to Innovative are immediately due and payable. Any accounts payable through Recruiter's uplines or downlines are immediately due and payable. Under Section 22 of the Agreement, Recruiter personally guarantees "all sums due" from any of its sub-recruiters. As of May 29, 2025, the total amount due and payable is $975,855.48.

**Reservation of Rights**

This termination does not waive or relinquish any rights, claims, defenses, or causes of action that Innovative may hold under the Agreement or applicable law. All such rights are expressly reserved.

**Retention of Documents**

Be aware that, under applicable law, Recruiter is required to maintain any and all electronic or hard copy documents, communications, and electronic data and information which may be relevant to Innovative's claims, including but not limited to, hard drives, databases, web pages, server logs, spreadsheets, correspondence, "chat" messages, including apps such as Telegram, Signal, WhatsApp, e-mail and electronic communications, social media posts, off-line storage or information stored on removable media, information contained on computers (whether business or personal), and network access information. A failure to abide by these requirements may result in penalties against Recruiter, and form the basis of legal claims for spoliation, in the event Innovative is forced to pursue litigation.

**Demand for Damages**

As stated above, Innovative demands payment of the outstanding Debit Balances, which total $975,855.48. Innovative notes that further damages may accrue and reserves its right to seek additional damages. Innovative encourages Recruiter to respond to this letter stating Recruiter's willingness and intention to pay the total amount due. If Recruiter fails to do so, Innovative may take legal action to vindicate its rights without further notice to Recruiter.

**Contact Information**
Should you have any questions or require further clarification, please direct all inquiries to the following:



Josh Spoont
josh@sodhispoont.com
1900 N.W. Corporate Blvd., Ste. 301W
Boca Raton, Florida 33431
(561)576-7770

Sincerely,

Amani Shokry
Innovative Partners, LP

# Carson Attachment
# LL

Case Number: CACE-25-002856 Division: 02
Filing # 217768355 E-Filed 02/27/2025 09:35:07 PM

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

CASE NO:

INNOVATIVE PARTNERS L.P., a Texas limited partnership,

    Plaintiff,

v.

UNITED WAY HEALTH LLC, a Delaware limited liability company; ANTHONY BOTTLEY an individual; NATIONAL ELITE HEALTH LLC, a Delaware limited liability company; CHRISTOPHER MAKULIK an individual; PINNACLE HEALTH SOLUTIONS LLC, a Florida limited liability company; ISAAC VARON an individual; NATIONWIDE HEALTH SOLUTIONS LLC, a Florida limited liability company; and SHAZAD KHAN an individual,

    Defendants.

_____ /

## COMPLAINT

Plaintiff, INNOVATIVE PARTNERS L.P. ("Innovative" or "Plaintiff"), through undersigned counsel, sues Defendants, UNITED WAY HEALTH LLC ("United"), ANTHONY BOTTLEY ("Bottley"), NATIONAL ELITE HEALTH LLC ("National Elite"), CHRISTOPHER MAKULIK ("Makulik"), PINNACLE HEALTH SOLUTIONS LLC ("Pinnacle"), ISAAC VARON ("Varon"), NATIONWIDE HEALTH SOLUTIONS LLC ("Nationwide"), and SHAZAD KHAN ("Khan") (collectively "Defendants"), and alleges as follows:

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 02/27/2025 09:35:05 PM.****

**Carson Attachment LL, Page 1 of 95**

1.      Plaintiff brings this action against Defendants for breach of their respective Agreements and for breach of the personal guarantees made by each natural defendant.  Further, Plaintiff brings this action against Defendants United and Bottley for their improper influence, interference, and assistance with fraudulent activities that have disrupted Innovative's business operations.

## JURISDICTION, PARTIES, AND VENUE

2.      The amount in controversy in this action exceeds $50,000 exclusive of interest, costs, and attorneys' fees, and is therefore within the jurisdiction of this Court.

3.      Plaintiff Innovative is a Texas limited partnership authorized to conduct business in this state, having its principal address in Broward County, at 2234 North Federal Highway, #2862, Boca Raton, Florida 33431.

4.      On information and belief, Defendant Bottley is a *sui juris* individual residing in Broward County, Florida.

5.      Defendant United is a Delaware limited liability company, engaging and conducting business within the State of Florida, and specifically in Broward County where its Managing Member, Bottley, resides.

6.      On information and belief, Defendant Makulik is a *sui juris* individual residing in Broward County, Florida.

7.      Defendant National Elite is a Delaware limited liability company, engaging and conducting business within the State of Florida, and specifically in Broward County where its Managing Member, Makulik, resides.

8.      On information and belief, Defendant Varon is a *sui juris* individual residing in Broward County, Florida.

2

**Carson Attachment LL, Page 2 of 95**

9. At all material times, Defendant Pinnacle was a Florida limited liability company, having its principal place of business at 6750 N Andrews Ave., Suite 200, Fort Lauderdale, Florida 33309.

10. On information and belief, Defendant Khan is a *sui juris* individual residing in Broward County, Florida.

11. At all material times, Defendant Nationwide was a Florida limited liability company, having its principal place of business at 4300 N. University Drive, Suite F-100 #A139, Sunrise, Florida 33351.

12. This Court has personal jurisdiction over Bottley as he is a resident of this State.

13. This Court has personal jurisdiction over Makulik as he is a resident of this State.

14. This Court has personal jurisdiction over Varon as he is a resident of this State.

15. This Court has personal jurisdiction over Khan as he is a resident of this State.

16. This Court has personal jurisdiction over United because (a) United is engaged in substantial and not isolated activity in this State (Fla. Stat. § 48.193(2)), (b) United carries on a business in this State and has an office in this State (Fla. Stat. § 48.193(1)(a)(1)), (c) United breached a contract within this State by failing to repay its debt to Plaintiff in this State (Fla. Stat. § 48.193(1)(a)(7)), and (d) United committed a tortious act within this State (Fla. Stat. § 48.193(1)(a)(2).

17. This court has personal jurisdiction over National Elite because (a) National Elite is engaged in substantial and not isolated activity in this State (Fla. Stat. § 48.193(2)), (b) National Elite carries on a business in this State and has an office in this State (Fla. Stat. § 48.193(1)(a)(1)), and (c) National Elite breached a contract within this State (Fla. Stat. § 48.193(1)(a)(7)).

3

**Carson Attachment LL, Page 3 of 95**

18. This Court has personal jurisdiction over Pinnacle because (a) Pinnacle is engaged in substantial and not isolated activity in this State (Fla. Stat. § 48.193(2)), (b) Pinnacle carries on a business in this State and has an office in this State (Fla. Stat. § 48.193(1)(a)(1)), and (c) Pinnacle breached a contract within this State (Fla. Stat. § 48.193(1)(a)(7)).

19. This Court has personal jurisdiction over Nationwide because (a) Nationwide is engaged in substantial and not isolated activity in this State (Fla. Stat. § 48.193(2)), (b) Nationwide carries on a business in this State and has an office in this State (Fla. Stat. § 48.193(1)(a)(1)), and (c) Nationwide breached a contract within this State (Fla. Stat. § 48.193(1)(a)(7)).

20. Venue is proper in Broward County because (a) Bottley, Makulik, Varon, and Khan reside here, (b) the causes of action alleged herein accrued here, and (c) United, National Elite, Pinnacle, and Nationwide have offices for the transaction of their customary business here.

21. All conditions precedent to this action have been performed, have occurred, or have been waived.

**FACTS**

**A. The Recruiter Agreements**

22. On or about July 28, 2023, Innovative and United executed an agreement (the "United Agreement") whereby United agreed to undertake recruitment efforts on behalf of Innovative. A true and correct copy of the United Agreement is attached hereto as **Exhibit "A."**

23. The remaining corporate defendants[1] executed similar agreements, identical in form and substance:

    a. On or about July 24, 2023, Innovative and Nationwide executed their agreement ("Nationwide Agreement") whereby Nationwide agreed to undertake recruitment

---

[1] Defendants United, Nationwide, National Elite, and Pinnacle are collectively referred to as the "Corporate Defendants."

4

efforts on behalf of Innovative.  A true and correct copy of the Nationwide Agreement is attached hereto as **Exhibit "B."**

b.  On or about September 8, 2023, Innovative and National Elite executed their agreement ("National Elite Agreement") whereby National Elite agreed to undertake recruitment efforts on behalf of Innovative.  A true and correct copy of the National Elite Agreement is attached hereto as **Exhibit "C."**

c.  On or about October 5, 2023, Innovative and Pinnacle executed their agreement ("Pinnacle Agreement" together with the National Elite Agreement, Nationwide Agreement, and United Agreement are collectively referred to as the "Recruiter Agreements") whereby Pinnacle agreed to undertake recruitment efforts on behalf of Innovative.  A true and correct copy of the Pinnacle Agreement is attached hereto as **Exhibit "D."**

24.    Each Corporate Defendant established a call center designed to recruit clients for Innovative's healthcare programs.

25.    Under the Recruiter Agreements, Innovative would advance monies to each Corporate Defendant to facilitate these recruitment efforts.

26.    The sums advanced by Innovative could be offset by health care insurance premiums paid by eligible recruited participants ("Premium Payments").  *See* Recruiter Agreements at ¶ 6(a).

27.    In the absence of any Premium Payments, each Corporate Defendant would remain liable to repay any amounts owed and due to Innovative ("Debit Balance").

5

28.     Each Corporate Defendant represented and warranted that it would maintain a healthy debt-to-renewal ratio not exceeding ten percent (10%) persistency.  *See* Recruiter Agreements at ¶ 3(g).

29.     If Innovative determined that the respective sums advanced would not be timely paid by Corporate Defendants, for any reason, including the debt-to-renewal ratio exceeding ten percent persistency, Innovative could "deduct from any amounts payable to" Corporate Defendants. *See* Recruiter Agreements at ¶ 7(c).

30.     To ensure quality and financial stability, the Recruiter Agreements granted Innovative "the right to conduct, at any time and without, on-site audits, inspections of books and records (including any electronic records), and inspections of physical business operations" for any recruiter working on behalf of Innovative. *See* Recruiter Agreements at ¶ 10.

31.     To remain in good standing, the Corporate Defendants were required to:

   a.   Currently provide services to Innovative;

   b.   Not have their Recruiter Agreement terminated for cause;

   c.   Not be in violation of a law or government regulation; and

   d.   Have provided services to Innovative for the last 24 consecutive months.

*See* Recruiter Agreements at ¶ 1(r).

32.     Failure to comply with a Recruiter Agreement's provisions would constitute a material breach, resulting in for-cause termination of that agreement. *See* Recruiter Agreements at ¶ 4(f).

### B. Default and Termination

33.     Throughout 2024, Corporate Defendants' debts to Innovative began exceeding the rate of renewals from healthcare plan participants.

6

34.     These debt-to-renewal ratios led to Corporate Defendants breaching paragraph 3(g) of the Recruiter Agreements.

35.     Further, because Corporate Defendants are no longer providing services to Innovative, Corporate Defendants are no longer in good standing under the Recruiter Agreements. *See* Recruiter Agreements at ¶ 1(r).

36.     Accordingly, Innovative terminated the Recruiter Agreements for cause:

  a.   Innovative terminated the United Agreement on February 10, 2025;

  b.   Innovative provided written notice of its termination of the Pinnacle Agreement, National Elite Agreement, and Nationwide Agreement on February 13, 2025 ("Letters of Termination").  A true and correct copy of the Letters of Termination are attached hereto as **Composite Exhibit "E."**

37.     Upon a for-cause termination:

[Corporate Defendants] forfeit[] the right to any future Incentive[2], forfeit[] the right to any Non-Advance incentive, any Debit Balance owed to Innovative . . . shall be and is immediately due and payable, any account payable to Innovative . . . may be used to pay the Debit Balance, even if the Debit Balance is not linked to the accounts payable.

*See* Recruiter Agreements at ¶ 15(b).

38.     After applying the applicable Premium Payments, the current Debit Balance due to Innovative from each Corporate Defendant is as follows[3]:

---

[2] *See* Recruiter Agreements at ¶¶ 1(k), (l), and (m).
[3] The current Debit Balance for each Corporate Defendant represents only those sums which were reported to Innovative.  Further, Innovative is incurring the expense of an audit that Innovative believes will reveal higher total debit balances.  Debit balance numbers are subject to change and subject to proof.

7

    a.  United's current Debit Balance is at least: $416,063.60.

    b.  National Elite's current Debit Balance is at least: $489,420.08.

    c.  Nationwide's current Debit Balance is at least: $323,642.80.

    d.  Pinnacle's current Debit Balance is at least: $307,210.49.

### C. Guarantees

39.    To ensure Innovative's repayment:

    a.  Bottley signed the United Agreement individually as a guarantor, to "unconditionally, personally, individually, jointly, and severally guarantee the performance of [United] and its Sub-recruiter(s) under this Agreement and the payment and repayment of all sums due;"

    b.  Khan signed the Nationwide Agreement individually as a guarantor, to "unconditionally, personally, individually, jointly, and severally guarantee the performance of [Nationwide] and its Sub-recruiter(s) under this Agreement and the payment and repayment of all sums due;"

    c.  Makulik signed the National Elite Agreement individually as a guarantor, to "unconditionally, personally, individually, jointly, and severally guarantee the performance of [National Elite] and its Sub-recruiter(s) under this Agreement and the payment and repayment of all sums due;" and

    d.  Varon signed the Pinnacle Agreement individually as a guarantor, to "unconditionally, personally, individually, jointly, and severally guarantee the performance of [RWM] and its Sub-recruiter(s) under this Agreement and the payment and repayment of all sums due."

*See* Recruiter Agreements at ¶ 22.

8

40. Further, Bottley made an oral promise to unconditionally, personally, individually, jointly, and severally guarantee National Elite, Nationwide, and Pinnacle's debts (the "Downline Entities").

41. Bottley's oral promise was made for his direct benefit, being made in exchange for receiving a portion of the Downline Entities' weekly and monthly commissions.

42. In fact, Innovative furnished Bottley a portion of the Downline Entities' weekly and monthly commissions in exchange for Bottley's promise as documented in Innovative's commission portal. Snapshots of Innovative's commission portal are attached hereto as **Composite Exhibit "F."**

43. Plaintiff has retained the undersigned law firm to initiate and maintain this action and is obligated to pay it a reasonable fee for its services in bringing this action, as well as all costs of collection. Plaintiff is entitled to recover its attorneys' fees and costs from Defendants pursuant to paragraph 18 of the Recruiter Agreements.

### D. Interactions With Clients

44. In addition to breaching the United Agreement, United conducted its business in a manner which exposed Innovative to extensive third-party liability.

45. For instance, United misrepresented to one individual that she qualified for an Innovative healthcare policy, despite having a preexisting condition. Innovative's policies did not cover this person's preexisting condition.

46. Despite this, United enrolled this individual in an Innovative policy. Later, on or about February 21, 2024, the individual underwent extensive treatment that, due to the preexisting condition, was not covered by Innovative's policy.

9

**Carson Attachment LL, Page 9 of 95**

47.     When Innovative received the insurance claim for this individual's treatment, Innovative advised that these services were not covered under the insurance plan. But, due to the No Surprises Act, the provider seeks to collect the outstanding medical bills from Innovative.

48.     United's enrollment of an ineligible plan participant exposed Innovative to expenses it otherwise would not have incurred and left Innovative potentially liable for the claimant's $224,500.00 bill.

49.     Next, United's business practices caused multiple recruited clients to file complaints against Innovative with the Department of Insurance ("DOI") resulting in Innovative issuing refunds and incurring both merchant chargeback fees and legal fees:

  a.  On or about August 29, 2023, United enrolled another individual into an Innovative plan. Each month thereafter, the recruited client called United to change the account payment date as certain payment's left the person's account overdrawn. United did not change the account payment date, and the individual continued to receive bank overdraft fees. This resulted in the enrollee filing a DOI complaint against Innovative in July 2024. Innovative incurred legal fees to address the DOI complaint.

  b.  United previously enrolled another person in an Innovative plan. In or around April 2024, the enrollee received treatment while on vacation and submitted a claim to United for coverage. United stated that it would provide a response within six to eight weeks. The enrollee did not receive a response. The person reached out to United again in June 2024. United, again, did not respond. The person waited one month then contacted United in July 2024. United did not resolve the issue, nor did it approve or deny the claim. United's nonresponsiveness, among other things,

10

resulted in the filing of a DOI complaint against Innovative in or around October 2024. Innovative incurred legal fees to address the DOI complaint.

c. On or about September 20, 2024, United enrolled another individual into an Innovative plan. United represented that the individual had thirty days to evaluate the plan and decide to cancel for a full refund. On or about October 6, 2024, the enrollee contacted United to cancel the Innovative policy and receive a refund. Having received no refund confirmation of a pending refund, she contacted United on or about October 10, 2024. United informed her that they would process the refund; however, she received a bank notification of an attempted charge for the insurance policy payment. United's failure to address the requested account termination resulted in a DOI complaint against Innovative. Innovative issued a full refund, resulting in merchant chargeback fees; likewise, Innovative incurred legal fees to address the DOI complaint.

d. United previously enrolled another person in a non-Innovative insurance policy. In or around October 2023, she received dental services. After this, United enrolled her in an Innovative plan. On information and belief, United failed to inform her that she was not an enrolled member of Innovative's plan at the time that she received treatment and submitted her claim for these services. The provider contacted United throughout 2024 seeking to resolve the coverage issue. United failed to address the provider's concerns. Due to United's failure to clarify the enrollee's policy, her provider filed a DOI complaint against Innovative on or about November 15, 2024, for failure to cover services rendered. Innovative incurred legal fees to address the DOI complaint.

11

e. In or around January 2024, United enrolled another person in an Innovative plan. This individual made payments from January 2024 through November 2024. Despite this, United failed to properly service the account to ensure medical bill coverage and otherwise failed to address concerns regarding the account. When the individual did not receive coverage for a November 2024 hospital stay and United failed to respond to her inquiries, she filed a DOI complaint against Innovative on or about December 20, 2024. Innovative incurred legal fees to address the DOI complaint.

f. In or around June 3, 2024, United enrolled another individual into an Innovative insurance plan along with a separate non-Innovative insurance policy. United failed to clarify the individual's benefits which resulted in limited coverage for her medical bills. The individual then canceled her Innovative policy; however, United continued to charge her for the insurance plans. Moreover, she requested reimbursement and United refused. United's conduct resulted in the enrollee filing a DOI complaint against Innovative on or about February 22, 2025. Innovative is now incurring legal fees to address the DOI complaint.

g. United continued to charge the account of an enrollee after the enrollee's death, causing Innovative damages and reputational harm.

50. Additionally, United's conduct exposed Innovative to fees for multiple credit card transactions:

**The Fake Account**

a. On or about December 13, 2024, United created a secondary, fake account for an enrollee in an attempt to repeatedly charge his credit card. The secondary, fake

12

account was created using substantially the same email address the enrollee initially provided to United, only changing the last characters of the email address.

b. Between December 13, 2024 and December 14, 2024, United charged the enrollee's credit card nine times. Innovative's credit card processing merchant only approved one of the attempts. However, the merchant charges Innovative for each credit card transaction, regardless of whether the transaction was ultimately processed.

c. United's conduct exposed Innovative to fees for eight credit card transactions related to the enrollee's account.

51. The United Agreement expressly calls for United to indemnify Innovative from these liabilities:

> [United] agrees to fully indemnify and hold Innovative (and its owners and officers) harmless *from any and all costs, expenses (including attorneys' fees)*, damages, judgments, *and liability*, whether by investigation, fine, penalty, *claim, complaint*, petition, judgment, settlement or otherwise, of every kind and nature *that arises or results by reason of any action or inaction of Recruiter, or its Staff, or Sub-recruiter in connection with providing services under this Agreement* ("Proceeding"). Innovative shall have the right to select counsel and defend itself (and control the defense) with regard to any Proceeding, *and is entitled to be reimbursed fully by Recruiter for all fees, costs and expenses, fines, penalties, settlements, and damages.* This Section is to be interpreted broadly.

*See* United Agreement at ¶ 14.

52. Bottley signed the United Agreement individually as a guarantor binding himself to pay and repay United's due and owing amounts. *See* United Agreement at ¶ 22.

**E. United and Bottley Connections**

13

**Carson Attachment LL, Page 13 of 95**

53.     Having established a business relationship with Innovative for a year and a half, United and Bottley established many relationships and amassed large monetary sums due to Innovative's advancements.

54.     On information and belief, United and Bottley established a relationship with RWM Health and Consulting LLC ("RWM") and its guarantor Robert McCarthy ("McCarthy").  On information and belief, United and Bottley established this relationship with RWM and McCarthy due to their mutual business relationships with Innovative.  RWM and McCarthy likewise had a recruiter agreement with Innovative, identical in form and substance to the Recruiter Agreements here, and were subject to the same contractual obligations as all Defendants in this case ("RWM Agreement").

55.     Innovative had its own concerns relating to repayment of its debts from RWM and McCarthy, and requested an audit of RWM's financial records, which RWM refused.  Within 48 hours of RWM's refusal, RWM erased all Innovative data from its call center computers and absconded with a computer containing Innovative's confidential information.

56.     Innovative has recently learned that RWM and McCarthy employed fraudulent business practices.  Specifically, RWM and McCarthy lied to clients regarding how many monthly payments were required to enroll in Innovative's health care programs.  RWM and McCarthy did this to avoid repaying Innovative.  Innovative advances sums to its recruiters six months at a time, per recruited client.  If a recruited client cancels their policy with Innovative within two months of enrollment, Innovative can "claw back" the excess amounts advanced for that recruited client from its recruiters.  However, if a recruited client pays at least two Premium Payments, then the excess amounts advanced (four months of Premium Payments) would not be recoverable.  RWM and McCarthy lied to potential clients, stating that they would only need to pay two months of Premium

14

Payments in order to enroll in Innovative programs. Consequently, Innovative suffered multiple policy cancellations when they would bill recruited clients for a third month of Premium Payments. RWM and McCarthy employed these tactics to avoid repaying Innovative.

57.    Innovative recently discovered that United and Bottley convinced and encouraged RWM and McCarthy to prohibit Innovative from conducting an audit of its financial records. This refusal was a material breach of paragraph 10 of the recruiter agreement with RWM. *See* Recruiter Agreements at ¶ 10.

58.    On information and belief, United and Bottley knew about RWM and McCarthy's fraudulent business practices, did not inform Innovative about these practices, and are actively assisting in hiding or otherwise attempting to shelter the monies obtained through RWM and McCarthy's fraud along with the sums owed by United.

59.    Innovative additionally discovered that United and Bottley convinced and encouraged RWM and Bottley to abscond with and retain Innovative's confidential business information, including Innovative's entire client list across all call centers, in direct violation of the recruiter agreement with RWM and the United Agreement. *See* Recruiter Agreements at ¶¶ 5 and 11. Innovative's client list took over three years to compile.

60.    On information and belief, United and Bottley pursued these actions with RWM and McCarthy to establish their own business in direct competition with Innovative.

61.    In sum, United and Bottley leveraged their position, Innovative's monetary advances, and Innovative's confidential data to encourage other recruiters to violate the terms of their agreements with Innovative and poach existing and potential clients.

62.    On information and belief, United and Bottley orchestrated these actions by RWM and McCarthy in concert with their own actions to hide money and attempt to fraudulently transfer

15

**Carson Attachment LL, Page 15 of 95**

funds advanced by Innovative into a "homestead" to shield them from creditors, especially Innovative.

## F. United's False Enrollments

63.     As stated, Innovative advanced sums to its recruiters in six-month increments per recruited client, having the ability to recover excess advances funds if a recruited client cancelled their policy within two months of enrollment.   But, if a recruited client made at least two Premium Payments, then Innovative could not recover the excess advanced funds (four months of Premium Payments, per recruited client).

64.     In addition to knowing about, encouraging, and failing to report RWM's fraudulent conduct, United engaged in its own fraudulent business practices.

65.     United has created accounts for and enrolled at least three clients into Innovative policies without their consent.  United enrolled two of these individuals on or about July 2, 2024, and a third individual on or about July 13, 2024.  What is more, on information and belief, United continued to process fraudulent charges under the name of an enrollee that was already deceased.

66.     This conduct resulted in these recruited clients cancelling their policies with Innovative and caused Innovative reputational harm.

67.     On information and belief, United enrolled additional "recruited clients" under the same false pretenses, but has not reported those enrollments to Innovative.

68.     United employed these practices to obtain sum advances that Innovative otherwise would not have furnished.

69.     United's current and previous staff informed Innovative that United and Bottley are attempting to hide these fraudulently obtained advances and transfer the monies into a

16

"homestead" to shield them from creditors, especially Innovative. Accordingly, any demand for civil theft would prove futile.

### COUNT I
### Breach of Contract
### (against United)

70.     Plaintiff incorporates and re-alleges paragraphs 1 through 43 above as though fully set forth herein.

71.     Innovative and United previously entered into the United Agreement.

72.     Under the United Agreement, Innovative would advance monies to United to facilitate recruitment of eligible plan participants for Innovative's programs, and United would repay the sums advanced with Premium Payments received.

73.     United warranted that it would maintain a healthy debt-to-renewal ratio not to exceed ten percent persistency.

74.     To remain in good standing, United was required to: (i) currently provide services to Innovative; (ii) not have the United Agreement terminated for cause; (iii) not be in violation of law or government regulation; (iv) and have provided services to Innovative for the last 24 consecutive months.

75.     United failed to maintain a healthy debt-to-renewal ratio, has not provided services to Innovative for the last 24 consecutive months, and prior to termination, no longer provided services to Innovative.

76.     Innovative terminated the United Agreement for cause on February 10, 2025.

77.     Upon termination for cause "any Debit Balance owed to Innovative . . . shall be and is immediately due and payable." *See* United Agreement at ¶ 15(b).

78.     United's current Debit Balance is at least $416,063.60.

17

**Carson Attachment LL, Page 17 of 95**

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendant, UNITED WAY HEALTH LLC, in an amount equal to the Debit Balance, together with attorneys' fees and costs pursuant to paragraph 18 of the United Agreement, and for such other relief as the Court deems just and proper.

## COUNT II
### Breach of Guarantee
### (against Bottley)

79.     Plaintiff incorporates and re-alleges paragraphs 1 through 43 above as though fully set forth herein.

80.     The United Agreement is a valid contract.

81.     Under the United Agreement, Bottley signed as United's guarantor, agreeing to unconditionally, personally, individually, jointly, and severally guarantee the payment and repayment of all sums due under the United Agreement.

82.     United breached the United Agreement by failing to maintain a healthy debt-to-renewal ratio and failing to remain in good standing, triggering the United Agreement's payment obligations.

83.     United's breaches resulted in Innovative terminating the United Agreement for cause.

84.     As a result of Innovative's for-cause termination, "any Debit Balance owed to Innovative … shall be and is immediately due and payable."

85.     United owes Innovative a Debit Balance of at least $416,063.60.

86.     Bottley is personally liable under the United Agreement for the Debit Balance. *See* United Agreement at ¶ 22.

18

**Carson Attachment LL, Page 18 of 95**

87. Bottley has breached the United Agreement by failing to pay such sums, resulting in damages to Innovative.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendant, ANTHONY BOTTLEY, in an amount equal to the Debit Balance, together with attorneys' fees and costs pursuant to paragraph 18 of the United Agreement, and for such other relief as the Court deems just and proper.

## COUNT III
### Breach of Contract
### (against Nationwide)

88. Plaintiff incorporates and re-alleges paragraphs 1 through 43 above as though fully set forth herein.

89. Innovative and Nationwide previously entered into the Nationwide Agreement.

90. Under the Nationwide Agreement, Innovative would advance monies to Nationwide to facilitate recruitment of eligible plan participants for Innovative's programs, and Nationwide would repay the sums advanced with Premium Payments received.

91. Nationwide warranted that it would maintain a healthy debt-to-renewal ratio not to exceed ten percent persistency.

92. To remain in good standing, Nationwide was required to: (i) currently provide services to Innovative; (ii) not have the Nationwide Agreement terminated for cause; (iii) not be in violation of law or government regulation; and (iv) have provided services to Innovative for the last 24 consecutive months.

93. Nationwide failed to maintain a healthy debt-to-renewal ratio, has not provided services to Innovative for the last 24 consecutive months, and prior to termination, no longer provided services to Innovative.

19

**Carson Attachment LL, Page 19 of 95**

94.     Innovative terminated the Nationwide Agreement for cause on February 13, 2025.

95.     Upon termination for cause "any Debit Balance owed to Innovative . . . shall be and is immediately due and payable." *See* Nationwide Agreement at ¶ 15(b).

96.     Nationwide's current Debit Balance is at least $323,642.80.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendant, NATIONWIDE HEALTH SOLUTIONS LLC, in an amount equal to the Debit Balance, together with attorneys' fees and costs pursuant to paragraph 18 of the Nationwide Agreement, and for such other relief as the Court deems just and proper.

## COUNT IV
### Breach of Guarantee
### (against Khan and Bottley)

97.     Plaintiff incorporates and re-alleges paragraphs 1 through 43 above as though fully set forth herein.

98.     The Nationwide Agreement is a valid contract.

99.     Under the Nationwide Agreement, Khan signed as Nationwide's guarantor, agreeing to unconditionally, personally, individually, jointly, and severally guarantee the payment and repayment of all sums due under the Nationwide Agreement.

100.    Nationwide breached the Nationwide Agreement by failing to maintain a healthy debt-to-renewal ratio and failing to remain in good standing, triggering the Nationwide Agreement's payment obligations.

101.    Nationwide's breaches resulted in Innovative terminating the Nationwide Agreement for cause.

102.    As a result of Innovative's for-cause termination, "any Debit Balance owed to Innovative … shall be and is immediately due and payable."

20

**Carson Attachment LL, Page 20 of 95**

103.    Nationwide owes Innovative a Debit Balance of at least $323,642.80.

104.    Khan is personally liable under the Nationwide Agreement for the Debit Balance. *See* Nationwide Agreement at ¶ 22.

105.    Khan has breached the Nationwide Agreement by failing to pay such sums, resulting in damages to Innovative.

106.    Bottley likewise is personally liable for the Debit Balance due under the Nationwide Agreement.  Bottley made an oral promise to personally, individually, jointly, and severally guarantee the payment and repayment of Nationwide's debts to Innovative in exchange for receiving a portion of the weekly and monthly commissions given to Nationwide.

107.    Innovative agreed to this oral promise and relied on the same by furnishing a portion of Nationwide's weekly and monthly commissions to Bottley.

108.    Bottley has breached this oral guarantee by failing to pay Nationwide's Debit Balance resulting in damages to Innovative.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendants, SHAZAD KHAN and ANTHONY BOTTLEY, in an amount equal to the Debit Balance, together with attorneys' fees and costs pursuant to paragraph 18 of the Nationwide Agreement, and for such other relief as the Court deems just and proper.

## COUNT V
### Breach of Contract
### (against National Elite)

109.    Plaintiff incorporates and re-alleges paragraphs 1 through 43 above as though fully set forth herein.

110.    Innovative and National Elite previously entered into the National Elite Agreement.

21

111. Under the National Elite Agreement, Innovative would advance monies to National Elite to facilitate recruitment of eligible plan participants for Innovative's programs, and National Elite would repay the sums advanced with Premium Payments received.

112. National Elite warranted that it would maintain a healthy debt-to-renewal ratio not to exceed ten percent persistency.

113. To remain in good standing, National Elite was required to: (i) currently provide services to Innovative; (ii) not have the National Elite Agreement terminated for cause; (iii) not be in violation of law or government regulation; and (iv) have provided services to Innovative for the last 24 consecutive months.

114. National Elite failed to maintain a healthy debt-to-renewal ratio, has not provided services to Innovative for the last 24 consecutive months, and prior to termination, no longer provided services to Innovative.

115. Innovative terminated the National Elite Agreement for cause on February 13, 2025.

116. Upon termination for cause "any Debit Balance owed to Innovative . . . shall be and is immediately due and payable." *See* National Elite Agreement at ¶ 15(b).

117. National Elite's current Debit Balance is at least $489,420.08.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendant, NATIONAL ELITE HEALTH LLC, in an amount equal to the Debit Balance, together with attorneys' fees and costs pursuant to paragraph 18 of the National Elite Agreement, and for such other relief as the Court deems just and proper.

**COUNT VI**
**Breach of Guarantee**
**(against Makulik and Bottley)**

22

118. Plaintiff incorporates and re-alleges paragraphs 1 through 43 above as though fully set forth herein.

119. The National Elite Agreement is a valid contract.

120. Under the National Elite Agreement, Makulik signed as National Elite's guarantor, agreeing to unconditionally, personally, individually, jointly, and severally guarantee the payment and repayment of all sums due under the National Elite Agreement.

121. National Elite breached the National Elite Agreement by failing to maintain a healthy debt-to-renewal ratio and failing to remain in good standing, triggering the National Elite Agreement's payment obligations.

122. National Elite's breach resulted in Innovative terminating the National Elite Agreement for cause.

123. As a result of Innovative's for-cause termination, "any Debit Balance owed to Innovative … shall be and is immediately due and payable."

124. National Elite owes Innovative a Debit Balance of at least $489,420.08.

125. Makulik is personally liable under the National Elite Agreement for the Debit Balance. *See* National Elite Agreement at ¶ 22.

126. Makulik has breached the National Elite Agreement by failing to pay such sums, resulting in damages to Innovative.

127. Bottley likewise is personally liable for the Debit Balance due under the National Elite Agreement. Bottley made an oral promise to personally, individually, jointly, and severally guarantee the payment and repayment of National Elite's debts to Innovative in exchange for receiving a portion of the weekly and monthly commissions given to National Elite.

23

128.    Innovative agreed to this oral promise and relied on the same by furnishing a portion of National Elite's weekly and monthly commissions to Bottley.

129.    Bottley has breached this oral guarantee by failing to pay National Elite Debit Balance resulting in damages to Innovative.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendants, CHRISTOPHER MAKULIK and ANTHONY BOTTLEY, in an amount equal to the Debit Balance, together with attorneys' fees and costs pursuant to paragraph 18 of the National Elite Agreement, and for such other relief as the Court deems just and proper.

**COUNT VII**
**Breach of Contract**
**(against Pinnacle)**

130.    Plaintiff incorporates and re-alleges paragraphs 1 through 43 above as though fully set forth herein.

131.    Innovative and Pinnacle previously entered into the Pinnacle Agreement.

132.    Under the Pinnacle Agreement, Innovative would advance monies to Pinnacle to facilitate recruitment of eligible plan participants for Innovative's programs, and Pinnacle would repay the sums advanced with Premium Payments received.

133.    Pinnacle warranted that it would maintain a healthy debt-to-renewal ratio not to exceed ten percent persistency.

134.    To remain in good standing, Pinnacle was required to: (i) currently provide services to Innovative; (ii) not have the Pinnacle Agreement terminated for cause; (iii) not be in violation of law or government regulation; and (iv) have provided services to Innovative for the last 24 consecutive months.

24

135.    Pinnacle failed to maintain a healthy debt-to-renewal ratio, has not provided services to Innovative for the last 24 consecutive months, and prior to termination, no longer provided services to Innovative.

136.    Innovative terminated the Pinnacle Agreement for cause on February 13, 2025.

137.    Upon termination for cause "any Debit Balance owed to Innovative . . . shall be and is immediately due and payable." *See* Pinnacle Agreement at ¶ 15(b).

138.    Pinnacle's current Debit Balance is at least $307,210.49.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendant, PINNACLE HEALTH SOLUTIONS LLC, in an amount equal to the Debit Balance, together with attorneys' fees and costs pursuant to paragraph 18 of the Pinnacle Agreement, and for such other relief as the Court deems just and proper.

### COUNT VIII
### Breach of Guarantee
### (against Varon and Bottley)

139.    Plaintiff incorporates and re-alleges paragraphs 1 through 43 above as though fully set forth herein.

140.    The Pinnacle Agreement is a valid contract.

141.    Under the Pinnacle Agreement, Varon signed as Pinnacle's guarantor, agreeing to unconditionally, personally, individually, jointly, and severally guarantee the payment and repayment of all sums due under the Pinnacle Agreement.

142.    Pinnacle breached the Pinnacle Agreement by failing to maintain a healthy debt-to-renewal ratio and failing to remain in good standing, triggering the Pinnacle Agreement's payment obligations.

25

143. Pinnacle's breaches resulted in Innovative terminating the Pinnacle Agreement for cause.

144. As a result of Innovative's for-cause termination, "any Debit Balance owed to Innovative ... shall be and is immediately due and payable."

145. Pinnacle owes Innovative a Debit Balance of at least $307,210.49.

146. Varon is personally liable under the Pinnacle Agreement for the Debit Balance. *See* Pinnacle Agreement at ¶ 22.

147. Varon has breached the Pinnacle Agreement by failing to pay such sums, resulting in damages to Innovative.

148. Bottley likewise is personally liable for the Debit Balance due under the Pinnacle Agreement. Bottley made an oral promise to personally, individually, jointly, and severally guarantee the payment and repayment of Pinnacle's debts to Innovative in exchange for receiving a portion of the weekly and monthly commissions given to Pinnacle.

149. Innovative agreed to this oral promise and relied on the same by furnishing a portion of Pinnacle's weekly and monthly commissions to Bottley.

150. Bottley has breached this oral guarantee by failing to pay Pinnacle Debit Balance resulting in damages to Innovative.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendants, ISAAC VARON and ANTHONY BOTTLEY, in an amount equal to the Debit Balance, together with attorneys' fees and costs pursuant to paragraph 18 of the Pinnacle Agreement, and for such other relief as the Court deems just and proper.

**COUNT IX**
**Specific Performance**
**(against Corporate Defendants)**

26

**Carson Attachment LL, Page 26 of 95**

151.  Plaintiff incorporates and re-alleges paragraphs 1 through 43 above as though fully set forth herein.

152.  The Parties previously entered into respective Recruiter Agreements, each identical in form and substance.

153.  Under the Recruiter Agreements, Innovative would advance monies to Corporate Defendants to facilitate recruitment of eligible plan participants for Innovative's programs.

154.  Pursuant to the Recruiter Agreements, Innovative has the right to, at any time, with or without notice, conduct an audit of Corporate Defendants' financials.

155.  Corporate Defendants have each consistently underperformed and failed to maintain a healthy debt-to renewal ratio.

156.  The current Debit Balance owed by each Corporate Defendant reflects only that which was reported to Innovative.

157.  Without performing an audit of Corporate Defendants' financial records, as permitted by paragraph 10 of the Recruiter Agreements, Innovative cannot determine if additional sums are due and to be included in the Debit Balances.

158.  Absent conducting an audit of Corporate Defendants' financial records, Innovative has no adequate remedy at law.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendants, UNITED WAY HEALTH LLC, NATIONAL ELITE HEALTH LLC, PINNACLE HEALTH SOLUTIONS LLC, and NATIONWIDE HEALTH SOLUTIONS LLC for specific performance of the Recruiter Agreements, ordering Defendants to allow Plaintiff to audit the financial records, together with attorneys' fees and costs pursuant to paragraph 18 of the Recruiter Agreements, and for such other relief as the Court deems just and proper.

**Carson Attachment LL, Page 27 of 95**

## COUNT X
### Accounting
### (against Corporate Defendants – pled alternatively)

159. Plaintiff incorporates and re-alleges paragraphs 1 through 43 above as though fully set forth herein.

160. The Parties previously entered into complex transactions, the Recruiter Agreements, whereby Innovative would advance monies to Corporate Defendants to recruit eligible participants for Innovative's programs, and Corporate Defendants would repay the advanced sums with their respective Premium Payments received.

161. The nature of this revolving credit line underscores the importance of ascertaining the full amounts owed by Corporate Defendants. The respective Debit Balance for each Corporate Defendant is based upon the financials reported to Innovative.

162. Corporate Defendants each failed to maintain a healthy debt-to-renewal ratio. It is undetermined whether Corporate Defendants provided the full and accurate amount of debts they have incurred. Therefore, the true and full amounts due to Innovative is solely within the knowledge of Corporate Defendants and cannot be calculated without an accounting.

163. Without an accounting, a remedy at law is inadequate.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendants, UNITED WAY HEALTH LLC, NATIONAL ELITE HEALTH LLC, PINNACLE HEALTH SOLUTIONS LLC, and NATIONWIDE HEALTH SOLUTIONS LLC for an accounting of all transactions related to the Recruiter Agreements and impacting the Debit Balances, and for such other relief as the Court deems just and proper.

## COUNT XI
### Indemnification
### (against United and Bottley)

28

164. Plaintiff incorporates and re-alleges paragraphs 1 through 52 above as though fully set forth herein.

165. Innovative and United previously entered into the United Agreement.

166. Pursuant to the United Agreement, United agreed to fully indemnify and hold Innovative harmless from any and all costs, expenses, including attorneys' fees, damages, judgments and liability, whether by investigation, fine, penalty, claim, complaint, petition, judgment, settlement or otherwise, of every kind and nature that arises or results by reason of any action or inaction of United, or its staff in connection with providing services under the United Agreement. *See* United Agreement at ¶ 14.

167. Pursuant to the indemnification clause, Innovative must be reimbursed fully by United for all fees, costs and expenses, fines, penalties, settlements, and damages. *See* United Agreement at ¶ 14.

168. United's acts and omissions consistently exposed Innovative to third-party liability by:

    a. Carelessly enrolling ineligible plan participants in Innovative's plan, resulting in Innovative remaining liable for coverage under the No Surprises Act;

    b. Failing to report or adequately address coverage claims, and continuing to charge clients after cancellation, resulting in Innovative having six DOI complaints filed against it and incurring vast legal fees to address said complaints;

    c. Creating a secondary, fake account for one client and processing the client's credit card nine times, leaving Innovative to cover the merchant credit card charges for eight invalid charges;

29

Carson Attachment LL, Page 29 of 95

169.    United has further breached the indemnification clause in the United Agreement by failing to reimburse Innovative for these liabilities.

170.    Pursuant to the indemnification clause, United is liable for the above-referenced acts and omissions. Therefore, Innovative cannot be at fault.

171.    Bottley signed the United Agreement individually as a guarantor binding himself to pay and repay the amounts due by United. *See* United Agreement at ¶ 22.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendants, UNITED WAY HEALTH LLC and ANTHONY BOTTLEY for damages in an amount to be determined by the Court, and for such other relief as the Court deems just and proper.

## COUNT XII
### Tortious Interference With a Contractual Right
### (against United and Bottley)

172.    Plaintiff incorporates and re-alleges paragraphs 1 through 21, 30, and 53 through 62 above as though fully set forth herein.

173.    Plaintiff and RWM entered into the RWM Agreement on or about August 25, 2023.

174.    The RWM Agreement is identical in form and substance to the Recruiter Agreements.

175.    United and Bottley were not parties to the RWM Agreement.

176.    On information and belief, United and Bottley formed a relationship with RWM and McCarthy through their mutual connection with Innovative.

177.    Through these relationships, United and Bottley were aware of and had knowledge of the RWM Agreement.

178.    As the RWM Agreement is identical in form and substance to the Recruiter Agreements, RWM was subject to the same contractual obligations as United and Bottley.

30

179.    Innovative recently discovered that United and Bottley convinced and encouraged RWM and McCarthy to refuse to permit Innovative to conduct a requested audit of RWM's financial records.  RWM and McCarthy's refusal was a material breach of paragraph 10 of the recruiter agreement with RWM. *See* Recruiter Agreements at ¶ 10.

180.    Innovative also discovered that United and Bottley encouraged and convinced RWM and Bottley to abscond with and retain Innovative's confidential business information, including Innovative's entire client list across all call centers, in direct violation of the recruiter agreement with RWM and the United Agreement.  Innovative's client list took over three years to compile. *See* Recruiter Agreements at ¶¶ 5 and 11.

181.    These unjustified acts, condoned and encouraged by United and Bottley, resulted in Innovative terminating the RWM Agreement for cause.  There is no privilege reserved in the United Agreement or otherwise, which permitted United and Bottley's actions.

182.    On information and belief, United and Bottley pursued these actions with RWM and McCarthy intending to establish their own business in direct competition with Innovative.

183.    United and Bottley leveraged their position, Innovative's monetary advances, and Innovative's confidential data to encourage other recruiters to violate the terms of their agreements with Innovative and poach existing and potential clients.

184.    As a result of United and Bottley's interference, Innovative: (i) terminated its contract with RWM; (ii) cannot determine the amounts due by RWM as a result of the audit being refused (at United and Bottley's directive); and (iii) lost all sources of confidential client and business information stored within the computers at the RWM call center.

185.    As a result, Innovative has suffered damages.

31

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendants, UNITED WAY HEALTH LLC and ANTHONY BOTTLEY for damages in an amount to be determined by the Court, and for such other relief as the Court deems just and proper.

## COUNT XIII
### Fraud
**(against United and Bottley – pled alternatively)**

186. Plaintiff incorporated and re-alleges paragraphs 1 through 21 and 53 through 69 above as though fully set forth herein.

187. United and Bottley entered into the United Agreement with Innovative on July 28, 2023.

188. At that time, in or around July 2023, Bottley, on behalf of United, represented to Plaintiff's general partner, Jimmie Sutton, that they would use funds advanced by Innovative for the sole purpose of securing healthcare plan participants in Innovative's health care programs. Said representations were made orally and partly memorialized in the United Agreement.

189. Around the same time, Bottley, on behalf of United, further represented both orally and in writing that the advanced funds would be repaid with Premium Payments, and in the absence of Premium Payments, by United and Bottley.

190. United and Bottley made these representations to induce Plaintiff to advance funds to them.

191. United and Bottley knew, or reasonably should have known, that these representations were false.

192. Relying on United and Bottley's representations, Innovative entered the United Agreement and advanced large amounts of funds to United believing that Innovative would be repaid.

32

193.    As it turned out, the United Agreement was nothing more than an artifice for United and Bottley to engage in their fraudulent conduct.

194.    United and Bottley never intended to use the advanced sums for securing plan participants for Innovative's health care programs and never intended to fulfill their duties under the United Agreement.

195.    In fact, United created false accounts for and enrolled at least three individuals into Innovative's policies without their consent.  Enrollment for two of these individuals occurred on or about July 2, 2024, and enrollment for the third individual occurred on or about July 13, 2024.

196.    This conduct resulted in these "recruited clients" cancelling their policies with Innovative.

197.    On information and belief, United and Bottley falsely enrolled these individuals upon discovering that Innovative could not obtain the excess funds advanced to United if the recruited clients remained enrolled for at least two months.

198.    On information and belief, United has enrolled additional "recruited clients" under the same false pretenses that remain unreported to Innovative.

199.    United employed these tactics to obtain advanced funds that Innovative otherwise would not have furnished.

200.    United's current and previous staff informed Innovative that United and Bottley are attempting to hide these fraudulently obtained advances and transfer the monies into a "homestead" to shield them from creditors, especially Innovative.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendants, UNITED WAY HEALTH LLC and ANTHONY BOTTLEY for (a) damages in an amount to be determined by the Court, (b) the imposition of an equitable lien on the funds owed,

33

any assets or real property acquired with the funds, and for such other relief as the Court deems just and proper.

## COUNT XIV
### Civil Theft – Fla. Stat. §§ 812.014 and 772.11
### (against United and Bottley)

201. Plaintiff incorporates and re-alleges paragraphs 1 through 21 and 53 through 69 above as though fully set forth herein.

202. This is an action for civil theft, pursuant to Fla. Stat. § 772.11, against United and Bottley, resulting from their misappropriation and obtaining of money through false pretenses in violation of Fla. Stat. § 812.014(1) in the following manner:

    a. Knowingly obtaining or using, or endeavoring to obtain or use, the property of another with intent to, either temporarily or permanently deprive the other person of a right to the property or a benefit from the property.

    b. Knowingly obtaining or using, or endeavoring to obtain or use, the property of another with intent to, either temporarily or permanently appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

203. Pursuant to Fla. Stat. § 772.11, Innovative may recover threefold the actual damages sustained, along with reasonable attorneys' fees and court costs. Innovative also has a cause of action for the imposition of an equitable lien on the funds stolen.

204. United's current and previous staff recently informed Innovative that United and Bottley are attempting to hide these fraudulently obtained advances and transfer the monies into a "homestead" to shield them from creditors, especially Innovative. Accordingly, any demand for civil theft would prove futile.

34

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendants, UNITED WAY HEALTH LLC and ANTHONY BOTTLEY for (a) treble damages, (b) the imposition of an equitable lien on the funds owed, any assets or real property acquired with the funds, and for such other relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

Date: February 27, 2025                    Respectfully submitted,

**SODHI SPOONT PLLC**
3050 Biscayne Boulevard, Suite 701
Miami, Florida 33137
Tel: (305) 907-7573

By: */s/ Joshua L. Spoont*
    Joshua L. Spoont
    Florida Bar No. 53263
    josh@sodhispoont.com
    michelle@sodhispoont.com
    Mauricio A. Torres
    Florida Bar No. 1059067
    mauricio@sodhispoont.com
    service@sodhispoont.com
    *Counsel for Plaintiff*

35

# EXHIBIT "A"

Zoho Sign Document ID: 3041BA23-X3XGUWURJZH4LJXLMTLRZVKJO5FULNYX2DB1T3TJWSW

## Agreement

This Agreement ("Agreement") is among and between Innovative Partners LP, a Texas limited partnership, ("Innovative") and United Way Health ("Recruiter"), and potentially certain sub-recruiters as set forth on the signature page (collectively, "the "Parties").

1. **DEFINITIONS**

   a. Innovative – Innovative Partners LP ("Partnership").

   b. Recruiter – [932355285        ], a[  LLC                              ] that recruits Limited Partners for the Partnership and provides Innovative's programs or benefits to Limited Partners.

   c. Sub-recruiter – an individual, company, or business that recruits Limited Partners for the Partnership, subject to a separate contract with Recruiter. A Sub-recruiter must sign this Agreement and acts as the agent of Recruiter, and Recruiter acts as the principal. Sub-recruiter is bound by this Agreement to the same extent as is Recruiter.

   d. Prospective Limited Partner – an individual who is interested in becoming a Limited Partner in the Partnership.

   e. Active Limited Partner – an individual who has agreed to join the Partnership as a Limited Partner and who has agreed to (1) allow DATA to be collected and used by the Partnership, and (2) agrees to use the Internet at least 500 hours a year.

   f. Inactive Limited Partner -- an individual who has agreed to join the Partnership as a Limited Partner and who has agreed to make a capital contribution to the Partnership in an amount determined by Innovative.

   g. Limited Partner – an Active Limited Partner or an Inactive Limited Partner.

   h. DATA – (1) any Internet information collected from a Limited Partner from their digital device or devices and (2) any information collected or obtained by Recruiter, its Staff, or Sub-recruiter from or about any Prospective Limited Partner or Limited Partner, and any lead provide to Recruiter, its Staff or Sub-recruiter.

   i. Debit Balance – the amounts owed by Recruiter or Sub-recruiter to Innovative or to an Advance Partner.

   j. Product List and Incentive Schedule – the Schedule attached as Exhibit A to this Agreement and any amendments. Innovative may amend the Product List and Incentive Schedule with ten (10) days written notice to Recruiter. Recruiter is solely responsible for informing any Staff or Sub-recruiter of any amendment.

Page 1 of 10

**Carson Attachment LL, Page 37 of 95**

Zoho Sign Document ID: 3041BA23-X3XGUWURJZH4LJXLMTLRZVKJO5FULNYX2DB1T3TJWSW

k.  Incentive – the payment made to Recruiter or Sub-recruiter according to the then-current and approved Product List and Incentive Schedule for a payment linked to an approved Limited Partner whose payment has been received by Innovative.

l.  Advance Incentive – a lump sum of money paid out to Recruiter or Sub-recruiter by Innovative or an advance partner before the receipt of the Incentive, which otherwise would be paid monthly.

m.  Advance Partner – an entity that advances to or purchases commissions from Recruiter or Sub-recruiter pursuant to a commission advance or commission purchase agreement.

n.  Non-Advance Incentive—a fixed amount of money that may, in Innovative's sole discretion, be paid to Recruiter or Sub-recruiter on a monthly basis, separate from any other incentive.  The Non-Advance incentive is not eligible for an Advance but may be used to repay the Advance.

o.  Staff – employees, contractors, vendors, or others who provide services for Recruiter.

p.  Staff Agreement – a contract between Recruiter and its Staff or Sub-recruiter and its Staff that expressly requires Staff to abide by and accept Innovative's policies, rules, and other provisions as set for in this Agreement.

q.  Limited Partnership Materials – the Limited Partner Joinder Agreement, enrollment forms, and application materials which must be signed and approved by Innovative before anyone can become a Limited Partner.

r.  Good Standing – A Recruiter, its Staff, or Sub-recruiter is in Good Standing if (i) they are currently providing services to Innovated under this Agreement and/or a Staff Agreement (as applicable); (ii) no applicable contract has been terminated for cause; (iii) they are not in violation of the law or government regulation; (iv) they are not alleged to be in breach of Innovative's rules or policies, and (v) the Recruiter or Sub-recruiter has been providing services to Innovative for the last 24 consecutive months.

2.  **RECRUITING NEW LIMITED PARTNERS**

a.  Recruiter shall recruit Active and Inactive Limited Partners.  Once a Potential Limited Partner indicates a desire to become a Limited Partner, the Potential Limited Partner must sign the Limited Partnership Materials.  Recruiter shall ensure that the Limited Partnership Materials are completed by the Potential Limited Partner fully and truthfully.  Thereafter, Recruiter shall submit the completed Limited Partnership Materials to Innovative for approval.

b.  Recruiter is not authorized to make, in writing, verbally, or otherwise, any statement or representation of any kind guaranteeing that any Potential Limited Partner will be accepted as a Limited Partner or will be issued any benefit or