Zoho Sign Document ID: 3041BA23-X3XGUWURJZH4LJXLMTLRZVKJO5FULNYX2DB1T3TJWSW

program (as applicable) unless or until the Limited Partnership Materials have been reviewed and approved by Innovative and a Partnership certificate is issued. Recruiter shall not market or sell any health benefit program to any Potential Limited Partner while that Potential Limited Partner's Limited Partnership Materials are pending approval from Innovative or is a Limited Partner.

c.  Recruiter shall not request the payment in any manner from any Potential Limited Partner or Limited Partner for any fee, dues, or otherwise, directly or indirectly, unless and until expressly authorized by Innovative. Any payment made by any Potential Limited Partner or Limited Partner, for any reason, including fees, dues, or other otherwise, shall be promptly delivered or transited to Innovative.

d.  If Recruiter, its Staff, or Sub-recruiter is contacted by a Potential Limited Partner or Limited Partner seeking to cancel his or her partnership or transaction, Recruiter, Staff, or Sub-recruiter will promptly refer the Potential Limited Partner or Limited Partner to Innovative Partner Services.

e.   If Innovative determines that any Recruiter, Staff, or Sub-recruiter sold or marketed any benefit or product to a Potential Limited Partner that the  Limited Partner or Innovative later decides was not appropriate, Innovative, and not Recruiter, Staff or Sub-recruiter, shall have the right, in its sole discretion, to move the Limited Partner to a different benefit or program, and any incentive or other payment due to Recruiter, Staff or Sub-recruiter shall be transferred to and belong to Innovative.

## 3.  RECRUITER'S REPRESENTATIONS AND WARRANTIES

a.  Recruiter represents and warrants it will not, and will not allow any of Staff or Sub-recruiter to use or employ any unethical or illegal means to prevent or delay any Potential Limited Partner or Limited Partner to terminate or cancel any transaction.

b.  Recruiter represents and warrants that it, its Staff, and Sub-recruiter will ensure that all Limited Partnership Materials are completed by the Potential Limited Partner fully and truthfully.

c.  Recruiter represents and warrants it will not allow any Staff or Sub-recruiter to use Innovative's business name, trademark, or service mark without Innovative's prior express approval.

d.  Recruiter represents and warrants that all Staff have signed a Staff Agreement.

e.  Recruiter represents and warrants it, its Staff, and Sub-recruiter will comply with all applicable state, federal, and local laws and regulations, including but not limited to complying with the Telephone Consumer Protection Act ("TCPA"), maintaining an internal DO NOT CALL (DNC) list, and ensuring that no leads are generated from either pre-recorded solicitation calls or using an auto-dialer.

Zoho Sign Document ID: 3041BA23-X3XGUWURJZH4LJXLMTLRZVKJO5FULNYX2DB1T3TJWSW

f.  Recruiter and Sub-recruiter represent and warrant that each has a compliant privacy policy, and that both will follow all applicable rules, regulations, and laws regarding privacy.

g.  Recruiter and Sub-recruiter represent and warrant that no Incentive Advance account will have a persistency above 10%.

## 4.  STAFF AND SUB-RECRUITERS

a.  All Recruiter's (and Sub-recruiter's) Staff who provide services to Innovative shall sign a Staff Agreement. Only those who have signed the Staff Agreement will be authorized by Innovative to provide services under this Agreement.

b.  Recruiter is responsible and liable for the actions and inactions of Staff and Sub-recruiter

c.  Recruiter is solely responsible for training Staff and Sub-recruiter. All training materials must be submitted to, and approved by, Innovative: (1) at least yearly; (2) at the start of any new marketing or program release; and (3) at Innovative's request, in its sole discretion.

d.  Recruiter shall be solely responsible for all costs and expenses incurred for training, hiring, and officing its Staff, or Sub-recruiter when providing services under this Agreement. Innovative will not reimburse Recruiter or Sub-recruiter for any operating costs or expenses.

e.  Staff must be officed at Recruiter's or Sub-recruiter's location. Staff may not provide services to Innovative remotely or from their home.

f.  Recruiter must ensure that all Staff and Sub-recruiter comply with the terms of this Agreement, the Staff Agreement, Innovative's policies and procedures, and all applicable laws and regulations. Failure to do so will be a material breach of this Agreement and will result in termination for cause as set forth in Section 15(b).

## 5.  DATA

a.  Recruiter, Staff, and Sub-recruiter may be provided or may obtain DATA. Any such DATA is the property of, and owned by, Innovative. The DATA is Confidential Information, as set forth in Section 16. Recruiter, Staff, and Sub-recruiter may not use any DATA unless performing services under this Agreement. To avoid all doubt, Recruiter, Staff, and Sub-recruiter shall not use any DATA for any other purpose, including working on its or their own, or working for a third party.

b.  If Recruiter, its Staff, or Sub-recruiter is alleged to have violated any law or regulation, or breaches or is alleged to have breached this Agreement in any way, all DATA provided to or obtained by the alleged violator shall be turned over to Innovative immediately, and no less than two (2) days after knowledge or

Page 4 of 10

Zoho Sign Document ID: 3041BA23-X3XGUWURJZH4LJXLMTLRZVKJO5FULNYX2DB1T3TJWSW

suspicion of any violation. Any Incentive linked to any alleged breach or violation shall become the sole property of Innovative.

6. **PAYMENTS AND ACCOUNT STATEMENTS**

   a. For any transaction that results from Recruiter, its Staff, or Sub-recruiter bringing in a new Limited Partner which becomes approved by Innovative, Innovative will account to Recruiter (or Sub-recruiter, if Innovative has elected to pay or account to the Sub-recruiter directly) for the linked Incentive and the Non-Advance Incentive (if applicable).

   b. Innovative shall provide to Recruiter (or Sub-recruiter if Innovative has elected to pay or account to the Sub-recruiter directly), a monthly statement of account showing any Debit Amounts ("Recruiter Account Statement"). Once a Recruiter or Sub-recruiter is no longer providing services to Innovative, Innovative will provide a Recruiter Account Statement only upon written request.

   c. Recruiter and Sub-recruiter will be deemed to have acknowledged, approved, and consented to the Recruiter Account Statement and the amounts stated therein (e.g., the amount of any Incentive and Non-Advance Incentive (if applicable)), and such Recruiter Account Statement will conclusively bind Recruiter and Sub-recruiter to the stated amounts, and not be subject to any objection for any reason unless the objecting party provides a detailed written objection within thirty (30) days from the date the specific Recruiter Account Statement is provided or made available to Recruiter.

   d. After the passage of thirty (30) days as set forth above in subsection (c), neither Recruiter nor Sub-recruiter, shall have a right: (i) to file or commence any lawsuit, file any lien, or initiate any other proceeding against Innovative or its owners or officers in connection with or relating to the specific Recruiter Account Statement, or (ii) to challenge the payments in the Recruiter Account Statement. If any objection is made after thirty (30) days, Recruiter is solely and exclusively responsible for any disparity, including if any objection is made by a Sub-recruiter.

   e. Any and all rights to challenge the accuracy of anything in the Recruiter Account Statement if not expressly objected to within thirty (30) days is hereby expressly waived.

   f. If a detailed written objection is made timely by Recruiter or Sub-recruiter, and Innovative determines, in its sole discretion, that the objection has merit, Innovative and Recruiter shall use their best efforts to remedy the discrepancy.

   g. In any event, and even if Innovative determines the objection has merit, Innovative shall only be responsible for the amount of the discrepancy, as to each Recruiter Account Statement, up to $5,000. If the discrepancy on a specific Recruiter Account Statement exceeds $5,000, Innovative shall not be liable or responsible for any discrepancy amount over $5,000.

Zoho Sign Document ID: 3041BA23-X3XGUWURJZH4LJXLMTLRZVKJO5FULNYX2DB1T3TJWSW

## 7. INCENTIVES AND INCENTIVE ADVANCE

a. Recruiter or Sub-recruiter may, in Innovative's sole discretion, receive an Incentive Advance from Innovative or a third party. Innovative or a third-party may charge administrative fees for administering and maintaining accounts associated with the Incentive Advance.

b. If Recruiter or Sub-recruiter receives an Incentive Advance, Innovative may deduct from any account payable to Recruiter or Sub-recruiter (or its affiliates or successors) -- even if the specific account did not receive the Advance -- an amount necessary to repay the Incentive Advance and fees.

c. To the extent Innovative determines that repayment of the Incentive Advance and fees may not be made timely by Recruiter or Sub-recruiter, for any reason — including for an average persistency over 10%, -- Innovative may deduct from any amounts payable to Recruiter or Sub-recruiter (or its affiliates or successors) -- even if the specific account or affiliate/successor did not receive the Advance -- an amount necessary to repay the Incentive Advance and fees.

1. For the avoidance of doubt, Recruiter and its affiliates and successors are ultimately responsible for the repayment of any Incentive Advance and fees for its or its *Sub-recruiter(s)*, regardless of which account received the advance.

2. Also, for the avoidance of doubt, Innovative may deduct from any amount or account payable to Recruiter or Sub-recruiter (or its affiliates or successors) – including from a Non-Advance Incentive account or amount payable.

d. Once the Advance Incentive and fees have been repaid in full, if there remains any Incentive money in Recruiter's or Sub-recruiter account or due to Recruiter or Sub-recruiter, Recruiter and/or Sub-recruiter (as applicable) are eligible, at Innovative's discretion, to be paid that remaining Incentive money if Recruiter or Sub-recruiter has vested by providing services under this Agreement to Innovative for 24 consecutive months and is in Good Standing.

## 8. NON-ADVANCE INCENTIVES

a. Recruiter or Sub-recruiter may, in Innovative's sole discretion, receive a Non-Advance Incentive, which will be paid monthly.

b. Innovative may deduct from any Non-Advance Incentive account or amount payable to repay any Advance Incentive owed by Recruiter or Sub-recruiter.

## 9. LIMITATION OF DAMAGES

Zoho Sign Document ID: 3041BA23-X3XGUWURJZH4LJXLMTLRZVKJO5FULNYX2DB1T3TJWSW

a. Subject to Section 6, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL INNOVATIVE OR ITS OWNERS OR OFFICERS BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, DIRECT, INDIRECT, SPECIAL, PUNITIVE OR OTHER DAMAGES WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATED TO THE PROVISION OF SERVICES UNDER THIS AGREEMENT OR THE PAYMENT OR REPAYMENT OF AN INCENTIVE, INCENTIVE ADVANCE OR A NON-ADVANCE INCENTIVE.  IN NO EVENT SHALL INNOVATIVE BE LIABLE FOR DAMAGE OF ANY KIND, LOSS OF DATA, LOSS OF PROFITS, INTERRUPTION OF BUSINESS, OR OTHER FINANCIAL LOSSES ARISING DIRECTLY OR INDIRECTLY FROM THE PROVISION OF SERVICES UNDER THIS AGREEMENT OR THE PAYMENT OR REPAYMENT OF AN INCENTIVE, INCENTIVE ADVANCE OR A NON-ADVANCE INCENTIVE USE OF THIS PRODUCT. ANY LIABILITY OF INNOVATIVE WILL BE EXCLUSIVELY LIMITED TO $50,000.

## 10. INNOVATIVE'S RIGHT TO INSPECT

Innovative has the right to conduct, at any time and without notice, on-site audits, inspections of books and records (including any electronic records), and inspections of physical business operations of Recruiter and or Sub-recruiter. Innovative may, at its sole discretion, conduct quality calls (e.g., secret shoppers) to monitor Recruiter, its Staff and Sub-recruiter.

## 11. RECRUITER'S OBLIGATIONS TO NOTIFY INNOVATIVE

If Recruiter learns or suspects that it, any of its Staff, or Sub-recruiters violated the terms of this Agreement, Recruiter shall notify Innovative within three (3) calendar days. If Recruiter learns or suspects that a complaint, investigation, regulatory or governmental inquiry exists or is threatened, or there exists an allegation of a violation of any law or regulation in connection with services provided under this Agreement, Recruiter shall notify Innovative within three (3) calendar days. If Recruiter receives information that Recruiter, its Staff, or Sub-Recruiters is planning to or already has granted a lien or assigned any rights to any, it shall notify Innovative immediately.

## 12. ASSIGNMENT

Innovative may freely transfer or assign its rights under this Agreement. Recruiter, its Staff, or Sub-recruiter may not transfer or assign any rights under this Agreement without the prior written consent of Innovative.

## 13. LIMITATION OF AUTHORITY

Except as expressly authorized in this Agreement, Recruiter, its Staff, and Sub-recruiter do not have authority to take any action on behalf of the Innovative.

## 14. INDEMNIFICATION BY RECRUITER

Page 7 of 10

Zoho Sign Document ID: 3041BA23-X3XGUWURJZH4LJXLMTLRZVKJO5FULNYX2DB1T3TJWSW

Recruiter agrees to fully indemnify and hold Innovative (and its owners and officers) harmless from any and all costs, expenses (including attorneys' fees), damages, judgments, and liability, whether by investigation, fine, penalty, claim, complaint, petition, judgment, settlement or otherwise, of every kind and nature that arises or results by reason of any action or inaction of Recruiter, or its Staff, or Sub-recruiter in connection with providing services under this Agreement ("Proceeding"). Innovative shall have the right to select counsel and defend itself (and control the defense) with regard to any Proceeding, and is entitled to be reimbursed fully by Recruiter for all fees, costs and expenses, fines, penalties, settlements, and damages. This Section is to be interpreted broadly.

### 15. TERMINATION

a.  This Agreement may be terminated without cause by Innovative or Recruiter (or Sub-recruiter) with ten (10) days written notice of termination. If the Agreement is terminated without cause, Recruiter and its Sub-recruiter shall retain the right to receive future Incentives if (1) the Recruiter (or Sub-recruiter) has been providing services to Innovative for the preceding two years; and (2) to the extent Recruiter (or Sub-recruiter) does not have a debit balance with Innovative or the third-party advancer at the time of termination. To the extent Recruiter or Sub-recruiter has such a debit balance at the time of termination, Innovative shall be entitled to apply any account payable to Innovative to pay back any Advance.

b.  Innovative may immediately terminate the Agreement for cause by sending a written notice to Recruiter (or a Subrecruiter) identifying any breach(es) of this Agreement or any representation or warranty. If the Agreement is terminated for cause, Recruiter (or Subrecruiter): (1) forfeits the right to any future Incentive; (2) forfeits the right to any Non-Advance Incentive; (3) any Debit Balance owed to Innovative or to the third party advancer shall be and is immediately due and payable; and (4) any account payable to Innovative or the advance partner may be used to pay the Debit Balance, even if the Debit Balance is not linked to the accounts payable.

### 16. CONFIDENTIAL INFORMATION

a.  Recruiter, its Staff, and Sub-recruiter agree they receive access to confidential information. Recruiter, its Staff, and Sub-recruiter agree to maintain as confidential any "Confidential Information" received pursuant to providing services under this Agreement. "Confidential Information" includes oral and written communications, and the exchange of information and documents, whether in draft or in final form, irrespective of the format or medium by which any information or document is created, maintained, stored, or transmitted. Confidential Information also includes, but is not limited to, DATA, research, opinions, information, documents, technical information, factual summaries, data, interview reports, summaries, analyses, compilations, reports, procedure, tactics, products, programs, methods, systems, price-books, rating tools, know-how, plans or policies, and any information about Potential Limited Partners or Limited

Page **8** of **10**

Zoho Sign Document ID: 3041BA23-X3XGUWURJZH4LJXLMTLRZVKJO5FULNYX2DB1T3TJWSW

Partners, any information contained on Innovative's software platform, and information concerning any benefits or programs approved by Innovative.

b. Recruiter, its Staff, and Sub-recruiter shall keep all Confidential Information confidential and not use, disclose, disseminate, publish, reproduce, or otherwise make available any Confidential Information to any person, firm, corporation, or other entity, except for the purpose of performing services under this Agreement. Recruiter (and/or Sub-recruiter) also agrees to take reasonable steps to ensure that its Staff does not disclose any Confidential Information, including obtaining enforceable contractual commitments not to disclose the information.

c. Recruiter agrees not to directly or indirectly solicit, request, or encourage anyone to cancel a Limited Partnership, or benefit thereof. Recruiter also agrees not to directly or indirectly recruit, sell, market, or cooperate in the recruitment, sale, or marketing to any Limited Partner on any non-Innovative benefit or program while this Agreement is active and for a period of two (2) years from the date of its termination.

d. Any breach of this Agreement, including an actual or threatened imminent disclosure of Confidential Information in violation of the terms of this Agreement, could not be adequately remedied by damages. Therefore, it is agreed that injunctive relief (temporary, preliminary, and permanent) to enforce specifically the terms of this Agreement would be necessary and appropriate.

e. These provisions survive any termination of this Agreement.

## 17. PRIVACY

Recruiter agrees to abide by all applicable privacy laws and regulations and shall have at all times a compliant Privacy Policy. To the extent Recruiter violates any privacy law or regulation, Recruiter is solely responsible for such violation.

## 18. APPLICABLE LAW AND FORUM

This Agreement shall be governed by, interpreted under, and enforced under the laws of the state of Texas, without regard to conflict of laws principles. Any claims arising out of or related to this Agreement or the provision of services hereunder shall be commenced in federal or state court having jurisdiction over Dallas County, Texas. The prevailing party shall be entitled to recover its attorney's fees and costs.

## 19. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement of the Parties to this Agreement regarding the subject matter herein. No amendment, modification, supplement, or waiver of any provision of this Agreement or any rights or obligations of any Party shall be effective, except pursuant to a writing signed by all Parties, and any such amendment, modification, supplement, or waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

Page **9** of **10**

Zoho Sign Document ID: 3041BA23-X3XGUWURJZH4LJXLMTLRZVKJO5FULNYX2DB1T3TJWSW

## 20. SEVERABILITY

If any provision of this Agreement is found or deemed to be invalid or unenforceable by law, then such provision will be deemed stricken from this Agreement, and the remaining provisions of this Agreement will continue in full force and effect.

## 21. NOTICES

To the extent that any provision of this Agreement contemplates or requires a Party to provide notice to any other Party to this Agreement, such notice shall be made effective by emailing and certified U.S. mail.

Notice to Innovative Partnership LP.          Notice to  United Way Health

[ 2234 N Federal Hwy #2862]                   [ 6750 N Andrews Ave, Suite 200
contracting@innovativepartnerslp.com          memberservices.uwh@gmail.com

## 22. PERSONAL GUARANTEE

To induce and in consideration of Innovative to enter into this Agreement, the undersigned for Recruiter (herein also referred to as "Guarantor") unconditionally, personally, individually, jointly, and severally guarantees the performance of Recruiter and its Sub-recruiter(s) under this Agreement and the payment and repayment of all sums due, including but not limited to the Incentive Advance.

## 23. Effective Date

The effective date of this Agreement shall be the date the last signature required in the signature blocks below is added to this Agreement.

**Innovative Partners LP:**               **RECRUITER and GUARANTOR:**

By: *Jimmie Gutton*                       By: *Anthony Bottley*

Printed Name:  contracting                Printed Name:  Anthony Bottley

Title:  General Partner                   Title:  MGR

Dated:  Jul 27 2023 12:59 EDT             Dated:  Jul 28 2023 19:14 EDT

**Carson Attachment LL, Page 46 of 95**

# EXHIBIT "B"

Carson Attachment LL, Page 47 of 95

Zoho Sign Document ID. 3041BA23-ZL6UHB29OAAVIAULLH1CI3AD4FYH2TG_S86LLMB5EKC

### Agreement

This Agreement ("Agreement") is among and between Innovative Partners LP, a Texas limited partnership, ("Innovative") and Nationwide Health Solutions, LL and potentially certain sub-recruiters as set forth on the signature page (collectively, "the "Parties").

1. **DEFINITIONS**

   a.  Innovative – Innovative Partners LP ("Partnership").

   b.  Recruiter – [Nationwide Health Solutions, NL University Dr Bldg F100 Suite that recruits Sunrise FL, Limited Partners for the Partnership and provides Innovative's programs or benefits to Limited Partners.

   c.  Sub-recruiter – an individual, company, or business that recruits Limited Partners for the Partnership, subject to a separate contract with Recruiter. A Sub-recruiter must sign this Agreement and acts as the agent of Recruiter, and Recruiter acts as the principal. Sub-recruiter is bound by this Agreement to the same extent as is Recruiter.

   d.  Prospective Limited Partner – an individual who is interested in becoming a Limited Partner in the Partnership.

   e.  Active Limited Partner – an individual who has agreed to join the Partnership as a Limited Partner and who has agreed to (1) allow DATA to be collected and used by the Partnership, and (2) agrees to use the Internet at least 500 hours a year.

   f.  Inactive Limited Partner -- an individual who has agreed to join the Partnership as a Limited Partner and who has agreed to make a capital contribution to the Partnership in an amount determined by Innovative.

   g.  Limited Partner – an Active Limited Partner or an Inactive Limited Partner.

   h.  DATA – (1) any Internet information collected from a Limited Partner from their digital device or devices and (2) any information collected or obtained by Recruiter, its Staff, or Sub-recruiter from or about any Prospective Limited Partner or Limited Partner, and any lead provide to Recruiter, its Staff or Sub-recruiter.

   i.  Debit Balance – the amounts owed by Recruiter or Sub-recruiter to Innovative or to an Advance Partner.

   j.  Product List and Incentive Schedule – the Schedule attached as Exhibit A to this Agreement and any amendments. Innovative may amend the Product List and Incentive Schedule with ten (10) days written notice to Recruiter. Recruiter is solely responsible for informing any Staff or Sub-recruiter of any amendment.

Zoho Sign Document ID: 3041BA23-ZL6UHB29OAAVIAULLH1CI3AD4FYH2TG_S86LLMB5EKC

k.  Incentive – the payment made to Recruiter or Sub-recruiter according to the then-current and approved Product List and Incentive Schedule for a payment linked to an approved Limited Partner whose payment has been received by Innovative.

l.  Advance Incentive – a lump sum of money paid out to Recruiter or Sub-recruiter by Innovative or an advance partner before the receipt of the Incentive, which otherwise would be paid monthly.

m.  Advance Partner – an entity that advances to or purchases commissions from Recruiter or Sub-recruiter pursuant to a commission advance or commission purchase agreement.

n.  Non-Advance Incentive—a fixed amount of money that may, in Innovative's sole discretion, be paid to Recruiter or Sub-recruiter on a monthly basis, separate from any other incentive.  The Non-Advance incentive is not eligible for an Advance but may be used to repay the Advance.

o.  Staff – employees, contractors, vendors, or others who provide services for Recruiter.

p.  Staff Agreement – a contract between Recruiter and its Staff or Sub-recruiter and its Staff that expressly requires Staff to abide by and accept Innovative's policies, rules, and other provisions as set for in this Agreement.

q.  Limited Partnership Materials – the Limited Partner Joinder Agreement, enrollment forms, and application materials which must be signed and approved by Innovative before anyone can become a Limited Partner.

r.  Good Standing – A Recruiter, its Staff, or Sub-recruiter is in Good Standing if (i) they are currently providing services to Innovated under this Agreement and/or a Staff Agreement (as applicable); (ii) no applicable contract has been terminated for cause; (iii) they are not in violation of the law or government regulation; (iv) they are not alleged to be in breach of Innovative's rules or policies, and (v) the Recruiter or Sub-recruiter has been providing services to Innovative for the last 24 consecutive months.

## 2.  RECRUITING NEW LIMITED PARTNERS

a.  Recruiter shall recruit Active and Inactive Limited Partners.  Once a Potential Limited Partner indicates a desire to become a Limited Partner, the Potential Limited Partner must sign the Limited Partnership Materials.  Recruiter shall ensure that the Limited Partnership Materials are completed by the Potential Limited Partner fully and truthfully.  Thereafter, Recruiter shall submit the completed Limited Partnership Materials to Innovative for approval.

b.  Recruiter is not authorized to make, in writing, verbally, or otherwise, any statement or representation of any kind guaranteeing that any Potential Limited Partner will be accepted as a Limited Partner or will be issued any benefit or

Zoho Sign Document ID: 3041BA23-ZL6UHB29OAAVIAULLH1CI3AD4FYH2TG_S86LLMB5EKC

program (as applicable) unless or until the Limited Partnership Materials have been reviewed and approved by Innovative and a Partnership certificate is issued. Recruiter shall not market or sell any health benefit program to any Potential Limited Partner while that Potential Limited Partner's Limited Partnership Materials are pending approval from Innovative or is a Limited Partner.

c. Recruiter shall not request the payment in any manner from any Potential Limited Partner or Limited Partner for any fee, dues, or otherwise, directly or indirectly, unless and until expressly authorized by Innovative. Any payment made by any Potential Limited Partner or Limited Partner, for any reason, including fees, dues, or other otherwise, shall be promptly delivered or transited to Innovative.

d. If Recruiter, its Staff, or Sub-recruiter is contacted by a Potential Limited Partner or Limited Partner seeking to cancel his or her partnership or transaction, Recruiter, Staff, or Sub-recruiter will promptly refer the Potential Limited Partner or Limited Partner to Innovative Partner Services.

e. If Innovative determines that any Recruiter, Staff, or Sub-recruiter sold or marketed any benefit or product to a Potential Limited Partner that the Limited Partner or Innovative later decides was not appropriate, Innovative, and not Recruiter, Staff or Sub-recruiter, shall have the right, in its sole discretion, to move the Limited Partner to a different benefit or program, and any incentive or other payment due to Recruiter, Staff or Sub-recruiter shall be transferred to and belong to Innovative.

## 3. RECRUITER'S REPRESENTATIONS AND WARRANTIES

a. Recruiter represents and warrants it will not, and will not allow any of Staff or Sub-recruiter to use or employ any unethical or illegal means to prevent or delay any Potential Limited Partner or Limited Partner to terminate or cancel any transaction.

b. Recruiter represents and warrants that it, its Staff, and Sub-recruiter will ensure that all Limited Partnership Materials are completed by the Potential Limited Partner fully and truthfully.

c. Recruiter represents and warrants it will not allow any Staff or Sub-recruiter to use Innovative's business name, trademark, or service mark without Innovative's prior express approval.

d. Recruiter represents and warrants that all Staff have signed a Staff Agreement.

e. Recruiter represents and warrants it, its Staff, and Sub-recruiter will comply with all applicable state, federal, and local laws and regulations, including but not limited to complying with the Telephone Consumer Protection Act ("TCPA"), maintaining an internal DO NOT CALL (DNC) list, and ensuring that no leads are generated from either pre-recorded solicitation calls or using an auto-dialer.

Zoho Sign Document ID: 3041BA23-ZL6UHB29OAAVIAULLH1Cl3AD4FYH2TG_S86LLMB5EKC

f.  Recruiter and Sub-recruiter represent and warrant that each has a compliant privacy policy, and that both will follow all applicable rules, regulations, and laws regarding privacy.

g.  Recruiter and Sub-recruiter represent and warrant that no Incentive Advance account will have a persistency above 10%.

## 4. STAFF AND SUB-RECRUITERS

a.  All Recruiter's (and Sub-recruiter's) Staff who provide services to Innovative shall sign a Staff Agreement. Only those who have signed the Staff Agreement will be authorized by Innovative to provide services under this Agreement.

b.  Recruiter is responsible and liable for the actions and inactions of Staff and Sub-recruiter

c.  Recruiter is solely responsible for training Staff and Sub-recruiter. All training materials must be submitted to, and approved by, Innovative: (1) at least yearly; (2) at the start of any new marketing or program release; and (3) at Innovative's request, in its sole discretion.

d.  Recruiter shall be solely responsible for all costs and expenses incurred for training, hiring, and officing its Staff, or Sub-recruiter when providing services under this Agreement. Innovative will not reimburse Recruiter or Sub-recruiter for any operating costs or expenses.

e.  Staff must be officed at Recruiter's or Sub-recruiter's location. Staff may not provide services to Innovative remotely or from their home.

f.  Recruiter must ensure that all Staff and Sub-recruiter comply with the terms of this Agreement, the Staff Agreement, Innovative's policies and procedures, and all applicable laws and regulations. Failure to do so will be a material breach of this Agreement and will result in termination for cause as set forth in Section 15(b).

## 5. DATA

a.  Recruiter, Staff, and Sub-recruiter may be provided or may obtain DATA. Any such DATA is the property of, and owned by, Innovative. The DATA is Confidential Information, as set forth in Section 16. Recruiter, Staff, and Sub-recruiter may not use any DATA unless performing services under this Agreement. To avoid all doubt, Recruiter, Staff, and Sub-recruiter shall not use any DATA for any other purpose, including working on its or their own, or working for a third party.

b.  If Recruiter, its Staff, or Sub-recruiter is alleged to have violated any law or regulation, or breaches or is alleged to have breached this Agreement in any way, all DATA provided to or obtained by the alleged violator shall be turned over to Innovative immediately, and no less than two (2) days after knowledge or

Page 4 of 10

Zoho Sign Document ID: 3041BA23-ZL6UHB29OAAVIAULLH1CI3AD4FYH2TG_S86LLMB5EKC

suspicion of any violation. Any Incentive linked to any alleged breach or violation shall become the sole property of Innovative.

6. **PAYMENTS AND ACCOUNT STATEMENTS**

   a.  For any transaction that results from Recruiter, its Staff, or Sub-recruiter bringing in a new Limited Partner which becomes approved by Innovative, Innovative will account to Recruiter (or Sub-recruiter, if Innovative has elected to pay or account to the Sub-recruiter directly) for the linked Incentive and the Non-Advance Incentive (if applicable).

   b.  Innovative shall provide to Recruiter (or Sub-recruiter if Innovative has elected to pay or account to the Sub-recruiter directly), a monthly statement of account showing any Debit Amounts ("Recruiter Account Statement"). Once a Recruiter or Sub-recruiter is no longer providing services to Innovative, Innovative will provide a Recruiter Account Statement only upon written request.

   c.  Recruiter and Sub-recruiter will be deemed to have acknowledged, approved, and consented to the Recruiter Account Statement and the amounts stated therein (e.g., the amount of any Incentive and Non-Advance Incentive (if applicable)), and such Recruiter Account Statement will conclusively bind Recruiter and Sub-recruiter to the stated amounts, and not be subject to any objection for any reason unless the objecting party provides a detailed written objection within thirty (30) days from the date the specific Recruiter Account Statement is provided or made available to Recruiter.

   d.  After the passage of thirty (30) days as set forth above in subsection (c), neither Recruiter nor Sub-recruiter, shall have a right: (i) to file or commence any lawsuit, file any lien, or initiate any other proceeding against Innovative or its owners or officers in connection with or relating to the specific Recruiter Account Statement, or (ii) to challenge the payments in the Recruiter Account Statement. If any objection is made after thirty (30) days, Recruiter is solely and exclusively responsible for any disparity, including if any objection is made by a Sub-recruiter.

   e.  Any and all rights to challenge the accuracy of anything in the Recruiter Account Statement if not expressly objected to within thirty (30) days is hereby expressly waived.

   f.  If a detailed written objection is made timely by Recruiter or Sub-recruiter, and Innovative determines, in its sole discretion, that the objection has merit, Innovative and Recruiter shall use their best efforts to remedy the discrepancy.

   g.  In any event, and even if Innovative determines the objection has merit, Innovative shall only be responsible for the amount of the discrepancy, as to each Recruiter Account Statement, up to $5,000. If the discrepancy on a specific Recruiter Account Statement exceeds $5,000, Innovative shall not be liable or responsible for any discrepancy amount over $5,000.

Zoho Sign Document ID: 3041BA23-ZL6UHB29OAAVIAULLH1CI3AD4FYH2TG_S86LLMB5EKC

7. **INCENTIVES AND INCENTIVE ADVANCE**

   a. Recruiter or Sub-recruiter may, in Innovative's sole discretion, receive an Incentive Advance from Innovative or a third party. Innovative or a third-party may charge administrative fees for administering and maintaining accounts associated with the Incentive Advance.

   b. If Recruiter or Sub-recruiter receives an Incentive Advance, Innovative may deduct from any account payable to Recruiter or Sub-recruiter (or its affiliates or successors) -- even if the specific account did not receive the Advance -- an amount necessary to repay the Incentive Advance and fees.

   c. To the extent Innovative determines that repayment of the Incentive Advance and fees may not be made timely by Recruiter or Sub-recruiter, for any reason — including for an average persistency over 10%, -- Innovative may deduct from any amounts payable to Recruiter or Sub-recruiter (or its affiliates or successors) -- even if the specific account or affiliate/successor did not receive the Advance -- an amount necessary to repay the Incentive Advance and fees.

      1. For the avoidance of doubt, Recruiter and its affiliates and successors are ultimately responsible for the repayment of any Incentive Advance and fees for its or its *Sub-recruiter(s)*, regardless of which account received the advance.

      2. Also, for the avoidance of doubt, Innovative may deduct from any amount or account payable to Recruiter or Sub-recruiter (or its affiliates or successors) – including from a Non-Advance Incentive account or amount payable.

   d. Once the Advance Incentive and fees have been repaid in full, if there remains any Incentive money in Recruiter's or Sub-recruiter account or due to Recruiter or Sub-recruiter, Recruiter and/or Sub-recruiter (as applicable) are eligible, at Innovative's discretion, to be paid that remaining Incentive money if Recruiter or Sub-recruiter has vested by providing services under this Agreement to Innovative for 24 consecutive months and is in Good Standing.

8. **NON-ADVANCE INCENTIVES**

   a. Recruiter or Sub-recruiter may, in Innovative's sole discretion, receive a Non-Advance Incentive, which will be paid monthly.

   b. Innovative may deduct from any Non-Advance Incentive account or amount payable to repay any Advance Incentive owed by Recruiter or Sub-recruiter.

9. **LIMITATION OF DAMAGES**

Page 6 of 10

Zoho Sign Document ID: 3041BA23-ZL6UHB29OAAVIAULLH1CI3AD4FYH2TG_S86LLMB5EKC

a. Subject to Section 6, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL INNOVATIVE OR ITS OWNERS OR OFFICERS BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, DIRECT, INDIRECT, SPECIAL, PUNITIVE OR OTHER DAMAGES WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATED TO THE PROVISION OF SERVICES UNDER THIS AGREEMENT OR THE PAYMENT OR REPAYMENT OF AN INCENTIVE, INCENTIVE ADVANCE OR A NON-ADVANCE INCENTIVE. IN NO EVENT SHALL INNOVATIVE BE LIABLE FOR DAMAGE OF ANY KIND, LOSS OF DATA, LOSS OF PROFITS, INTERRUPTION OF BUSINESS, OR OTHER FINANCIAL LOSSES ARISING DIRECTLY OR INDIRECTLY FROM THE PROVISION OF SERVICES UNDER THIS AGREEMENT OR THE PAYMENT OR REPAYMENT OF AN INCENTIVE, INCENTIVE ADVANCE OR A NON-ADVANCE INCENTIVE USE OF THIS PRODUCT. ANY LIABILITY OF INNOVATIVE WILL BE EXCLUSIVELY LIMITED TO $50,000.

## 10. INNOVATIVE'S RIGHT TO INSPECT

Innovative has the right to conduct, at any time and without notice, on-site audits, inspections of books and records (including any electronic records), and inspections of physical business operations of Recruiter and or Sub-recruiter. Innovative may, at its sole discretion, conduct quality calls (e.g., secret shoppers) to monitor Recruiter, its Staff and Sub-recruiter.

## 11. RECRUITER'S OBLIGATIONS TO NOTIFY INNOVATIVE

If Recruiter learns or suspects that it, any of its Staff, or Sub-recruiters violated the terms of this Agreement, Recruiter shall notify Innovative within three (3) calendar days. If Recruiter learns or suspects that a complaint, investigation, regulatory or governmental inquiry exists or is threatened, or there exists an allegation of a violation of any law or regulation in connection with services provided under this Agreement, Recruiter shall notify Innovative within three (3) calendar days. If Recruiter receives information that Recruiter, its Staff, or Sub-Recruiters is planning to or already has granted a lien or assigned any rights to any, it shall notify Innovative immediately.

## 12. ASSIGNMENT

Innovative may freely transfer or assign its rights under this Agreement. Recruiter, its Staff, or Sub-recruiter may not transfer or assign any rights under this Agreement without the prior written consent of Innovative.

## 13. LIMITATION OF AUTHORITY

Except as expressly authorized in this Agreement, Recruiter, its Staff, and Sub-recruiter do not have authority to take any action on behalf of the Innovative.

## 14. INDEMNIFICATION BY RECRUITER

Zoho Sign Document ID: 3041BA23-ZL6UHB29OAAVIAULLH1CI3AD4FYH2TG_S86LLMB5EKC

Recruiter agrees to fully indemnify and hold Innovative (and its owners and officers) harmless from any and all costs, expenses (including attorneys' fees), damages, judgments, and liability, whether by investigation, fine, penalty, claim, complaint, petition, judgment, settlement or otherwise, of every kind and nature that arises or results by reason of any action or inaction of Recruiter, or its Staff, or Sub-recruiter in connection with providing services under this Agreement ("Proceeding"). Innovative shall have the right to select counsel and defend itself (and control the defense) with regard to any Proceeding, and is entitled to be reimbursed fully by Recruiter for all fees, costs and expenses, fines, penalties, settlements, and damages. This Section is to be interpreted broadly.

### 15. TERMINATION

a. This Agreement may be terminated without cause by Innovative or Recruiter (or Sub-recruiter) with ten (10) days written notice of termination. If the Agreement is terminated without cause, Recruiter and its Sub-recruiter shall retain the right to receive future Incentives if (1) the Recruiter (or Sub-recruiter) has been providing services to Innovative for the preceding two years; and (2) to the extent Recruiter (or Sub-recruiter) does not have a debit balance with Innovative or the third-party advancer at the time of termination. To the extent Recruiter or Sub-recruiter has such a debit balance at the time of termination, Innovative shall be entitled to apply any account payable to Innovative to pay back any Advance.

b. Innovative may immediately terminate the Agreement for cause by sending a written notice to Recruiter (or a Subrecruiter) identifying any breach(es) of this Agreement or any representation or warranty. If the Agreement is terminated for cause, Recruiter (or Subrecruiter): (1) forfeits the right to any future Incentive; (2) forfeits the right to any Non-Advance Incentive; (3) any Debit Balance owed to Innovative or to the third party advancer shall be and is immediately due and payable; and (4) any account payable to Innovative or the advance partner may be used to pay the Debit Balance, even if the Debit Balance is not linked to the accounts payable.

### 16. CONFIDENTIAL INFORMATION

a. Recruiter, its Staff, and Sub-recruiter agree they receive access to confidential information. Recruiter, its Staff, and Sub-recruiter agree to maintain as confidential any "Confidential Information" received pursuant to providing services under this Agreement. "Confidential Information" includes oral and written communications, and the exchange of information and documents, whether in draft or in final form, irrespective of the format or medium by which any information or document is created, maintained, stored, or transmitted. Confidential Information also includes, but is not limited to, DATA, research, opinions, information, documents, technical information, factual summaries, data, interview reports, summaries, analyses, compilations, reports, procedure, tactics, products, programs, methods, systems, price-books, rating tools, know-how, plans or policies, and any information about Potential Limited Partners or Limited

Zoho Sign Document ID: 3041BA23-ZL6UHB29OAAVIAULLH1CI3AD4FYH2TG_S86LLMB5EKC

Partners, any information contained on Innovative's software platform, and information concerning any benefits or programs approved by Innovative.

b. Recruiter, its Staff, and Sub-recruiter shall keep all Confidential Information confidential and not use, disclose, disseminate, publish, reproduce, or otherwise make available any Confidential Information to any person, firm, corporation, or other entity, except for the purpose of performing services under this Agreement. Recruiter (and/or Sub-recruiter) also agrees to take reasonable steps to ensure that its Staff does not disclose any Confidential Information, including obtaining enforceable contractual commitments not to disclose the information.

c. Recruiter agrees not to directly or indirectly solicit, request, or encourage anyone to cancel a Limited Partnership, or benefit thereof. Recruiter also agrees not to directly or indirectly recruit, sell, market, or cooperate in the recruitment, sale, or marketing to any Limited Partner on any non-Innovative benefit or program while this Agreement is active and for a period of two (2) years from the date of its termination.

d. Any breach of this Agreement, including an actual or threatened imminent disclosure of Confidential Information in violation of the terms of this Agreement, could not be adequately remedied by damages. Therefore, it is agreed that injunctive relief (temporary, preliminary, and permanent) to enforce specifically the terms of this Agreement would be necessary and appropriate.

e. These provisions survive any termination of this Agreement.

## 17. PRIVACY

Recruiter agrees to abide by all applicable privacy laws and regulations and shall have at all times a compliant Privacy Policy. To the extent Recruiter violates any privacy law or regulation, Recruiter is solely responsible for such violation.

## 18. APPLICABLE LAW AND FORUM

This Agreement shall be governed by, interpreted under, and enforced under the laws of the state of Texas, without regard to conflict of laws principles. Any claims arising out of or related to this Agreement or the provision of services hereunder shall be commenced in federal or state court having jurisdiction over Dallas County, Texas. The prevailing party shall be entitled to recover its attorney's fees and costs.

## 19. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement of the Parties to this Agreement regarding the subject matter herein. No amendment, modification, supplement, or waiver of any provision of this Agreement or any rights or obligations of any Party shall be effective, except pursuant to a writing signed by all Parties, and any such amendment, modification, supplement, or waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

Zoho Sign Document ID: 3041BA23-ZL6UHB29OAAVIAULLH1CI3AD4FYH2TG_S86LLMB5EKC

## 20. SEVERABILITY

If any provision of this Agreement is found or deemed to be invalid or unenforceable by law, then such provision will be deemed stricken from this Agreement, and the remaining provisions of this Agreement will continue in full force and effect.

## 21. NOTICES

To the extent that any provision of this Agreement contemplates or requires a Party to provide notice to any other Party to this Agreement, such notice shall be made effective by emailing and certified U.S. mail.

Notice to Innovative Partnership LP.

[ 2234 N federal Highway Boca Raton FL 33431

contracting@innovativepartnerslp.com

Notice to Nationwide Health Solutions, LLC

[ 4300 N. University Dr Bldg F100 Suite A139, Sunrise FL, 33351

ahsllc.eric@gmail.com

## 22. PERSONAL GUARANTEE

To induce and in consideration of Innovative to enter into this Agreement, the undersigned for Recruiter (herein also referred to as "Guarantor") unconditionally, personally, individually, jointly, and severally guarantees the performance of Recruiter and its Sub-recruiter(s) under this Agreement and the payment and repayment of all sums due, including but not limited to the Incentive Advance.

## 23. Effective Date

The effective date of this Agreement shall be the date the last signature required in the signature blocks below is added to this Agreement.

**Innovative Partners LP:**

By: *Jimmie Sutton*

Printed Name: Jimmie Sutton

Title: General Partner

Dated: Jul 18 2023 13:12 EDT

**RECRUITER and GUARANTOR:**

By: _____

Printed Name: Shazad Khan

Title: Managing Member

Dated: Jul 24 2023 18:15 EDT

Page 10 of 10

# EXHIBIT "C"

Zoho Sign Document ID: 3041BA23-TJWACBZDJ9XUD5BOGMFPZZ7LWVYOZ3Y14X89JJYEOL8

## Agreement

This Agreement ("Agreement") is among and between Innovative Partners LP, a Texas limited partnership, ("Innovative") and National Elite Health ("Recruiter"), and potentially certain sub-recruiters as set forth on the signature page (collectively, "the "Parties").

1. **DEFINITIONS**

   a. Innovative – Innovative Partners LP ("Partnership").

   b. Recruiter – [National Elite Health LLC Limited Liability Company        ] that recruits Limited Partners for the Partnership and provides Innovative's programs or benefits to Limited Partners.

   c. Sub-recruiter – an individual, company, or business that recruits Limited Partners for the Partnership, subject to a separate contract with Recruiter. A Sub-recruiter must sign this Agreement and acts as the agent of Recruiter, and Recruiter acts as the principal. Sub-recruiter is bound by this Agreement to the same extent as is Recruiter.

   d. Prospective Limited Partner – an individual who is interested in becoming a Limited Partner in the Partnership.

   e. Active Limited Partner – an individual who has agreed to join the Partnership as a Limited Partner and who has agreed to (1) allow DATA to be collected and used by the Partnership, and (2) agrees to use the Internet at least 500 hours a year.

   f. Inactive Limited Partner -- an individual who has agreed to join the Partnership as a Limited Partner and who has agreed to make a capital contribution to the Partnership in an amount determined by Innovative.

   g. Limited Partner – an Active Limited Partner or an Inactive Limited Partner.

   h. DATA – (1) any Internet information collected from a Limited Partner from their digital device or devices and (2) any information collected or obtained by Recruiter, its Staff, or Sub-recruiter from or about any Prospective Limited Partner or Limited Partner, and any lead provide to Recruiter, its Staff or Sub-recruiter.

   i. Debit Balance – the amounts owed by Recruiter or Sub-recruiter to Innovative or to an Advance Partner.

   j. Product List and Incentive Schedule – the Schedule attached as Exhibit A to this Agreement and any amendments. Innovative may amend the Product List and Incentive Schedule with ten (10) days written notice to Recruiter. Recruiter is solely responsible for informing any Staff or Sub-recruiter of any amendment.

Page 1 of 10

Zoho Sign Document ID: 3041BA23-TJWACBZDJ9XUD5BOGMFPZZ7LWVYOZ3Y14X89JJYEOL8

k.  Incentive – the payment made to Recruiter or Sub-recruiter according to the then-current and approved Product List and Incentive Schedule for a payment linked to an approved Limited Partner whose payment has been received by Innovative.

l.  Advance Incentive – a lump sum of money paid out to Recruiter or Sub-recruiter by Innovative or an advance partner before the receipt of the Incentive, which otherwise would be paid monthly.

m.  Advance Partner – an entity that advances to or purchases commissions from Recruiter or Sub-recruiter pursuant to a commission advance or commission purchase agreement.

n.  Non-Advance Incentive—a fixed amount of money that may, in Innovative's sole discretion, be paid to Recruiter or Sub-recruiter on a monthly basis, separate from any other incentive. The Non-Advance incentive is not eligible for an Advance but may be used to repay the Advance.

o.  Staff – employees, contractors, vendors, or others who provide services for Recruiter.

p.  Staff Agreement – a contract between Recruiter and its Staff or Sub-recruiter and its Staff that expressly requires Staff to abide by and accept Innovative's policies, rules, and other provisions as set for in this Agreement.

q.  Limited Partnership Materials – the Limited Partner Joinder Agreement, enrollment forms, and application materials which must be signed and approved by Innovative before anyone can become a Limited Partner.

r.  Good Standing – A Recruiter, its Staff, or Sub-recruiter is in Good Standing if (i) they are currently providing services to Innovated under this Agreement and/or a Staff Agreement (as applicable); (ii) no applicable contract has been terminated for cause; (iii) they are not in violation of the law or government regulation; (iv) they are not alleged to be in breach of Innovative's rules or policies, and (v) the Recruiter or Sub-recruiter has been providing services to Innovative for the last 24 consecutive months.

2.  **RECRUITING NEW LIMITED PARTNERS**

a.  Recruiter shall recruit Active and Inactive Limited Partners. Once a Potential Limited Partner indicates a desire to become a Limited Partner, the Potential Limited Partner must sign the Limited Partnership Materials. Recruiter shall ensure that the Limited Partnership Materials are completed by the Potential Limited Partner fully and truthfully. Thereafter, Recruiter shall submit the completed Limited Partnership Materials to Innovative for approval.

b.  Recruiter is not authorized to make, in writing, verbally, or otherwise, any statement or representation of any kind guaranteeing that any Potential Limited Partner will be accepted as a Limited Partner or will be issued any benefit or

Zoho Sign Document ID: 3041BA23-TJWACBZDJ9XUD5BOGMFPZZ7LWVYOZ3Y14X89JJYEOL8

program (as applicable) unless or until the Limited Partnership Materials have been reviewed and approved by Innovative and a Partnership certificate is issued. Recruiter shall not market or sell any health benefit program to any Potential Limited Partner while that Potential Limited Partner's Limited Partnership Materials are pending approval from Innovative or is a Limited Partner.

c. Recruiter shall not request the payment in any manner from any Potential Limited Partner or Limited Partner for any fee, dues, or otherwise, directly or indirectly, unless and until expressly authorized by Innovative. Any payment made by any Potential Limited Partner or Limited Partner, for any reason, including fees, dues, or other otherwise, shall be promptly delivered or transited to Innovative.

d. If Recruiter, its Staff, or Sub-recruiter is contacted by a Potential Limited Partner or Limited Partner seeking to cancel his or her partnership or transaction, Recruiter, Staff, or Sub-recruiter will promptly refer the Potential Limited Partner or Limited Partner to Innovative Partner Services.

e. If Innovative determines that any Recruiter, Staff, or Sub-recruiter sold or marketed any benefit or product to a Potential Limited Partner that the Limited Partner or Innovative later decides was not appropriate, Innovative, and not Recruiter, Staff or Sub-recruiter, shall have the right, in its sole discretion, to move the Limited Partner to a different benefit or program, and any incentive or other payment due to Recruiter, Staff or Sub-recruiter shall be transferred to and belong to Innovative.

## 3. RECRUITER'S REPRESENTATIONS AND WARRANTIES

a. Recruiter represents and warrants it will not, and will not allow any of Staff or Sub-recruiter to use or employ any unethical or illegal means to prevent or delay any Potential Limited Partner or Limited Partner to terminate or cancel any transaction.

b. Recruiter represents and warrants that it, its Staff, and Sub-recruiter will ensure that all Limited Partnership Materials are completed by the Potential Limited Partner fully and truthfully.

c. Recruiter represents and warrants it will not allow any Staff or Sub-recruiter to use Innovative's business name, trademark, or service mark without Innovative's prior express approval.

d. Recruiter represents and warrants that all Staff have signed a Staff Agreement.

e. Recruiter represents and warrants it, its Staff, and Sub-recruiter will comply with all applicable state, federal, and local laws and regulations, including but not limited to complying with the Telephone Consumer Protection Act ("TCPA"), maintaining an internal DO NOT CALL (DNC) list, and ensuring that no leads are generated from either pre-recorded solicitation calls or using an auto-dialer.

Zoho Sign Document ID: 3041BA23-TJWACBZDJ9XUD5BOGMFPZZ7LWVYOZ3Y14X89JJYEOL8

f.  Recruiter and Sub-recruiter represent and warrant that each has a compliant privacy policy, and that both will follow all applicable rules, regulations, and laws regarding privacy.

g.  Recruiter and Sub-recruiter represent and warrant that no Incentive Advance account will have a persistency above 10%.

## 4.  STAFF AND SUB-RECRUITERS

a.  All Recruiter's (and Sub-recruiter's) Staff who provide services to Innovative shall sign a Staff Agreement. Only those who have signed the Staff Agreement will be authorized by Innovative to provide services under this Agreement.

b.  Recruiter is responsible and liable for the actions and inactions of Staff and Sub-recruiter

c.  Recruiter is solely responsible for training Staff and Sub-recruiter. All training materials must be submitted to, and approved by, Innovative: (1) at least yearly; (2) at the start of any new marketing or program release; and (3) at Innovative's request, in its sole discretion.

d.  Recruiter shall be solely responsible for all costs and expenses incurred for training, hiring, and officing its Staff, or Sub-recruiter when providing services under this Agreement. Innovative will not reimburse Recruiter or Sub-recruiter for any operating costs or expenses.

e.  Staff must be officed at Recruiter's or Sub-recruiter's location. Staff may not provide services to Innovative remotely or from their home.

f.  Recruiter must ensure that all Staff and Sub-recruiter comply with the terms of this Agreement, the Staff Agreement, Innovative's policies and procedures, and all applicable laws and regulations. Failure to do so will be a material breach of this Agreement and will result in termination for cause as set forth in Section 15(b).

## 5.  DATA

a.  Recruiter, Staff, and Sub-recruiter may be provided or may obtain DATA. Any such DATA is the property of, and owned by, Innovative. The DATA is Confidential Information, as set forth in Section 16. Recruiter, Staff, and Sub-recruiter may not use any DATA unless performing services under this Agreement. To avoid all doubt, Recruiter, Staff, and Sub-recruiter shall not use any DATA for any other purpose, including working on its or their own, or working for a third party.

b.  If Recruiter, its Staff, or Sub-recruiter is alleged to have violated any law or regulation, or breaches or is alleged to have breached this Agreement in any way, all DATA provided to or obtained by the alleged violator shall be turned over to Innovative immediately, and no less than two (2) days after knowledge or

Page 4 of 10

Zoho Sign Document ID: 3041BA23-TJWACBZDJ9XUD5BOGMFPZZ7LWVYOZ3Y14X89JJYEOL8

suspicion of any violation. Any Incentive linked to any alleged breach or violation shall become the sole property of Innovative.

6. **PAYMENTS AND ACCOUNT STATEMENTS**

   a. For any transaction that results from Recruiter, its Staff, or Sub-recruiter bringing in a new Limited Partner which becomes approved by Innovative, Innovative will account to Recruiter (or Sub-recruiter, if Innovative has elected to pay or account to the Sub-recruiter directly) for the linked Incentive and the Non-Advance Incentive (if applicable).

   b. Innovative shall provide to Recruiter (or Sub-recruiter if Innovative has elected to pay or account to the Sub-recruiter directly), a monthly statement of account showing any Debit Amounts ("Recruiter Account Statement"). Once a Recruiter or Sub-recruiter is no longer providing services to Innovative, Innovative will provide a Recruiter Account Statement only upon written request.

   c. Recruiter and Sub-recruiter will be deemed to have acknowledged, approved, and consented to the Recruiter Account Statement and the amounts stated therein (e.g., the amount of any Incentive and Non-Advance Incentive (if applicable)), and such Recruiter Account Statement will conclusively bind Recruiter and Sub-recruiter to the stated amounts, and not be subject to any objection for any reason unless the objecting party provides a detailed written objection within thirty (30) days from the date the specific Recruiter Account Statement is provided or made available to Recruiter.

   d. After the passage of thirty (30) days as set forth above in subsection (c), neither Recruiter nor Sub-recruiter, shall have a right: (i) to file or commence any lawsuit, file any lien, or initiate any other proceeding against Innovative or its owners or officers in connection with or relating to the specific Recruiter Account Statement, or (ii) to challenge the payments in the Recruiter Account Statement. If any objection is made after thirty (30) days, Recruiter is solely and exclusively responsible for any disparity, including if any objection is made by a Sub-recruiter.

   e. Any and all rights to challenge the accuracy of anything in the Recruiter Account Statement if not expressly objected to within thirty (30) days is hereby expressly waived.

   f. If a detailed written objection is made timely by Recruiter or Sub-recruiter, and Innovative determines, in its sole discretion, that the objection has merit, Innovative and Recruiter shall use their best efforts to remedy the discrepancy.

   g. In any event, and even if Innovative determines the objection has merit, Innovative shall only be responsible for the amount of the discrepancy, as to each Recruiter Account Statement, up to $5,000. If the discrepancy on a specific Recruiter Account Statement exceeds $5,000, Innovative shall not be liable or responsible for any discrepancy amount over $5,000.

Page **5** of **10**

Zoho Sign Document ID: 3041BA23-TJWACBZDJ9XUD5BOGMFPZZ7LWVYOZ3Y14X89JJYEOL8

7. **INCENTIVES AND INCENTIVE ADVANCE**

a. Recruiter or Sub-recruiter may, in Innovative's sole discretion, receive an Incentive Advance from Innovative or a third party. Innovative or a third-party may charge administrative fees for administering and maintaining accounts associated with the Incentive Advance.

b. If Recruiter or Sub-recruiter receives an Incentive Advance, Innovative may deduct from any account payable to Recruiter or Sub-recruiter (or its affiliates or successors) -- even if the specific account did not receive the Advance -- an amount necessary to repay the Incentive Advance and fees.

c. To the extent Innovative determines that repayment of the Incentive Advance and fees may not be made timely by Recruiter or Sub-recruiter, for any reason — including for an average persistency over 10%, -- Innovative may deduct from any amounts payable to Recruiter or Sub-recruiter (or its affiliates or successors) -- even if the specific account or affiliate/successor did not receive the Advance -- an amount necessary to repay the Incentive Advance and fees.

    1. For the avoidance of doubt, Recruiter and its affiliates and successors are ultimately responsible for the repayment of any Incentive Advance and fees for its or its *Sub-recruiter(s)*, regardless of which account received the advance.

    2. Also, for the avoidance of doubt, Innovative may deduct from any amount or account payable to Recruiter or Sub-recruiter (or its affiliates or successors) – including from a Non-Advance Incentive account or amount payable.

d. Once the Advance Incentive and fees have been repaid in full, if there remains any Incentive money in Recruiter's or Sub-recruiter account or due to Recruiter or Sub-recruiter, Recruiter and/or Sub-recruiter (as applicable) are eligible, at Innovative's discretion, to be paid that remaining Incentive money if Recruiter or Sub-recruiter has vested by providing services under this Agreement to Innovative for 24 consecutive months and is in Good Standing.

8. **NON-ADVANCE INCENTIVES**

a. Recruiter or Sub-recruiter may, in Innovative's sole discretion, receive a Non-Advance Incentive, which will be paid monthly.

b. Innovative may deduct from any Non-Advance Incentive account or amount payable to repay any Advance Incentive owed by Recruiter or Sub-recruiter.

9. **LIMITATION OF DAMAGES**

Zoho Sign Document ID: 3041BA23-TJWACBZDJ9XUD5BOGMFPZZ7LWVYOZ3Y14X89JJYEOL8

a. Subject to Section 6, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL INNOVATIVE OR ITS OWNERS OR OFFICERS BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, DIRECT, INDIRECT, SPECIAL, PUNITIVE OR OTHER DAMAGES WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATED TO THE PROVISION OF SERVICES UNDER THIS AGREEMENT OR THE PAYMENT OR REPAYMENT OF AN INCENTIVE, INCENTIVE ADVANCE OR A NON-ADVANCE INCENTIVE.  IN NO EVENT SHALL INNOVATIVE BE LIABLE FOR DAMAGE OF ANY KIND, LOSS OF DATA, LOSS OF PROFITS, INTERRUPTION OF BUSINESS, OR OTHER FINANCIAL LOSSES ARISING DIRECTLY OR INDIRECTLY FROM THE PROVISION OF SERVICES UNDER THIS AGREEMENT OR THE PAYMENT OR REPAYMENT OF AN INCENTIVE, INCENTIVE ADVANCE OR A NON-ADVANCE INCENTIVE USE OF THIS PRODUCT. ANY LIABILITY OF INNOVATIVE WILL BE EXCLUSIVELY LIMITED TO $50,000.

## 10. INNOVATIVE'S RIGHT TO INSPECT

Innovative has the right to conduct, at any time and without notice, on-site audits, inspections of books and records (including any electronic records), and inspections of physical business operations of Recruiter and or Sub-recruiter. Innovative may, at its sole discretion, conduct quality calls (e.g., secret shoppers) to monitor Recruiter, its Staff and Sub-recruiter.

## 11. RECRUITER'S OBLIGATIONS TO NOTIFY INNOVATIVE

If Recruiter learns or suspects that it, any of its Staff, or Sub-recruiters violated the terms of this Agreement, Recruiter shall notify Innovative within three (3) calendar days. If Recruiter learns or suspects that a complaint, investigation, regulatory or governmental inquiry exists or is threatened, or there exists an allegation of a violation of any law or regulation in connection with services provided under this Agreement, Recruiter shall notify Innovative within three (3) calendar days. If Recruiter receives information that Recruiter, its Staff, or Sub-Recruiters is planning to or already has granted a lien or assigned any rights to any, it shall notify Innovative immediately.

## 12. ASSIGNMENT

Innovative may freely transfer or assign its rights under this Agreement. Recruiter, its Staff, or Sub-recruiter may not transfer or assign any rights under this Agreement without the prior written consent of Innovative.

## 13. LIMITATION OF AUTHORITY

Except as expressly authorized in this Agreement, Recruiter, its Staff, and Sub-recruiter do not have authority to take any action on behalf of the Innovative.

## 14. INDEMNIFICATION BY RECRUITER

Zoho Sign Document ID: 3041BA23-TJWACBZDJ9XUD5BOGMFPZZ7LWVYOZ3Y14X89JJYEOL8

Recruiter agrees to fully indemnify and hold Innovative (and its owners and officers) harmless from any and all costs, expenses (including attorneys' fees), damages, judgments, and liability, whether by investigation, fine, penalty, claim, complaint, petition, judgment, settlement or otherwise, of every kind and nature that arises or results by reason of any action or inaction of Recruiter, or its Staff, or Sub-recruiter in connection with providing services under this Agreement ("Proceeding"). Innovative shall have the right to select counsel and defend itself (and control the defense) with regard to any Proceeding, and is entitled to be reimbursed fully by Recruiter for all fees, costs and expenses, fines, penalties, settlements, and damages.  This Section is to be interpreted broadly.

### 15. TERMINATION

a.  This Agreement may be terminated without cause by Innovative or Recruiter (or Sub-recruiter) with ten (10) days written notice of termination. If the Agreement is terminated without cause, Recruiter and its Sub-recruiter shall retain the right to receive future Incentives if (1) the Recruiter (or Sub-recruiter) has been providing services to Innovative for the preceding two years; and (2) to the extent Recruiter (or Sub-recruiter) does not have a debit balance with Innovative or the third-party advancer at the time of termination.  To the extent Recruiter or Sub-recruiter has such a debit balance at the time of termination, Innovative shall be entitled to apply any account payable to Innovative to pay back any Advance.

b.  Innovative may immediately terminate the Agreement for cause by sending a written notice to Recruiter (or a Subrecruiter) identifying any breach(es) of this Agreement or any representation or warranty.  If the Agreement is terminated for cause, Recruiter (or Subrecruiter): (1) forfeits the right to any future Incentive; (2) forfeits the right to any Non-Advance Incentive; (3) any Debit Balance owed to Innovative or to the third party advancer shall be and is immediately due and payable; and (4) any account payable to Innovative or the advance partner may be used to pay the Debit Balance, even if the Debit Balance is not linked to the accounts payable.

### 16. CONFIDENTIAL INFORMATION

a.  Recruiter, its Staff, and Sub-recruiter agree they receive access to confidential information.  Recruiter, its Staff, and Sub-recruiter agree to maintain as confidential any "Confidential Information" received pursuant to providing services under this Agreement.  "Confidential Information" includes oral and written communications, and the exchange of information and documents, whether in draft or in final form, irrespective of the format or medium by which any information or document is created, maintained, stored, or transmitted. Confidential Information also includes, but is not limited to, DATA, research, opinions, information, documents, technical information, factual summaries, data, interview reports, summaries, analyses, compilations, reports, procedure, tactics, products, programs, methods, systems, price-books, rating tools, know-how, plans or policies, and any information about Potential Limited Partners or Limited

Page **8** of **10**

**Carson Attachment LL, Page 66 of 95**

Zoho Sign Document ID: 3041BA23-TJWACBZDJ9XUD5BOGMFPZZ7LWVYOZ3Y14X89JJYEOL8

Partners, any information contained on Innovative's software platform, and information concerning any benefits or programs approved by Innovative.

b. Recruiter, its Staff, and Sub-recruiter shall keep all Confidential Information confidential and not use, disclose, disseminate, publish, reproduce, or otherwise make available any Confidential Information to any person, firm, corporation, or other entity, except for the purpose of performing services under this Agreement. Recruiter (and/or Sub-recruiter) also agrees to take reasonable steps to ensure that its Staff does not disclose any Confidential Information, including obtaining enforceable contractual commitments not to disclose the information.

c. Recruiter agrees not to directly or indirectly solicit, request, or encourage anyone to cancel a Limited Partnership, or benefit thereof. Recruiter also agrees not to directly or indirectly recruit, sell, market, or cooperate in the recruitment, sale, or marketing to any Limited Partner on any non-Innovative benefit or program while this Agreement is active and for a period of two (2) years from the date of its termination.

d. Any breach of this Agreement, including an actual or threatened imminent disclosure of Confidential Information in violation of the terms of this Agreement, could not be adequately remedied by damages. Therefore, it is agreed that injunctive relief (temporary, preliminary, and permanent) to enforce specifically the terms of this Agreement would be necessary and appropriate.

e. These provisions survive any termination of this Agreement.

## 17. PRIVACY

Recruiter agrees to abide by all applicable privacy laws and regulations and shall have at all times a compliant Privacy Policy. To the extent Recruiter violates any privacy law or regulation, Recruiter is solely responsible for such violation.

## 18. APPLICABLE LAW AND FORUM

This Agreement shall be governed by, interpreted under, and enforced under the laws of the state of Texas, without regard to conflict of laws principles. Any claims arising out of or related to this Agreement or the provision of services hereunder shall be commenced in federal or state court having jurisdiction over Dallas County, Texas. The prevailing party shall be entitled to recover its attorney's fees and costs.

## 19. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement of the Parties to this Agreement regarding the subject matter herein. No amendment, modification, supplement, or waiver of any provision of this Agreement or any rights or obligations of any Party shall be effective, except pursuant to a writing signed by all Parties, and any such amendment, modification, supplement, or waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

Zoho Sign Document ID: 3041BA23-TJWACBZDJ9XUD5BOGMFPZZ7LWVYOZ3Y14X89JJYEOL8

## 20. SEVERABILITY

If any provision of this Agreement is found or deemed to be invalid or unenforceable by law, then such provision will be deemed stricken from this Agreement, and the remaining provisions of this Agreement will continue in full force and effect.

## 21. NOTICES

To the extent that any provision of this Agreement contemplates or requires a Party to provide notice to any other Party to this Agreement, such notice shall be made effective by emailing and certified U.S. mail.

Notice to Innovative Partnership LP.

[ 2234 N federal Highway Boca Raton FL 33431
contracting@innovativepartnerslp.com

Notice to  National Elite Health LLC

[ 6750 N Andrews Ave STE 200, Fort Lauderdale, FL,
33309
info@nationalelitehealth.com

## 22. PERSONAL GUARANTEE

To induce and in consideration of Innovative to enter into this Agreement, the undersigned for Recruiter (herein also referred to as "Guarantor") unconditionally, personally, individually, jointly, and severally guarantees the performance of Recruiter and its Sub-recruiter(s) under this Agreement and the payment and repayment of all sums due, including but not limited to the Incentive Advance.

## 23. Effective Date

The effective date of this Agreement shall be the date the last signature required in the signature blocks below is added to this Agreement.

**Innovative Partners LP:**

By: *Jimmie Gutton*

Printed Name: contracting

Title: General Partner

Dated: Sep 08 2023 10:42 EDT

**RECRUITER and GUARANTOR:**

By: *Christopher Makulik*

Printed Name: Christopher Makulik

Title: MGR

Dated: Sep 08 2023 12:24 EDT

**Carson Attachment LL, Page 68 of 95**

# EXHIBIT "D"

Zoho Sign Document ID: 3041BA23-JLFP97E3LIYRA4NRZ7QBUHJ4YSSUXLUXSKSCEMBGK3M

## Agreement

This Agreement ("Agreement") is among and between Innovative Partners LP, a Texas limited partnership, ("Innovative") and Pinnacle Health Solutions LLC ("Recruiter"), and potentially certain sub-recruiters as set forth on the signature page (collectively, "the "Parties").

1. **DEFINITIONS**

    a.  Innovative – Innovative Partners LP ("Partnership").

    b.  Recruiter – [Isaac Varon       ], a[   Pinnacle Health Solutions LLC   ] that recruits Limited Partners for the Partnership and provides Innovative's programs or benefits to Limited Partners.

    c.  Sub-recruiter – an individual, company, or business that recruits Limited Partners for the Partnership, subject to a separate contract with Recruiter. A Sub-recruiter must sign this Agreement and acts as the agent of Recruiter, and Recruiter acts as the principal. Sub-recruiter is bound by this Agreement to the same extent as is Recruiter.

    d.  Prospective Limited Partner – an individual who is interested in becoming a Limited Partner in the Partnership.

    e.  Active Limited Partner – an individual who has agreed to join the Partnership as a Limited Partner and who has agreed to (1) allow DATA to be collected and used by the Partnership, and (2) agrees to use the Internet at least 500 hours a year.

    f.  Inactive Limited Partner -- an individual who has agreed to join the Partnership as a Limited Partner and who has agreed to make a capital contribution to the Partnership in an amount determined by Innovative.

    g.  Limited Partner – an Active Limited Partner or an Inactive Limited Partner.

    h.  DATA – (1) any Internet information collected from a Limited Partner from their digital device or devices and (2) any information collected or obtained by Recruiter, its Staff, or Sub-recruiter from or about any Prospective Limited Partner or Limited Partner, and any lead provide to Recruiter, its Staff or Sub-recruiter.

    i.  Debit Balance – the amounts owed by Recruiter or Sub-recruiter to Innovative or to an Advance Partner.

    j.  Product List and Incentive Schedule – the Schedule attached as Exhibit A to this Agreement and any amendments. Innovative may amend the Product List and Incentive Schedule with ten (10) days written notice to Recruiter. Recruiter is solely responsible for informing any Staff or Sub-recruiter of any amendment.

Page 1 of 10

Zoho Sign Document ID: 3041BA23-JLFP97E3LIYRA4NRZ7QBUHJ4YSSUXLUXSKSCEMBGK3M

k.   Incentive – the payment made to Recruiter or Sub-recruiter according to the then-current and approved Product List and Incentive Schedule for a payment linked to an approved Limited Partner whose payment has been received by Innovative.

l.   Advance Incentive – a lump sum of money paid out to Recruiter or Sub-recruiter by Innovative or an advance partner before the receipt of the Incentive, which otherwise would be paid monthly.

m.  Advance Partner – an entity that advances to or purchases commissions from Recruiter or Sub-recruiter pursuant to a commission advance or commission purchase agreement.

n.   Non-Advance Incentive—a fixed amount of money that may, in Innovative's sole discretion, be paid to Recruiter or Sub-recruiter on a monthly basis, separate from any other incentive.  The Non-Advance incentive is not eligible for an Advance but may be used to repay the Advance.

o.   Staff – employees, contractors, vendors, or others who provide services for Recruiter.

p.   Staff Agreement – a contract between Recruiter and its Staff or Sub-recruiter and its Staff that expressly requires Staff to abide by and accept Innovative's policies, rules, and other provisions as set for in this Agreement.

q.   Limited Partnership Materials – the Limited Partner Joinder Agreement, enrollment forms, and application materials which must be signed and approved by Innovative before anyone can become a Limited Partner.

r.   Good Standing – A Recruiter, its Staff, or Sub-recruiter is in Good Standing if (i) they are currently providing services to Innovated under this Agreement and/or a Staff Agreement (as applicable); (ii) no applicable contract has been terminated for cause; (iii) they are not in violation of the law or government regulation; (iv) they are not alleged to be in breach of Innovative's rules or policies, and (v) the Recruiter or Sub-recruiter has been providing services to Innovative for the last 24 consecutive months.

2.  **RECRUITING NEW LIMITED PARTNERS**

a.   Recruiter shall recruit Active and Inactive Limited Partners.  Once a Potential Limited Partner indicates a desire to become a Limited Partner, the Potential Limited Partner must sign the Limited Partnership Materials.  Recruiter shall ensure that the Limited Partnership Materials are completed by the Potential Limited Partner fully and truthfully.  Thereafter, Recruiter shall submit the completed Limited Partnership Materials to Innovative for approval.

b.   Recruiter is not authorized to make, in writing, verbally, or otherwise, any statement or representation of any kind guaranteeing that any Potential Limited Partner will be accepted as a Limited Partner or will be issued any benefit or

**Carson Attachment LL, Page 71 of 95**

Zoho Sign Document ID: 3041BA23-JLFP97E3LIYRA4NRZ7QBUHJ4YSSUXLUXSKSCEMBGK3M

program (as applicable) unless or until the Limited Partnership Materials have been reviewed and approved by Innovative and a Partnership certificate is issued. Recruiter shall not market or sell any health benefit program to any Potential Limited Partner while that Potential Limited Partner's Limited Partnership Materials are pending approval from Innovative or is a Limited Partner.

c.  Recruiter shall not request the payment in any manner from any Potential Limited Partner or Limited Partner for any fee, dues, or otherwise, directly or indirectly, unless and until expressly authorized by Innovative. Any payment made by any Potential Limited Partner or Limited Partner, for any reason, including fees, dues, or other otherwise, shall be promptly delivered or transited to Innovative.

d.  If Recruiter, its Staff, or Sub-recruiter is contacted by a Potential Limited Partner or Limited Partner seeking to cancel his or her partnership or transaction, Recruiter, Staff, or Sub-recruiter will promptly refer the Potential Limited Partner or Limited Partner to Innovative Partner Services.

e.  If Innovative determines that any Recruiter, Staff, or Sub-recruiter sold or marketed any benefit or product to a Potential Limited Partner that the Limited Partner or Innovative later decides was not appropriate, Innovative, and not Recruiter, Staff or Sub-recruiter, shall have the right, in its sole discretion, to move the Limited Partner to a different benefit or program, and any incentive or other payment due to Recruiter, Staff or Sub-recruiter shall be transferred to and belong to Innovative.

## 3. RECRUITER'S REPRESENTATIONS AND WARRANTIES

a.  Recruiter represents and warrants it will not, and will not allow any of Staff or Sub-recruiter to use or employ any unethical or illegal means to prevent or delay any Potential Limited Partner or Limited Partner to terminate or cancel any transaction.

b.  Recruiter represents and warrants that it, its Staff, and Sub-recruiter will ensure that all Limited Partnership Materials are completed by the Potential Limited Partner fully and truthfully.

c.  Recruiter represents and warrants it will not allow any Staff or Sub-recruiter to use Innovative's business name, trademark, or service mark without Innovative's prior express approval.

d.  Recruiter represents and warrants that all Staff have signed a Staff Agreement.

e.  Recruiter represents and warrants it, its Staff, and Sub-recruiter will comply with all applicable state, federal, and local laws and regulations, including but not limited to complying with the Telephone Consumer Protection Act ("TCPA"), maintaining an internal DO NOT CALL (DNC) list, and ensuring that no leads are generated from either pre-recorded solicitation calls or using an auto-dialer.

Page **3** of **10**

Zoho Sign Document ID: 3041BA23-JLFP97E3LIYRA4NRZ7QBUHJ4YSSUXLUXSKSCEMBGK3M

f.  Recruiter and Sub-recruiter represent and warrant that each has a compliant privacy policy, and that both will follow all applicable rules, regulations, and laws regarding privacy.

g.  Recruiter and Sub-recruiter represent and warrant that no Incentive Advance account will have a persistency above 10%.

## 4.  STAFF AND SUB-RECRUITERS

a.  All Recruiter's (and Sub-recruiter's) Staff who provide services to Innovative shall sign a Staff Agreement. Only those who have signed the Staff Agreement will be authorized by Innovative to provide services under this Agreement.

b.  Recruiter is responsible and liable for the actions and inactions of Staff and Sub-recruiter

c.  Recruiter is solely responsible for training Staff and Sub-recruiter. All training materials must be submitted to, and approved by, Innovative: (1) at least yearly; (2) at the start of any new marketing or program release; and (3) at Innovative's request, in its sole discretion.

d.  Recruiter shall be solely responsible for all costs and expenses incurred for training, hiring, and officing its Staff, or Sub-recruiter when providing services under this Agreement. Innovative will not reimburse Recruiter or Sub-recruiter for any operating costs or expenses.

e.  Staff must be officed at Recruiter's or Sub-recruiter's location. Staff may not provide services to Innovative remotely or from their home.

f.  Recruiter must ensure that all Staff and Sub-recruiter comply with the terms of this Agreement, the Staff Agreement, Innovative's policies and procedures, and all applicable laws and regulations. Failure to do so will be a material breach of this Agreement and will result in termination for cause as set forth in Section 15(b).

## 5.  DATA

a.  Recruiter, Staff, and Sub-recruiter may be provided or may obtain DATA. Any such DATA is the property of, and owned by, Innovative. The DATA is Confidential Information, as set forth in Section 16. Recruiter, Staff, and Sub-recruiter may not use any DATA unless performing services under this Agreement. To avoid all doubt, Recruiter, Staff, and Sub-recruiter shall not use any DATA for any other purpose, including working on its or their own, or working for a third party.

b.  If Recruiter, its Staff, or Sub-recruiter is alleged to have violated any law or regulation, or breaches or is alleged to have breached this Agreement in any way, all DATA provided to or obtained by the alleged violator shall be turned over to Innovative immediately, and no less than two (2) days after knowledge or

Page 4 of 10

Zoho Sign Document ID: 3041BA23-JLFP97E3LIYRA4NRZ7QBUHJ4YSSUXLUXSKSCEMBGK3M

suspicion of any violation. Any Incentive linked to any alleged breach or violation shall become the sole property of Innovative.

6. **PAYMENTS AND ACCOUNT STATEMENTS**

   a. For any transaction that results from Recruiter, its Staff, or Sub-recruiter bringing in a new Limited Partner which becomes approved by Innovative, Innovative will account to Recruiter (or Sub-recruiter, if Innovative has elected to pay or account to the Sub-recruiter directly) for the linked Incentive and the Non-Advance Incentive (if applicable).

   b. Innovative shall provide to Recruiter (or Sub-recruiter if Innovative has elected to pay or account to the Sub-recruiter directly), a monthly statement of account showing any Debit Amounts ("Recruiter Account Statement"). Once a Recruiter or Sub-recruiter is no longer providing services to Innovative, Innovative will provide a Recruiter Account Statement only upon written request.

   c. Recruiter and Sub-recruiter will be deemed to have acknowledged, approved, and consented to the Recruiter Account Statement and the amounts stated therein (e.g., the amount of any Incentive and Non-Advance Incentive (if applicable)), and such Recruiter Account Statement will conclusively bind Recruiter and Sub-recruiter to the stated amounts, and not be subject to any objection for any reason unless the objecting party provides a detailed written objection within thirty (30) days from the date the specific Recruiter Account Statement is provided or made available to Recruiter.

   d. After the passage of thirty (30) days as set forth above in subsection (c), neither Recruiter nor Sub-recruiter, shall have a right: (i) to file or commence any lawsuit, file any lien, or initiate any other proceeding against Innovative or its owners or officers in connection with or relating to the specific Recruiter Account Statement, or (ii) to challenge the payments in the Recruiter Account Statement. If any objection is made after thirty (30) days, Recruiter is solely and exclusively responsible for any disparity, including if any objection is made by a Sub-recruiter.

   e. Any and all rights to challenge the accuracy of anything in the Recruiter Account Statement if not expressly objected to within thirty (30) days is hereby expressly waived.

   f. If a detailed written objection is made timely by Recruiter or Sub-recruiter, and Innovative determines, in its sole discretion, that the objection has merit, Innovative and Recruiter shall use their best efforts to remedy the discrepancy.

   g. In any event, and even if Innovative determines the objection has merit, Innovative shall only be responsible for the amount of the discrepancy, as to each Recruiter Account Statement, up to $5,000. If the discrepancy on a specific Recruiter Account Statement exceeds $5,000, Innovative shall not be liable or responsible for any discrepancy amount over $5,000.

Zoho Sign Document ID: 3041BA23-JLFP97E3LIYRA4NRZ7QBUHJ4YSSUXLUXSKSCEMBGK3M

## 7. INCENTIVES AND INCENTIVE ADVANCE

a.  Recruiter or Sub-recruiter may, in Innovative's sole discretion, receive an Incentive Advance from Innovative or a third party. Innovative or a third-party may charge administrative fees for administering and maintaining accounts associated with the Incentive Advance.

b.  If Recruiter or Sub-recruiter receives an Incentive Advance, Innovative may deduct from any account payable to Recruiter or Sub-recruiter (or its affiliates or successors) -- even if the specific account did not receive the Advance -- an amount necessary to repay the Incentive Advance and fees.

c.  To the extent Innovative determines that repayment of the Incentive Advance and fees may not be made timely by Recruiter or Sub-recruiter, for any reason — including for an average persistency over 10%, -- Innovative may deduct from any amounts payable to Recruiter or Sub-recruiter (or its affiliates or successors) -- even if the specific account or affiliate/successor did not receive the Advance -- an amount necessary to repay the Incentive Advance and fees.

>    1.  For the avoidance of doubt, Recruiter and its affiliates and successors are ultimately responsible for the repayment of any Incentive Advance and fees for its or its *Sub-recruiter(s)*, regardless of which account received the advance.
>
>    2.  Also, for the avoidance of doubt, Innovative may deduct from any amount or account payable to Recruiter or Sub-recruiter (or its affiliates or successors) – including from a Non-Advance Incentive account or amount payable.

d.  Once the Advance Incentive and fees have been repaid in full, if there remains any Incentive money in Recruiter's or Sub-recruiter account or due to Recruiter or Sub-recruiter, Recruiter and/or Sub-recruiter (as applicable) are eligible, at Innovative's discretion, to be paid that remaining Incentive money if Recruiter or Sub-recruiter has vested by providing services under this Agreement to Innovative for 24 consecutive months and is in Good Standing.

## 8. NON-ADVANCE INCENTIVES

a.  Recruiter or Sub-recruiter may, in Innovative's sole discretion, receive a Non-Advance Incentive, which will be paid monthly.

b.  Innovative may deduct from any Non-Advance Incentive account or amount payable to repay any Advance Incentive owed by Recruiter or Sub-recruiter.

## 9. LIMITATION OF DAMAGES

Page 6 of 10

Zoho Sign Document ID: 3041BA23-JLFP97E3LIYRA4NRZ7QBUHJ4YSSUXLUXSKSCEMBGK3M

a. Subject to Section 6, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL INNOVATIVE OR ITS OWNERS OR OFFICERS BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, DIRECT, INDIRECT, SPECIAL, PUNITIVE OR OTHER DAMAGES WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATED TO THE PROVISION OF SERVICES UNDER THIS AGREEMENT OR THE PAYMENT OR REPAYMENT OF AN INCENTIVE, INCENTIVE ADVANCE OR A NON-ADVANCE INCENTIVE.  IN NO EVENT SHALL INNOVATIVE BE LIABLE FOR DAMAGE OF ANY KIND, LOSS OF DATA, LOSS OF PROFITS, INTERRUPTION OF BUSINESS, OR OTHER FINANCIAL LOSSES ARISING DIRECTLY OR INDIRECTLY FROM THE PROVISION OF SERVICES UNDER THIS AGREEMENT OR THE PAYMENT OR REPAYMENT OF AN INCENTIVE, INCENTIVE ADVANCE OR A NON-ADVANCE INCENTIVE USE OF THIS PRODUCT. ANY LIABILITY OF INNOVATIVE WILL BE EXCLUSIVELY LIMITED TO $50,000.

## 10. INNOVATIVE'S RIGHT TO INSPECT

Innovative has the right to conduct, at any time and without notice, on-site audits, inspections of books and records (including any electronic records), and inspections of physical business operations of Recruiter and or Sub-recruiter. Innovative may, at its sole discretion, conduct quality calls (e.g., secret shoppers) to monitor Recruiter, its Staff and Sub-recruiter.

## 11. RECRUITER'S OBLIGATIONS TO NOTIFY INNOVATIVE

If Recruiter learns or suspects that it, any of its Staff, or Sub-recruiters violated the terms of this Agreement, Recruiter shall notify Innovative within three (3) calendar days. If Recruiter learns or suspects that a complaint, investigation, regulatory or governmental inquiry exists or is threatened, or there exists an allegation of a violation of any law or regulation in connection with services provided under this Agreement, Recruiter shall notify Innovative within three (3) calendar days. If Recruiter receives information that Recruiter, its Staff, or Sub-Recruiters is planning to or already has granted a lien or assigned any rights to any, it shall notify Innovative immediately.

## 12. ASSIGNMENT

Innovative may freely transfer or assign its rights under this Agreement. Recruiter, its Staff, or Sub-recruiter may not transfer or assign any rights under this Agreement without the prior written consent of Innovative.

## 13. LIMITATION OF AUTHORITY

Except as expressly authorized in this Agreement, Recruiter, its Staff, and Sub-recruiter do not have authority to take any action on behalf of the Innovative.

## 14. INDEMNIFICATION BY RECRUITER

**Carson Attachment LL, Page 76 of 95**

Zoho Sign Document ID: 3041BA23-JLFP97E3LIYRA4NRZ7QBUHJ4YSSUXLUXSKSCEMBGK3M

Recruiter agrees to fully indemnify and hold Innovative (and its owners and officers) harmless from any and all costs, expenses (including attorneys' fees), damages, judgments, and liability, whether by investigation, fine, penalty, claim, complaint, petition, judgment, settlement or otherwise, of every kind and nature that arises or results by reason of any action or inaction of Recruiter, or its Staff, or Sub-recruiter in connection with providing services under this Agreement ("Proceeding"). Innovative shall have the right to select counsel and defend itself (and control the defense) with regard to any Proceeding, and is entitled to be reimbursed fully by Recruiter for all fees, costs and expenses, fines, penalties, settlements, and damages. This Section is to be interpreted broadly.

## 15. TERMINATION

a. This Agreement may be terminated without cause by Innovative or Recruiter (or Sub-recruiter) with ten (10) days written notice of termination. If the Agreement is terminated without cause, Recruiter and its Sub-recruiter shall retain the right to receive future Incentives if (1) the Recruiter (or Sub-recruiter) has been providing services to Innovative for the preceding two years; and (2) to the extent Recruiter (or Sub-recruiter) does not have a debit balance with Innovative or the third-party advancer at the time of termination. To the extent Recruiter or Sub-recruiter has such a debit balance at the time of termination, Innovative shall be entitled to apply any account payable to Innovative to pay back any Advance.

b. Innovative may immediately terminate the Agreement for cause by sending a written notice to Recruiter (or a Subrecruiter) identifying any breach(es) of this Agreement or any representation or warranty. If the Agreement is terminated for cause, Recruiter (or Subrecruiter): (1) forfeits the right to any future Incentive; (2) forfeits the right to any Non-Advance Incentive; (3) any Debit Balance owed to Innovative or to the third party advancer shall be and is immediately due and payable; and (4) any account payable to Innovative or the advance partner may be used to pay the Debit Balance, even if the Debit Balance is not linked to the accounts payable.

## 16. CONFIDENTIAL INFORMATION

a. Recruiter, its Staff, and Sub-recruiter agree they receive access to confidential information. Recruiter, its Staff, and Sub-recruiter agree to maintain as confidential any "Confidential Information" received pursuant to providing services under this Agreement. "Confidential Information" includes oral and written communications, and the exchange of information and documents, whether in draft or in final form, irrespective of the format or medium by which any information or document is created, maintained, stored, or transmitted. Confidential Information also includes, but is not limited to, DATA, research, opinions, information, documents, technical information, factual summaries, data, interview reports, summaries, analyses, compilations, reports, procedure, tactics, products, programs, methods, systems, price-books, rating tools, know-how, plans or policies, and any information about Potential Limited Partners or Limited

Page 8 of 10

Zoho Sign Document ID: 3041BA23-JLFP97E3LIYRA4NRZ7QBUHJ4YSSUXLUXSKSCEMBGK3M

Partners, any information contained on Innovative's software platform, and information concerning any benefits or programs approved by Innovative.

b. Recruiter, its Staff, and Sub-recruiter shall keep all Confidential Information confidential and not use, disclose, disseminate, publish, reproduce, or otherwise make available any Confidential Information to any person, firm, corporation, or other entity, except for the purpose of performing services under this Agreement. Recruiter (and/or Sub-recruiter) also agrees to take reasonable steps to ensure that its Staff does not disclose any Confidential Information, including obtaining enforceable contractual commitments not to disclose the information.

c. Recruiter agrees not to directly or indirectly solicit, request, or encourage anyone to cancel a Limited Partnership, or benefit thereof. Recruiter also agrees not to directly or indirectly recruit, sell, market, or cooperate in the recruitment, sale, or marketing to any Limited Partner on any non-Innovative benefit or program while this Agreement is active and for a period of two (2) years from the date of its termination.

d. Any breach of this Agreement, including an actual or threatened imminent disclosure of Confidential Information in violation of the terms of this Agreement, could not be adequately remedied by damages. Therefore, it is agreed that injunctive relief (temporary, preliminary, and permanent) to enforce specifically the terms of this Agreement would be necessary and appropriate.

e. These provisions survive any termination of this Agreement.

## 17. PRIVACY

Recruiter agrees to abide by all applicable privacy laws and regulations and shall have at all times a compliant Privacy Policy. To the extent Recruiter violates any privacy law or regulation, Recruiter is solely responsible for such violation.

## 18. APPLICABLE LAW AND FORUM

This Agreement shall be governed by, interpreted under, and enforced under the laws of the state of Texas, without regard to conflict of laws principles. Any claims arising out of or related to this Agreement or the provision of services hereunder shall be commenced in federal or state court having jurisdiction over Dallas County, Texas. The prevailing party shall be entitled to recover its attorney's fees and costs.

## 19. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement of the Parties to this Agreement regarding the subject matter herein. No amendment, modification, supplement, or waiver of any provision of this Agreement or any rights or obligations of any Party shall be effective, except pursuant to a writing signed by all Parties, and any such amendment, modification, supplement, or waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

Zoho Sign Document ID: 3041BA23-JLFP97E3LIYRA4NRZ7QBUHJ4YSSUXLUXSKSCEMBGK3M

## 20. SEVERABILITY

If any provision of this Agreement is found or deemed to be invalid or unenforceable by law, then such provision will be deemed stricken from this Agreement, and the remaining provisions of this Agreement will continue in full force and effect.

## 21. NOTICES

To the extent that any provision of this Agreement contemplates or requires a Party to provide notice to any other Party to this Agreement, such notice shall be made effective by emailing and certified U.S. mail.

Notice to Innovative Partnership LP.

[ 2234 N Federal Highway #3862 Boca Raton FL 33431

contracting@innovativepartnerslp.com

Notice to Pinnacle Health Solutions LLC

[ 6750 N Andrews Ave Suite]200 Ft Lauderdale FL 33309

info@phs-llc.net

## 22. PERSONAL GUARANTEE

To induce and in consideration of Innovative to enter into this Agreement, the undersigned for Recruiter (herein also referred to as "Guarantor") unconditionally, personally, individually, jointly, and severally guarantees the performance of Recruiter and its Sub-recruiter(s) under this Agreement and the payment and repayment of all sums due, including but not limited to the Incentive Advance.

## 23. Effective Date

The effective date of this Agreement shall be the date the last signature required in the signature blocks below is added to this Agreement.

**Innovative Partners LP:**

By: *Jimmie Sutton*

Printed Name: Jimmie Sutton

Title: General Partner

Dated: Oct 03 2023 12:51 EDT

**RECRUITER and GUARANTOR:**

By: *Isaac Varon*

Printed Name: Isaac Varon

Title: Manager

Dated: Oct 05 2023 15:03 EDT

**Carson Attachment LL, Page 79 of 95**

# Composite
# EXHIBIT "E"



February 10, 2025

**Anthony Bottley**
United Way Health
300 Lock Road, Suite 202
Deerfield Beach, Florida 33442

**Subject: Notice of Immediate Termination of the Recruiter Agreement and Demand for Damages**

Mr. Bottley,

We are writing regarding the Recruiter Agreement ("Agreement") dated July 28, 2023, between Innovative Partners, LP ("Innovative") and you, as recruiter and guarantor, on behalf of United Way Health ("Recruiter"). This letter serves as formal notice of immediate termination of the Agreement for cause, pursuant to Section 15(b) of the Agreement. Further, pursuant to Section 22, Recruiter guarantees the payment of the Debit Balances of Recruiter's sub-recruiters. Because payment is due immediately upon termination, Innovative demands payment of all outstanding Debit Balances. **Consequently, Recruiter owes Innovative, $1,536,336.97, due immediately.**[1]

**Grounds for Termination**

1. **Interference with Contractual Relations**: Innovative has learned that Recruiter has leveraged its position, certain monetary advances, and Innovative's confidential data to encourage other recruiters to violate the terms of their agreements with Innovative. Recruiter's flagrant efforts to encourage the poaching of Innovative's contracted recruiters violates applicable law. Specifically, the law prohibits intentionally interfering with a contract in a manner that causes damages to a party to that contract. Here, Innovative understands that Recruiter has encouraged and advised other recruiters to breach the terms of their contracts requiring cooperation with necessary inspections and auditing. By doing so, Recruiter has intentionally hindered Innovative's ability to assess performance, contractual compliance, and (as particularly relevant here) potential legal causes of action. Recruiter is certainly aware of this requirement, as it is a part of Recruiter's Agreement as well (*see* Agreement, Section 10). Further, Recruiter has facilitated the misuse of Innovative's data for purposes of poaching members and potential members (*see* Agreement, Section 5). Recruiter's conduct constitutes tortious interference with contractual relations and violates both Section 3 and Section 5 of the Agreement. Recruiter's conduct has caused Innovative substantial damages, which will only continue to accrue. Be advised that Innovative is ready and willing to pursue its

---

[1] Upon further investigation, Innovative may discover that Recruiter owes Innovative more than this amount. Innovative notes that damages may continue to accrue and that, with more information, the total amounts due and owing may change. Innovative reserves the right to seek all of the damages for which it is entitled.



legal remedies. Under applicable law, such remedies include damages, interest, court costs, punitive damages, and, in certain instances, attorneys' fees.

2. **Breach of Contract and Failure to Notify**: Recruiter has not performed as required by the Agreement and engaged in conduct prohibited by the Agreement. Section 1 and Section 5 of the Agreement prohibit the misuse of Innovative's data, which, under the clear terms of the Agreement, is Innovative's property. *First*, by encouraging recruiters not to engage in the audit process and to conceal the Innovative data that would be necessary to conduct an audit, Recruiter violates Innovative's property rights in its confidential information. *Second*, under the Agreement, "Recruiter, Staff, and Sub-recruiter shall not" use Innovative's confidential information for any purpose other than those contemplated by Agreement. This prohibition extends to "working for a third party." Here, Recruiter is encouraging the use of Innovative's data and confidential information to avoid contractual obligations to Innovative and to divert business away from Innovative. *Third*, all of Innovative's data and confidential information is to be turned over to Innovative within two days of "knowledge or suspicion" of any violation of law or of the Agreement. Recruiter failed to do so. *Fourth*, under Section 11 of the Agreement, Recruiter is to report known violations of law or the terms of the Agreement to Innovative within three calendar days. Recruiter failed to meet this contractual requirement. *Finally*, Recruiter and sub-recruiters are obligated to keep all Innovative confidential information confidential and not "make available" any confidential information "to any person, form, corporation, or other entity, except for the purpose of performing services under [the] Agreement." To the extent that Recruiter is misappropriating or encouraging the misappropriation of Innovative's confidential information, Recruiter is violating the Agreement. Indeed, Recruiter has agreed that even "threatened imminent disclosure of Confidential Information" would give Innovative the right to pursue injunctive relief and other remedies.

3. **Conversion/Misappropriation of Trade Secrets**: Further, applicable law prohibits Recruiter and sub-recruiters from taking and controlling Innovative's property without Innovative's authorization. Innovative hereby demands the return of any Innovative property, including Innovative's confidential information. Innovative requests a meeting to arrange the most efficient manner of Recruiter and sub-recruiter turning over any and all confidential information and ensuring that it will not be further misused. Recruiter should also be aware that unauthorized use of Innovative's confidential data may constitute the misappropriation of trade secrets under applicable law.

4. **Negligence/Fraud**: Further, Recruiter's failure to exercise the reasonable degree of care necessary to minimize the risk of harm to Innovative creates an actionable claim of negligence. Lastly, any misrepresentations made to Innovative to accomplish Recruiter and sub-recruiter's purposes may support claims of negligent misrepresentation and fraud.



5. **Civil Conspiracy**: Recruiter should also be aware that collusion with sub-recruiters to accomplish the breaches and violations of law outlined above create a viable cause of action for civil conspiracy.

6. **Failure to Meet Performance Obligations**: Recruiter has failed to remain in good standing under the Agreement for the following reasons: (1) Recruiter is no longer providing services to Innovative; (2) the Agreement has been terminated for cause, including failure to honor the terms of the Agreement; and (3) Recruiter has not provided services to Innovative for 24 consecutive months. Moreover, as Recruiter knows, Recruiter is responsible and liable for its sub-recruiters failure to perform. Consequently, Recruiter must pay all Debit Balances immediately.

**Provisions Effective Immediately**

Pursuant to Section 15(b) of the Agreement, the following contractual provisions are now in effect:

1. **Forfeiture of Incentives**: Recruiter forfeits all rights to any future Incentives or Non-Advance Incentives (as defined in Sections 1(k) and 1(m) of the Agreement).

2. **Immediate Payment of Debit Balances**: The Debit Balances currently owed to Innovative is immediately due and payable. Further, any accounts payable through Recruiter's uplines or downlines are immediately due and payable. Additionally, under Section 22 of the Agreement, Recruiter personally guarantees "all sums due" from any of its sub-recruiters. The total amount due and payable is, at minimum, $1,536,336.97.

**Reservation of Rights**

This termination does not waive or relinquish any rights, claims, defenses, or causes of action that Innovative may hold under the Agreement or applicable law. All such rights are expressly reserved.

**Retention of Documents**

Be aware that, under applicable law, Recruiter is required to maintain any and all electronic or hard copy documents, communications, and electronic data and information which may be relevant to Innovative's claims, including but not limited to, hard drives, databases, web pages, server logs, spreadsheets, correspondence, "chat" messages, e-mail and electronic communications, social media posts, off-line storage or information stored on removable media, information contained on computers (whether business or personal), and network access information. A failure to abide by these requirements may result in penalties against Recruiter, and form the basis of legal claims for spoliation, in the event Innovative is forced to pursue litigation.

**Demand for Damages**

As stated above, Innovative demands payment of the outstanding Debit Balances, which total, at minimum, $1,536,336.97. Innovative notes that further damages may accrue and reserves its



right to seek additional damages. Innovative encourages Recruiter to respond to this letter stating Recruiter's willingness and intention to pay the total amount due. If Recruiter fails to do so, Innovative may take legal action to vindicate its rights without further notice to Recruiter.

**Contact Information**
Should you have any questions or require further clarification, please direct all inquiries to the following:

**Innovative Partners, LP**
**Amani Shokry**
**Chief Technology Officer**
**amani@innovativepartnerslp.com**
**1401 N. University Drive, Coral Springs, FL 33071**

We trust this letter clarifies our position and the immediate actions that are required.

Sincerely,

**Amani Shokry**
**Innovative Partners, LP**



February 13, 2025

**Via FedEx overnight:**
**Isaac Varon**
Pinnacle Health Solutions LLC
6750 N. Andrews Ave., Suite 200
Fort Lauderdale, FL 33309

**Subject: Notice of Immediate Termination of the Recruiter Agreement and Demand for Payment**

Mr. Varon,

We write regarding the Recruiter Agreement ("Agreement") dated July 24, 2023, between Innovative Partners, LP ("Innovative") and you, as recruiter and guarantor, on behalf of Pinnacle Health Solutions LLC ("Recruiter"). This letter serves as formal notice of immediate termination of the Agreement for cause, pursuant to Section 15(b) of the Agreement. Further, pursuant to Section 22, Recruiter guarantees the payment of the Debit Balances of Recruiter's sub-recruiters, if any. Because payment is due immediately upon termination, Innovative demands payment of all outstanding Debit Balances. **Consequently, Recruiter owes Innovative, $307,210.49, due immediately.**[1]

**Grounds for Termination**
Recruiter has failed to remain in good standing under the Agreement for the following reasons: (1) Recruiter is no longer providing services to Innovative; (2) the Agreement has been terminated for cause, including failure to honor the terms of the Agreement; and (3) Recruiter has not provided services to Innovative for 24 consecutive months. Consequently, Recruiter must pay all Debit Balances immediately.

**Provisions Effective Immediately**
Pursuant to Section 15(b) of the Agreement, the following contractual provisions are now in effect:

1. **Forfeiture of Incentives:** Recruiter forfeits all rights to any future Incentives or Non-Advance Incentives (as defined in Sections 1(k) and 1(m) of the Agreement).

2. **Immediate Payment of Debit Balances:** The Debit Balances currently owed to Innovative are immediately due and payable. Additionally, under Section 22 of the Agreement, Recruiter personally guarantees "all sums due" from any of its sub-recruiters. The total amount due and payable is, at minimum, $307,210.49.

---

[1] Upon further investigation, Innovative may discover that Recruiter owes Innovative more than this amount. Innovative notes that damages may continue to accrue and that, with more information, the total amounts due and owing may change. Innovative reserves the right to seek all of the damages for which it is entitled.



**Reservation of Rights**

This termination does not waive or relinquish any rights, claims, defenses, or causes of action that Innovative may hold under the Agreement or applicable law. All such rights are expressly reserved.

**Retention of Documents**

Be aware that, under applicable law, Recruiter is required to maintain any and all electronic or hard copy documents, communications, and electronic data and information which may be relevant to Innovative's claims, including but not limited to, hard drives, databases, web pages, server logs, spreadsheets, correspondence, "chat" messages, e-mail and electronic communications, social media posts, off-line storage or information stored on removable media, information contained on computers (whether business or personal), and network access information. A failure to abide by these requirements may result in penalties against Recruiter, and form the basis of legal claims for spoliation, in the event Innovative is forced to pursue litigation.

**Demand for Payment**

As stated above, Innovative demands payment of the outstanding Debit Balances, which total, at minimum, $307,210.49. Innovative notes that further damages may accrue and reserves its right to seek additional damages. Innovative encourages Recruiter to respond to this letter stating Recruiter's willingness and intention to pay the total amount due. If Recruiter fails to do so, Innovative may take legal action to vindicate its rights without further notice to Recruiter.

**Contact Information**

Should you have any questions or require further clarification, please direct all inquiries to the following:

**Innovative Partners, LP**
**Amani Shokry**
**Chief Technology Officer**
**amani@innovativepartnerslp.com**
**1401 N. University Drive, Coral Springs, FL 33071**

We trust this letter clarifies our position and the immediate actions that are required.

Sincerely,

**Amani Shokry**
**Innovative Partners, LP**



**February 11, 2025**

<u>**Via FedEx overnight:**</u>
**Christopher Makulik**
National Elite Health LLC
6750 N. Andrews Ave., Suite 200
Fort Lauderdale, FL 33309

**Subject: Notice of Immediate Termination of the Recruiter Agreement and Demand for Payment**

Mr. Makulik,

We write regarding the Recruiter Agreement ("Agreement") dated September 8, 2023, between Innovative Partners, LP ("Innovative") and National Elite Health LLC ("Recruiter"). This letter serves as formal notice of immediate termination of the Agreement for cause, pursuant to Section 15(b) of the Agreement. Further, pursuant to Section 22, Recruiter guarantees the payment of the Debit Balances of Recruiter's sub-recruiters, if any. Because payment is due immediately upon termination, Innovative demands payment of all outstanding Debit Balances. **Consequently, Recruiter owes Innovative, $489,420.08, due immediately.** [1]

**Grounds for Termination**
Recruiter has failed to remain in good standing under the Agreement for the following reasons: (1) Recruiter is no longer providing services to Innovative; (2) the Agreement has been terminated for cause, including failure to honor the terms of the Agreement; and (3) Recruiter has not provided services to Innovative for 24 consecutive months. Consequently, Recruiter must pay all Debit Balances immediately.

**Provisions Effective Immediately**
Pursuant to Section 15(b) of the Agreement, the following contractual provisions are now in effect:

1. **Forfeiture of Incentives**: Recruiter forfeits all rights to any future Incentives or Non-Advance Incentives (as defined in Sections 1(k) and 1(m) of the Agreement).

2. **Immediate Payment of Debit Balances**: The Debit Balances currently owed to Innovative are immediately due and payable. Additionally, under Section 22 of the Agreement, Recruiter personally guarantees "all sums due" from any of its sub-recruiters. The total amount due and payable is, at minimum, $489,420.08.

**Reservation of Rights**

---

[1] Upon further investigation, Innovative may discover that Recruiter owes Innovative more than this amount. Innovative notes that damages may continue to accrue and that, with more information, the total amounts due and owing may change. Innovative reserves the right to seek all of the damages for which it is entitled.



This termination does not waive or relinquish any rights, claims, defenses, or causes of action that Innovative may hold under the Agreement or applicable law. All such rights are expressly reserved.

**Retention of Documents**

Be aware that, under applicable law, Recruiter is required to maintain any and all electronic or hard copy documents, communications, and electronic data and information which may be relevant to Innovative's claims, including but not limited to, hard drives, databases, web pages, server logs, spreadsheets, correspondence, "chat" messages, e-mail and electronic communications, social media posts, off-line storage or information stored on removable media, information contained on computers (whether business or personal), and network access information. A failure to abide by these requirements may result in penalties against Recruiter, and form the basis of legal claims for spoliation, in the event Innovative is forced to pursue litigation.

**Demand for Payment**

As stated above, Innovative demands payment of the outstanding Debit Balances, which total, at minimum, $489,420.08. Innovative notes that further damages may accrue and reserves its right to seek additional damages. Innovative encourages Recruiter to respond to this letter stating Recruiter's willingness and intention to pay the total amount due. If Recruiter fails to do so, Innovative may take legal action to vindicate its rights without further notice to Recruiter.

**Contact Information**

Should you have any questions or require further clarification, please direct all inquiries to the following:

**Innovative Partners, LP**
**Amani Shokry**
**Chief Technology Officer**
**amani@innovativepartnerslp.com**
**1401 N. University Drive, Coral Springs, FL 33071**

We trust this letter clarifies our position and the immediate actions that are required.

Sincerely,

**Amani Shokry**
**Innovative Partners, LP**


INNOVATIVE
PARTNERS

**February 13, 2025**

<u>**Via FedEx overnight:**</u>
**Shazad Khan**
Nationwide Health Solutions, LLC
4300 N. University Dr., Bldg. F100, Suite A139
Sunrise, Florida 33351

**Subject: Notice of Immediate Termination of the Recruiter Agreement and Demand for Payment**

Mr. Khan,

We write regarding the Recruiter Agreement ("Agreement") dated July 24, 2023, between Innovative Partners, LP ("Innovative") and Nationwide Health Solutions, LLC ("Recruiter"). This letter serves as formal notice of immediate termination of the Agreement for cause, pursuant to Section 15(b) of the Agreement. Further, pursuant to Section 22, Recruiter guarantees the payment of the Debit Balances of Recruiter's sub-recruiters, if any. Because payment is due immediately upon termination, Innovative demands payment of all outstanding Debit Balances. **Consequently, Recruiter owes Innovative, $323,642.80, due immediately.**[1]

**Grounds for Termination**
Recruiter has failed to remain in good standing under the Agreement for the following reasons: (1) Recruiter is no longer providing services to Innovative; (2) the Agreement has been terminated for cause, including failure to honor the terms of the Agreement; and (3) Recruiter has not provided services to Innovative for 24 consecutive months. Consequently, Recruiter must pay all Debit Balances immediately.

**Provisions Effective Immediately**
Pursuant to Section 15(b) of the Agreement, the following contractual provisions are now in effect:

1. **Forfeiture of Incentives**: Recruiter forfeits all rights to any future Incentives or Non-Advance Incentives (as defined in Sections 1(k) and 1(m) of the Agreement).

2. **Immediate Payment of Debit Balances**: The Debit Balances currently owed to Innovative are immediately due and payable. Additionally, under Section 22 of the Agreement, Recruiter personally guarantees "all sums due" from any of its sub-recruiters. The total amount due and payable is, at minimum, $323,642.80.

---

[1] Upon further investigation, Innovative may discover that Recruiter owes Innovative more than this amount. Innovative notes that damages may continue to accrue and that, with more information, the total amounts due and owing may change. Innovative reserves the right to seek all of the damages for which it is entitled.



**Reservation of Rights**

This termination does not waive or relinquish any rights, claims, defenses, or causes of action that Innovative may hold under the Agreement or applicable law. All such rights are expressly reserved.

**Retention of Documents**

Be aware that, under applicable law, Recruiter is required to maintain any and all electronic or hard copy documents, communications, and electronic data and information which may be relevant to Innovative's claims, including but not limited to, hard drives, databases, web pages, server logs, spreadsheets, correspondence, "chat" messages, e-mail and electronic communications, social media posts, off-line storage or information stored on removable media, information contained on computers (whether business or personal), and network access information. A failure to abide by these requirements may result in penalties against Recruiter, and form the basis of legal claims for spoliation, in the event Innovative is forced to pursue litigation.

**Demand for Payment**

As stated above, Innovative demands payment of the outstanding Debit Balances, which total, at minimum, $323,642.80. Innovative notes that further damages may accrue and reserves its right to seek additional damages. Innovative encourages Recruiter to respond to this letter stating Recruiter's willingness and intention to pay the total amount due. If Recruiter fails to do so, Innovative may take legal action to vindicate its rights without further notice to Recruiter.

**Contact Information**

Should you have any questions or require further clarification, please direct all inquiries to the following:

**Innovative Partners, LP**
**Amani Shokry**
**Chief Technology Officer**
**amani@innovativepartnerslp.com**
**1401 N. University Drive, Coral Springs, FL 33071**

We trust this letter clarifies our position and the immediate actions that are required.

Sincerely,

**Amani Shokry**
**Innovative Partners, LP**

# Composite

# EXHIBIT "F"

**Carson Attachment LL, Page 91 of 95**



| Date | Audit Status | Agency | Opening Balance | Closing Balance | Total Commission | Advance Credits | Advance Debits | Earned Credits | Earned Debits | Weekly PMPM | Monthly PMPM | Upline PMPM | Upline Monthly PMPM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 01-01 01-31 | ✓ | United Way Health | $571,864.58 | $416,063.60 | $56,291.15 | $457.84 | $50,187.87 | $91.58 | $6,565.99 | $348.00 | $23,239.00 | $0.00 | $0.00 |
| 01-01 01-31 | ✓ | Nationwide Health Solutions | $327,177.89 | $323,642.80 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $446.00 | $0.00 | $420.00 |
| 01-01 01-31 | ✓ | National Elite Health | $575,787.86 | $490,083.09 | — | $0.00 | — | $0.00 | — | — | $7,334.00 | — | $6,825.00 |
| 01-01 01-31 | ✓ | Pinnacle Health Solutions | $447,740.59 | $297,165.69 | — | $0.00 | — | $0.00 | — | — | $4,417.00 | — | $4,075.00 |

Case 0:26-cv-60976-AHS   Document 1-33   Entered on FLSD Docket 04/07/2026   Page 55 of 84



| Agency | Monthly PMPM Credit | Monthly PMPM Debit | Upline Monthly PMPM Credit | Upline Monthly PMPM Debit | Total by Agency | Upline Total | Total For Upline Agencies Only | Status |
|---|---|---|---|---|---|---|---|---|
| Nationwide Health | $5,145.00 | $230.00 | $4,815.00 | $210.00 | $4,915.00 | $4,605.00 | | PAID |
| United Way Health | $20,103.00 | $845.00 | $0.00 | $0.00 | $19,258.00 | $0.00 | $23,863.00 | PAID |

United Way Monthly Comission Payment

Comissions received by United Way from Nationwide Health

United Way Total Monthly Comission Payment

Newest | Next | Previous | Oldest     Show deals: On ▾ | Download ▾ | Print this view

| Date ↓ | Description | Type | Status | Amount | Available Balance |
|---|---|---|---|---|---|

Showing results for "23863.00"     [Show all transactions]

| 11/27/2023 | TRANSFER INNOVATIVE PARTNERS :United Way Health LL Confirmation# 1609938958 | | C | -23,863.00 | |

▶ Icon legend

Newest | Next | Previous | Oldest     Show deals: On ▾ | Download ▾ | Print this view

COMMISSIONS

○ Current Week
○ Date Range    From Date 10/01/2023    To Date 10/31/2023

☑ Include Downline    Report Aggregation Monthly

| Agency | Opening Balance | Closing Balance | Total Commission | Advance Credits | Advance Debits | Earned Credits | Earned Debits | Weekly PMPM | Monthly PMPM | Upline PMPM | Upline Monthly PMPM |
|---|---|---|---|---|---|---|---|---|---|---|---|
| United Way Health | $715,752.70 | $514,630.22 | ($123,414.12) | $2,678.51 | ($113,057.14) | $565.70 | ($13,601.20) | ($2,046.00) | $19,258.00 | $0.00 | $0.00 |
| Nationwide Health Solutions | $479,119.80 | $481,997.20 | $83,961.06 | $207,271.62 | ($155,224.17) | $49,464.32 | ($17,550.71) | $3,147.00 | $4,915.00 | $2,205.00 | $4,605.00 |



| Agency | Monthly PMPM | Upline Monthly PMPM | Total by Agency | Upline Total | Total For Upline Agencies Only | Total | Status |
|---|---|---|---|---|---|---|---|
| United Way Health | $27,152.00 | | $37,457.00 | | | | PAID |
| National Elite Health | $11,045.00 | $10,305.00 | $11,045.00 | | | | PAID |

United Way Monthly Comission Payment

Comissions received by United Way from National Elite Health

United Way Total Monthly Comission Payment

United Way Health — COMMERCIAL CHECKING — Paid — Sep 17, 2024 — Sep 18, 2024 — $37,457.00 — Actions∨

**Processing status**

Scheduled — On its way — Completed

We've completed your payment. Depending on the payee's bank, it may take up to 24 hours before the money is available.

Pay to — United Way Health (...0967)
Pay from — COMMERCIAL CHECKING (...1697)
Amount — $37,457.00

**Agency Portal** — LOGOUT

◉ Current Week
○ Date Range — From Date: 08/01/2024 — To Date: 08/31/2024

☑ Include Downline

| Date | Agency | Opening Balance | Closing Balance | Total Commission | Advance Credits | Advance Debits | Earned Credits | Earned Debits | Weekly PMPM | Monthly PMPM | Upline PMPM | Upline Monthly PMPM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Date | Agency | | | | | | | | | | | |
| 08/01 09/31 | United Way Health | $1,113,504.83 | $1,196,226.91 | $274,998.87 | ($363,074.96) | ($151,982.63) | $88,569.99 | ($24,763.45) | $11,137.00 | $27,152.00 | $0.00 | $0.00 |
| 08/01 08/31 | Nationwide Health Solutions | $351,277.34 | $345,474.58 | $0.00 | $0.00 | ($0.00) | $0.00 | ($0.00) | $0.00 | $702.00 | $0.00 | $660.00 |
| 08/01- 08/31 | National Elite Health | $757,696.15 | $838,304.35 | $228,449.21 | $312,351.50 | ($133,680.57) | $74,370.30 | ($24,592.02) | $5,706.00 | $11,045.00 | $5,340.00 | $10,305.00 |



| Agency | Monthly PMPM | Upline Monthly PMPM | Total by Agency | Upline Total Agencies Only | Total For Upline | Status |
|---|---|---|---|---|---|---|
| United Way Health | $21,363.00 | | $30,348.00 | | | PAID |
| Pinnacle Health | $5,098.00 | $8,985.00 | $30,348.00 | | | PAID |
| National Elite Health | $4,261.00 | $4,725.00 | $5,098.00 | | | PAID |
| | $4,261.00 | $4,260.00 | $4,261.00 | | | PAID |

United Way Total Monthly Comission Payment — Comissions received by United Way from Pinnacle Health — United Way Total Monthly Comission Payment

United Way Health

COMMERCIAL CHECKING

Paid   Apr 9, 2024   Apr 10, 2024   $30,348.00   Actions ∨

Print this page

**Processing status**

Scheduled — On its way — Completed

We've completed your payment. Depending on the payee's bank, it may take up to 24 hours before the money is available.

Pay in: United Way Health (...0967)
Pay from: COMMERCIAL CHECKING (...1697)
Amount: $30,348.00

◉ Current Week  ☐
○ Date Range   03/01/2024  ☐   03/31/2024  ☐

☑ Include Downline

| Date | Audit Status | Agency | Opening Balance | Closing Balance | Total Commission | Advance Credits | Advance Debits | Earned Credits | Earned Debits | Weekly PMPM | Monthly PMPM | Upline PMPM | Upline Monthly PMPM |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 03/01-03/31 | ⊘ | United Way Health | $1,050,705.44 | $992,801.72 | $4,990.01 | $119,637.74 | ($80,761.10) | $30,942.54 | ($21,859.15) | $2,990.00 | $21,363.00 | $0.00 | $0.00 |
| 03/01-03/31 | ⊘ | Nationwide Health Solutions | $401,403.22 | $587,855.64 | ($987.73) | $972.63 | ($51,426.85) | $254.52 | ($787.43) | $1,293.00 | ($5.00) | $1,200.00 | |
| 03/01-03/31 | ⊘ | National Elite Health | $432,208.74 | $512,971.58 | $140,374.79 | $220,379.86 | ($108,537.08) | $51,223.97 | ($22,650.07) | $2,727.00 | $4,621.00 | $2,535.00 | $4,260.00 |
| 03/01-03/31 | ⊘ | Pinnacle Health Solutions | $381,923.19 | $424,480.52 | $103,199.65 | $157,961.37 | ($75,392.00) | $37,927.27 | ($17,296.99) | $2,226.00 | $5,098.00 | $2,070.00 | $4,725.00 |

# Carson Attachment MM

Case Number: CACE-25-000838 Division: 13
Filing # 214947100 E-Filed 01/20/2025 05:30:16 PM

IN THE CIRCUIT COURT OF THE 17TH JUDICIAL CIRCUIT IN AND FOR BROWARD COUNTY, FLORIDA

GENERAL JURISDICTION DIVISION

INNOVATIVE PARTNERS L.P., a Texas limited partnership,

        Plaintiff,

v.

ONE CHOICE COVERAGE LLC, a Wyoming limited liability company; and JAMAL MORGAN, an individual,

        Defendants.

CASE NO:

_____/

## COMPLAINT

Plaintiff, INNOVATIVE PARTNERS L.P. ("Innovative" or "Plaintiff"), through undersigned counsel, sues Defendants, ONE CHOICE COVERAGE LLC ("One Choice") and JAMAL MORGAN ("Morgan") (collectively "Defendants"), and alleges as follows:

## INTRODUCTION

1.    Plaintiff brings this action against Defendants for their misuse of monies lent by Plaintiff under a promissory note. As the parties' contracts require, the loan proceeds were to be used exclusively to establish a call center to recruit clients to join Plaintiff's healthcare programs. However, Plaintiff recently learned that Defendants used the funds for other purposes, resulting in at least $250,000 in damages.

*** FILED: BROWARD COUNTY, FL BRENDA D. FORMAN, CLERK 01/20/2025 05:30:15 PM.****

**Carson Attachment MM, Page 1 of 26**

## JURISDICTION, PARTIES AND VENUE

2. The amount in controversy in this action exceeds $50,000 exclusive of interest, costs, and attorneys' fees, and is therefore within the jurisdiction of this Court.

3. Plaintiff Innovative is a Texas limited partnership authorized to conduct business in this state, having its principal address in Broward County, located at 2234 North Federal Highway, #2862, Boca Raton, Florida 33431.

4. Upon information and belief, Defendant Morgan is a *sui juris* individual residing in Broward County, Florida.

5. Upon information and belief, Defendant One Choice is a Wyoming limited liability company, engaging and conducting business within the State of Florida, and specifically in Broward County where its Chief Executive Officer, Morgan, resides.

6. This Court has personal jurisdiction over Morgan as he is a resident of this State.

7. This Court has personal jurisdiction over One Choice because (a) One Choice is engaged in substantial and not isolated activity in this State (Fla. Stat. § 48.193(2)), (b) One Choice carrying on a business in this State and has an office in this State (Fla. Stat. § 48.193(1)(a)(1)), and (c) One Choice breached a contract within this State by failing to repay its debt to Plaintiff in this State (Fla. Stat. § 48.193(1)(a)(7)).

8. Venue is proper in Broward County because (a) Morgan resides here, (b) the causes of action alleged herein accrued here, (c) One Choice has a representative (Morgan) here, and (d) upon information and belief, the promissory note in dispute was signed in this county.

9. All conditions precedent to this action have been performed, have occurred, or have been waived.

2

**Carson Attachment MM, Page 2 of 26**

## FACTS

### A. The Parties' Agreements

10.     On or about September 26, 2024, Innovative and Morgan (ostensibly, but not expressly, on behalf of One Choice) executed that certain Agreement (the "Recruiter Agreement"), whereby One Choice agreed to undertake certain recruitment efforts on behalf of Innovative. A true and correct copy of the Recruiter Agreement is attached hereto as **Exhibit "A"**.

11.     On October 1, 2024, in furtherance of the Recruiter Agreement, One Choice, executed an Unsecured Promissory Note (the "Note", and together with the Recruiter Agreement, the "Agreements") under which Innovative disbursed $250,000.00 to One Choice in installments from October 2nd – October 20th, 2024 ("Sums Loaned"). A true and correct copy of the Note is attached hereto as **Exhibit "B."**

12.     The outstanding Sums Loaned accrue interest, until paid in full, at a rate of 4.57% per annum (the "Interest", and together with the Sums Loaned, collectively, the "Obligations). *See* Note at pg. 1.

13.     Innovative is the owner and holder of the Note.

14.     Pursuant to the Recruiter Agreement, Morgan was to establish a call center and hire staff in order to recruit eligible participants for Innovative's health care insurance programs.

15.     To that end, the Sums Loaned under the Note were limited to this exact purpose—to finance the recruitment of plan participants in health insurance plans sponsored by Innovative. *See* Note at pg. 1.

16.     Under the Recruiter Agreement, the Sums Loaned by Innovative could be offset by health care insurance premiums paid by eligible recruited participants ("Premium Payments"). *See* Recruiter Agreement at ¶ 6(a).

3

**Carson Attachment MM, Page 3 of 26**

17. In the absence of any Premium Payments, One Choice was obligated to repay any amount owed and due to Innovative.

18. To ensure Innovative's repayment, Morgan signed the Recruiter Agreement individually as a guarantor, to "unconditionally, personally, individually, jointly, and severally guarantee the performance of [One Choice] and its Sub-recruiter(s) under this Agreement and the payment and repayment of all sums due." *See* Recruiter Agreement at ¶ 22.

19. Importantly, the Sums Loaned under the Note "shall be considered a Non-Advance Incentive as defined in the Recruiter Agreement," *see* Note at pg. 1, establishing the Obligations under the Note as an amount to be repaid under the Recruiter Agreement.

### B. Default and Termination

20. The Recruiter Agreement allows for immediate termination for cause by sending written notice identifying any breach of the Recruiter Agreement. *See* Recruiter Agreement at ¶ 15(b).

21. In pertinent part, if the Recruiter Agreement is terminated for cause, One Choice forfeits the right to any Non-Advance Incentive, and any Debit Balance[1] owed to Innovative shall be and is immediately due and payable. *See* Recruiter Agreement at ¶ 15(b).

22. As the usage of the amounts loaned under the Note were limited in scope, failure to use these sums in conformity with Note's scope is expressly defined as an "Event of Default" thereunder. *See* Note at pg. 1.

23. The occurrence of an Event of Default under the Note allows Innovative to declare all Obligations immediately due and payable. *See* Note at pg. 2.

---

[1] The Recruiter Agreement defines a Debit Balance as "the amounts owed by [One Choice] or Sub-recruiter to Innovative or to an Advance Partner." *See* Recruiter Agreement at ¶ 1(i).

4

24.    Innovative recently discovered that One Choice did not use the Sums Loaned in the manner proscribed by the Note.  Rather, upon information and belief, Morgan has used the Sums Loaned for his own personal use and benefit.

25.    Upon information and belief, Defendants never intended to use the Sums Loaned in accordance with the intent and terms of the Agreements.

26.    In fact, One Choice, to date, has not established a call center or hired staff for the recruitment of eligible health care participants.

27.    On or about December 17, 2024, Innovative sent a Notice of Termination to One Choice and Morgan declaring the Sums Loaned immediately due and payable as well as terminating the Recruiter Agreement.  A true and correct copy of the Notice of Termination is attached hereto as **Exhibit "C."**

28.    Accordingly, Innovative has complied with the requirements set forth in the Agreements to accelerate the Obligations under the Note.

29.    The current Interest accrued is $3,142.66.

30.    Plaintiff has retained the undersigned law firm to initiate and maintain this action and is obligated to pay it a reasonable fee for its services in bringing this action, as well as all costs of collection.  Plaintiff is entitled to recover its attorneys' fees and costs from Defendant pursuant to paragraph 18 of the Recruiter Agreement and the express terms of the Note on page 2 thereof.

**COUNT 1**
**Breach of Promissory Note**
**(against One Choice)**

31.    Plaintiff incorporates and re-alleges paragraphs 1 through 30 above as though fully set forth herein.

32.    One Choice executed the Note.

5

**Carson Attachment MM, Page 5 of 26**

33.     Innovative is the owner and holder of the Note.

34.     One Choice defaulted under the Note by failing to use the Sums Loaned to finance the establishment of a call center, hire staff, or the recruitment of plan participants in Innovative's insurance plans.

35.     Upon information and belief, One Choice's principal, Morgan, used the Sums Loaned for his own personal use and benefit, resulting in an Event of Default under the Note.

36.     On or about December 17, 2024, Innovative sent One Choice and Morgan its Notice of Termination declaring the Sums Loaned under the Note immediately due and payable.

37.     One Choice owes Innovative $253,142.66 that is due as of the filing of this action, including the Sums Loaned and Interest accruing from each date of disbursement, payable under the Note. Interest continues to accrue.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendant, ONE CHOICE COVERAGE LLC, in an amount equal to the Sums Loaned and Interest (as of the date judgment is entered) under the Note, together with an award of attorneys' fees and costs pursuant to the express terms of the Note, and for such other relief as the Court deems just and proper.

## COUNT II
### Breach of Recruiter Agreement
### (against Morgan)

38.     Plaintiff incorporates and re-alleges paragraphs 1 through 30 above as though fully set forth herein.

39.     The Recruiter Agreement is a valid contract.

6

**Carson Attachment MM, Page 6 of 26**

40.     Under the Recruiter Agreement, Morgan signed as One Choice's guarantor, agreeing to unconditionally, personally, individually, jointly, and severally guarantee the payment and repayment of all sums due under the Recruiter Agreement.

41.     These payment obligations arise upon One Choice's default under the Note, entitling Innovative to recover the Obligations under the Note.

42.     One Choice breached the Note by failing to use the Sums Loaned in the manner proscribed by the Note.

43.     The misrepresentations in how the Sums Loaned would be used not only led to breach of the Note, but also resulted in a breach of the Recruiter Agreement, leading Innovative to terminate the Recruiter Agreement for cause.

44.     As a result of Innovative's for cause termination, One Choice forfeits the right to any Non-Advance Incentive, and "any Debit Balance owed to Innovative ... shall be and is immediately due and payable." *See* Recruiter Agreement at ¶ 15(b)(3).

45.     Notably, the Sums Loaned are labeled as a Non-Advance Incentive as defined under the Recruiter Agreement.

46.     Alternatively, if no resulting breach of the Recruiter Agreement is found, the Sums Loaned are recognized as a Non-Advance Incentive, and consequently a Debit Balance owed to Innovative.

47.     Innovative declared the Note Obligations immediately due and payable through its Notice of Termination.

48.     One Choice owes Innovative $253,142.66 that is due as of the filing of this action, including the Sums Loaned and Interest accruing from each date of disbursement.  Interest continues to accrue.

7

**Carson Attachment MM, Page 7 of 26**

49.     Morgan is personally liable under the Recruiter Agreement for the Sums Loaned and Interest. *See* Recruiter Agreement at ¶ 22.

50.     Morgan's has breached the Recruiter Agreement by failing to pay such sums, resulting in damages to Innovative.

WHEREFORE, Plaintiff INNOVATIVE PARTNERS L.P., demands judgment against Defendant, JAMAL MORGAN, in an amount equal to the Sums Loaned and Interest (as of the date judgment is entered) under the Note, together with an award of attorneys' fees and costs pursuant to paragraph 18 of the Recruiter Agreement, and for such other relief as the Court deems just and proper.

Date: <u>January 20, 2025</u>              Respectfully submitted,

                                        **SODHI SPOONT PLLC**
                                        3050 Biscayne Boulevard, Suite 701
                                        Miami, Florida 33137
                                        Tel: (305) 907-7573

                                        By: <u>*/s/ Joshua L. Spoont*</u>
                                             Joshua L. Spoont
                                             Florida Bar No. 53263
                                             josh@sodhispoont.com
                                             Mauricio A. Torres
                                             Florida Bar No. 1059067
                                             mauricio@sodhispoont.com
                                             *Counsel for Plaintiff*

8

**Carson Attachment MM, Page 8 of 26**

# EXHIBIT "A"

Carson Attachment MM, Page 9 of 26

Zoho Sign Document ID: 3041BA23-K1P86MH97R2OIF3FPQTILGD5ECVFUJQTD1SQ6HWAPQG

## Agreement

This Agreement ("Agreement") is among and between Innovative Partners LP, a Texas limited partnership, ("Innovative") and Jamal morgan _____ ("Recruiter"), and potentially certain sub-recruiters as set forth on the signature page (collectively, "the "Parties").

1. **DEFINITIONS**

    a. Innovative – Innovative Partners LP ("Partnership").

    b. Recruiter – [Jamal morgan   ], a[   One choice coverage               ] that recruits Limited Partners for the Partnership and provides Innovative's programs or benefits to Limited Partners.

    c. Sub-recruiter – an individual, company, or business that recruits Limited Partners for the Partnership, subject to a separate contract with Recruiter. A Sub-recruiter must sign this Agreement and acts as the agent of Recruiter, and Recruiter acts as the principal. Sub-recruiter is bound by this Agreement to the same extent as is Recruiter.

    d. Prospective Limited Partner – an individual who is interested in becoming a Limited Partner in the Partnership.

    e. Active Limited Partner – an individual who has agreed to join the Partnership as a Limited Partner and who has agreed to (1) allow DATA to be collected and used by the Partnership, and (2) agrees to use the Internet at least 500 hours a year.

    f. Inactive Limited Partner -- an individual who has agreed to join the Partnership as a Limited Partner and who has agreed to make a capital contribution to the Partnership in an amount determined by Innovative.

    g. Limited Partner – an Active Limited Partner or an Inactive Limited Partner.

    h. DATA – (1) any Internet information collected from a Limited Partner from their digital device or devices and (2) any information collected or obtained by Recruiter, its Staff, or Sub-recruiter from or about any Prospective Limited Partner or Limited Partner, and any lead provide to Recruiter, its Staff or Sub-recruiter.

    i. Debit Balance – the amounts owed by Recruiter or Sub-recruiter to Innovative or to an Advance Partner.

    j. Product List and Incentive Schedule – the Schedule attached as Exhibit A to this Agreement and any amendments. Innovative may amend the Product List and Incentive Schedule with ten (10) days written notice to Recruiter. Recruiter is solely responsible for informing any Staff or Sub-recruiter of any amendment.

Page 1 of 10

**Carson Attachment MM, Page 10 of 26**

Zoho Sign Document ID: 3041BA23-K1P86MH97R2OIF3FPQTILGD5ECVFUJQTD1SQ6HWAPQG

k. Incentive – the payment made to Recruiter or Sub-recruiter according to the then-current and approved Product List and Incentive Schedule for a payment linked to an approved Limited Partner whose payment has been received by Innovative.

l. Advance Incentive – a lump sum of money paid out to Recruiter or Sub-recruiter by Innovative or an advance partner before the receipt of the Incentive, which otherwise would be paid monthly.

m. Advance Partner – an entity that advances to or purchases commissions from Recruiter or Sub-recruiter pursuant to a commission advance or commission purchase agreement.

n. Non-Advance Incentive—a fixed amount of money that may, in Innovative's sole discretion, be paid to Recruiter or Sub-recruiter on a monthly basis, separate from any other incentive. The Non-Advance incentive is not eligible for an Advance but may be used to repay the Advance.

o. Staff – employees, contractors, vendors, or others who provide services for Recruiter.

p. Staff Agreement – a contract between Recruiter and its Staff or Sub-recruiter and its Staff that expressly requires Staff to abide by and accept Innovative's policies, rules, and other provisions as set for in this Agreement.

q. Limited Partnership Materials – the Limited Partner Joinder Agreement, enrollment forms, and application materials which must be signed and approved by Innovative before anyone can become a Limited Partner.

r. Good Standing – A Recruiter, its Staff, or Sub-recruiter is in Good Standing if (i) they are currently providing services to Innovated under this Agreement and/or a Staff Agreement (as applicable); (ii) no applicable contract has been terminated for cause; (iii) they are not in violation of the law or government regulation; (iv) they are not alleged to be in breach of Innovative's rules or policies, and (v) the Recruiter or Sub-recruiter has been providing services to Innovative for the last 24 consecutive months.

2. **RECRUITING NEW LIMITED PARTNERS**

a. Recruiter shall recruit Active and Inactive Limited Partners. Once a Potential Limited Partner indicates a desire to become a Limited Partner, the Potential Limited Partner must sign the Limited Partnership Materials. Recruiter shall ensure that the Limited Partnership Materials are completed by the Potential Limited Partner fully and truthfully. Thereafter, Recruiter shall submit the completed Limited Partnership Materials to Innovative for approval.

b. Recruiter is not authorized to make, in writing, verbally, or otherwise, any statement or representation of any kind guaranteeing that any Potential Limited Partner will be accepted as a Limited Partner or will be issued any benefit or

Page 2 of 10

**Carson Attachment MM, Page 11 of 26**

Zoho Sign Document ID  3041BA23-K1P86MH97R2OIF3FPQTILGD5ECVFUJQTD1SQ6HWAPQG

program (as applicable) unless or until the Limited Partnership Materials have been reviewed and approved by Innovative and a Partnership certificate is issued. Recruiter shall not market or sell any health benefit program to any Potential Limited Partner while that Potential Limited Partner's Limited Partnership Materials are pending approval from Innovative or is a Limited Partner.

c. Recruiter shall not request the payment in any manner from any Potential Limited Partner or Limited Partner for any fee, dues, or otherwise, directly or indirectly, unless and until expressly authorized by Innovative. Any payment made by any Potential Limited Partner or Limited Partner, for any reason, including fees, dues, or other otherwise, shall be promptly delivered or transited to Innovative.

d. If Recruiter, its Staff, or Sub-recruiter is contacted by a Potential Limited Partner or Limited Partner seeking to cancel his or her partnership or transaction, Recruiter, Staff, or Sub-recruiter will promptly refer the Potential Limited Partner or Limited Partner to Innovative Partner Services.

e. If Innovative determines that any Recruiter, Staff, or Sub-recruiter sold or marketed any benefit or product to a Potential Limited Partner that the Limited Partner or Innovative later decides was not appropriate, Innovative, and not Recruiter, Staff or Sub-recruiter, shall have the right, in its sole discretion, to move the Limited Partner to a different benefit or program, and any incentive or other payment due to Recruiter, Staff or Sub-recruiter shall be transferred to and belong to Innovative.

3. **RECRUITER'S REPRESENTATIONS AND WARRANTIES**

a. Recruiter represents and warrants it will not, and will not allow any of Staff or Sub-recruiter to use or employ any unethical or illegal means to prevent or delay any Potential Limited Partner or Limited Partner to terminate or cancel any transaction.

b. Recruiter represents and warrants that it, its Staff, and Sub-recruiter will ensure that all Limited Partnership Materials are completed by the Potential Limited Partner fully and truthfully.

c. Recruiter represents and warrants it will not allow any Staff or Sub-recruiter to use Innovative's business name, trademark, or service mark without Innovative's prior express approval.

d. Recruiter represents and warrants that all Staff have signed a Staff Agreement.

e. Recruiter represents and warrants it, its Staff, and Sub-recruiter will comply with all applicable state, federal, and local laws and regulations, including but not limited to complying with the Telephone Consumer Protection Act ("TCPA"), maintaining an internal DO NOT CALL (DNC) list, and ensuring that no leads are generated from either pre-recorded solicitation calls or using an auto-dialer.

**Carson Attachment MM, Page 12 of 26**

Zoho Sign Document ID: 3041BA23-K1P86MH97R2OIF3FPQTILGD5ECVFUJQTD1SQ6HWAPQG

    f.  Recruiter and Sub-recruiter represent and warrant that each has a compliant privacy policy, and that both will follow all applicable rules, regulations, and laws regarding privacy.

    g.  Recruiter and Sub-recruiter represent and warrant that no Incentive Advance account will have a persistency above 10%.

### 4.  STAFF AND SUB-RECRUITERS

    a.  All Recruiter's (and Sub-recruiter's) Staff who provide services to Innovative shall sign a Staff Agreement. Only those who have signed the Staff Agreement will be authorized by Innovative to provide services under this Agreement.

    b.  Recruiter is responsible and liable for the actions and inactions of Staff and Sub-recruiter

    c.  Recruiter is solely responsible for training Staff and Sub-recruiter.  All training materials must be submitted to, and approved by, Innovative: (1) at least yearly; (2) at the start of any new marketing or program release; and (3) at Innovative's request, in its sole discretion.

    d.  Recruiter shall be solely responsible for all costs and expenses incurred for training, hiring, and officing its Staff, or Sub-recruiter when providing services under this Agreement.  Innovative will not reimburse Recruiter or Sub-recruiter for any operating costs or expenses.

    e.  Staff must be officed at Recruiter's or Sub-recruiter's location.  Staff may not provide services to Innovative remotely or from their home.

    f.  Recruiter must ensure that all Staff and Sub-recruiter comply with the terms of this Agreement, the Staff Agreement, Innovative's policies and procedures, and all applicable laws and regulations.  Failure to do so will be a material breach of this Agreement and will result in termination for cause as set forth in Section 15(b).

### 5.  DATA

    a.  Recruiter, Staff, and Sub-recruiter may be provided or may obtain DATA.  Any such DATA is the property of, and owned by, Innovative.  The DATA is Confidential Information, as set forth in Section 16.  Recruiter, Staff, and Sub-recruiter may not use any DATA unless performing services under this Agreement.  To avoid all doubt, Recruiter, Staff, and Sub-recruiter shall not use any DATA for any other purpose, including working on its or their own, or working for a third party.

    b.  If Recruiter, its Staff, or Sub-recruiter is alleged to have violated any law or regulation, or breaches or is alleged to have breached this Agreement in any way, all DATA provided to or obtained by the alleged violator shall be turned over to Innovative immediately, and no less than two (2) days after knowledge or

**Carson Attachment MM, Page 13 of 26**

Zoho Sign Document ID: 3041BA23-K1P86MH97R2OIF3FPQTILGD5ECVFUJQTD1SQ6HWAPQG

suspicion of any violation. Any Incentive linked to any alleged breach or violation shall become the sole property of Innovative.

6. **PAYMENTS AND ACCOUNT STATEMENTS**

   a. For any transaction that results from Recruiter, its Staff, or Sub-recruiter bringing in a new Limited Partner which becomes approved by Innovative, Innovative will account to Recruiter (or Sub-recruiter, if Innovative has elected to pay or account to the Sub-recruiter directly) for the linked Incentive and the Non-Advance Incentive (if applicable).

   b. Innovative shall provide to Recruiter (or Sub-recruiter if Innovative has elected to pay or account to the Sub-recruiter directly), a monthly statement of account showing any Debit Amounts ("Recruiter Account Statement"). Once a Recruiter or Sub-recruiter is no longer providing services to Innovative, Innovative will provide a Recruiter Account Statement only upon written request.

   c. Recruiter and Sub-recruiter will be deemed to have acknowledged, approved, and consented to the Recruiter Account Statement and the amounts stated therein (e.g., the amount of any Incentive and Non-Advance Incentive (if applicable)), and such Recruiter Account Statement will conclusively bind Recruiter and Sub-recruiter to the stated amounts, and not be subject to any objection for any reason unless the objecting party provides a detailed written objection within thirty (30) days from the date the specific Recruiter Account Statement is provided or made available to Recruiter.

   d. After the passage of thirty (30) days as set forth above in subsection (c), neither Recruiter nor Sub-recruiter, shall have a right: (i) to file or commence any lawsuit, file any lien, or initiate any other proceeding against Innovative or its owners or officers in connection with or relating to the specific Recruiter Account Statement, or (ii) to challenge the payments in the Recruiter Account Statement. If any objection is made after thirty (30) days, Recruiter is solely and exclusively responsible for any disparity, including if any objection is made by a Sub-recruiter.

   e. Any and all rights to challenge the accuracy of anything in the Recruiter Account Statement if not expressly objected to within thirty (30) days is hereby expressly waived.

   f. If a detailed written objection is made timely by Recruiter or Sub-recruiter, and Innovative determines, in its sole discretion, that the objection has merit, Innovative and Recruiter shall use their best efforts to remedy the discrepancy.

   g. In any event, and even if Innovative determines the objection has merit, Innovative shall only be responsible for the amount of the discrepancy, as to each Recruiter Account Statement, up to $5,000. If the discrepancy on a specific Recruiter Account Statement exceeds $5,000, Innovative shall not be liable or responsible for any discrepancy amount over $5,000.

**Carson Attachment MM, Page 14 of 26**

Zoho Sign Document ID: 3041BA23-K1P86MH97R2OIF3FPQTILGD5ECVFUJQTD1SQ6HWAPQG

## 7. INCENTIVES AND INCENTIVE ADVANCE

a. Recruiter or Sub-recruiter may, in Innovative's sole discretion, receive an Incentive Advance from Innovative or a third party. Innovative or a third-party may charge administrative fees for administering and maintaining accounts associated with the Incentive Advance.

b. If Recruiter or Sub-recruiter receives an Incentive Advance, Innovative may deduct from any account payable to Recruiter or Sub-recruiter (or its affiliates or successors) -- even if the specific account did not receive the Advance -- an amount necessary to repay the Incentive Advance and fees.

c. To the extent Innovative determines that repayment of the Incentive Advance and fees may not be made timely by Recruiter or Sub-recruiter, for any reason — including for an average persistency over 10%, -- Innovative may deduct from any amounts payable to Recruiter or Sub-recruiter (or its affiliates or successors) -- even if the specific account or affiliate/successor did not receive the Advance -- an amount necessary to repay the Incentive Advance and fees.

    1. For the avoidance of doubt, Recruiter and its affiliates and successors are ultimately responsible for the repayment of any Incentive Advance and fees for its or its *Sub-recruiter(s)*, regardless of which account received the advance.

    2. Also, for the avoidance of doubt, Innovative may deduct from any amount or account payable to Recruiter or Sub-recruiter (or its affiliates or successors) – including from a Non-Advance Incentive account or amount payable.

d. Once the Advance Incentive and fees have been repaid in full, if there remains any Incentive money in Recruiter's or Sub-recruiter account or due to Recruiter or Sub-recruiter, Recruiter and/or Sub-recruiter (as applicable) are eligible, at Innovative's discretion, to be paid that remaining Incentive money if Recruiter or Sub-recruiter has vested by providing services under this Agreement to Innovative for 24 consecutive months and is in Good Standing.

## 8. NON-ADVANCE INCENTIVES

a. Recruiter or Sub-recruiter may, in Innovative's sole discretion, receive a Non-Advance Incentive, which will be paid monthly.

b. Innovative may deduct from any Non-Advance Incentive account or amount payable to repay any Advance Incentive owed by Recruiter or Sub-recruiter.

## 9. LIMITATION OF DAMAGES

Page 6 of 10

**Carson Attachment MM, Page 15 of 26**

Zoho Sign Document ID: 3041BA23-K1P86MH97R2OIF3FPQTILGD5ECVFUJQTD1SQ6HWAPQG

a. Subject to Section 6, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, IN NO EVENT WILL INNOVATIVE OR ITS OWNERS OR OFFICERS BE LIABLE FOR ANY CONSEQUENTIAL, INCIDENTAL, DIRECT, INDIRECT, SPECIAL, PUNITIVE OR OTHER DAMAGES WHATSOEVER ARISING OUT OF OR IN ANY WAY RELATED TO THE PROVISION OF SERVICES UNDER THIS AGREEMENT OR THE PAYMENT OR REPAYMENT OF AN INCENTIVE, INCENTIVE ADVANCE OR A NON-ADVANCE INCENTIVE. IN NO EVENT SHALL INNOVATIVE BE LIABLE FOR DAMAGE OF ANY KIND, LOSS OF DATA, LOSS OF PROFITS, INTERRUPTION OF BUSINESS, OR OTHER FINANCIAL LOSSES ARISING DIRECTLY OR INDIRECTLY FROM THE PROVISION OF SERVICES UNDER THIS AGREEMENT OR THE PAYMENT OR REPAYMENT OF AN INCENTIVE, INCENTIVE ADVANCE OR A NON-ADVANCE INCENTIVE USE OF THIS PRODUCT. ANY LIABILITY OF INNOVATIVE WILL BE EXCLUSIVELY LIMITED TO $50,000.

### 10. INNOVATIVE'S RIGHT TO INSPECT

Innovative has the right to conduct, at any time and without notice, on-site audits, inspections of books and records (including any electronic records), and inspections of physical business operations of Recruiter and or Sub-recruiter. Innovative may, at its sole discretion, conduct quality calls (e.g., secret shoppers) to monitor Recruiter, its Staff and Sub-recruiter.

### 11. RECRUITER'S OBLIGATIONS TO NOTIFY INNOVATIVE

If Recruiter learns or suspects that it, any of its Staff, or Sub-recruiters violated the terms of this Agreement, Recruiter shall notify Innovative within three (3) calendar days. If Recruiter learns or suspects that a complaint, investigation, regulatory or governmental inquiry exists or is threatened, or there exists an allegation of a violation of any law or regulation in connection with services provided under this Agreement, Recruiter shall notify Innovative within three (3) calendar days. If Recruiter receives information that Recruiter, its Staff, or Sub-Recruiters is planning to or already has granted a lien or assigned any rights to any, it shall notify Innovative immediately.

### 12. ASSIGNMENT

Innovative may freely transfer or assign its rights under this Agreement. Recruiter, its Staff, or Sub-recruiter may not transfer or assign any rights under this Agreement without the prior written consent of Innovative.

### 13. LIMITATION OF AUTHORITY

Except as expressly authorized in this Agreement, Recruiter, its Staff, and Sub-recruiter do not have authority to take any action on behalf of the Innovative.

### 14. INDEMNIFICATION BY RECRUITER

**Carson Attachment MM, Page 16 of 26**

Zoho Sign Document ID: 3041BA23-K1P86MH97R2OIF3FPQTILGD5ECVFUJQTD1SQ6HWAPQG

Recruiter agrees to fully indemnify and hold Innovative (and its owners and officers) harmless from any and all costs, expenses (including attorneys' fees), damages, judgments, and liability, whether by investigation, fine, penalty, claim, complaint, petition, judgment, settlement or otherwise, of every kind and nature that arises or results by reason of any action or inaction of Recruiter, or its Staff, or Sub-recruiter in connection with providing services under this Agreement ("Proceeding"). Innovative shall have the right to select counsel and defend itself (and control the defense) with regard to any Proceeding, and is entitled to be reimbursed fully by Recruiter for all fees, costs and expenses, fines, penalties, settlements, and damages. This Section is to be interpreted broadly.

### 15. TERMINATION

a.  This Agreement may be terminated without cause by Innovative or Recruiter (or Sub-recruiter) with ten (10) days written notice of termination. If the Agreement is terminated without cause, Recruiter and its Sub-recruiter shall retain the right to receive future Incentives if (1) the Recruiter (or Sub-recruiter) has been providing services to Innovative for the preceding two years; and (2) to the extent Recruiter (or Sub-recruiter) does not have a debit balance with Innovative or the third-party advancer at the time of termination. To the extent Recruiter or Sub-recruiter has such a debit balance at the time of termination, Innovative shall be entitled to apply any account payable to Innovative to pay back any Advance.

b.  Innovative may immediately terminate the Agreement for cause by sending a written notice to Recruiter (or a Subrecruiter) identifying any breach(es) of this Agreement or any representation or warranty. If the Agreement is terminated for cause, Recruiter (or Subrecruiter): (1) forfeits the right to any future Incentive; (2) forfeits the right to any Non-Advance Incentive; (3) any Debit Balance owed to Innovative or to the third party advancer shall be and is immediately due and payable; and (4) any account payable to Innovative or the advance partner may be used to pay the Debit Balance, even if the Debit Balance is not linked to the accounts payable.

### 16. CONFIDENTIAL INFORMATION

a.  Recruiter, its Staff, and Sub-recruiter agree they receive access to confidential information. Recruiter, its Staff, and Sub-recruiter agree to maintain as confidential any "Confidential Information" received pursuant to providing services under this Agreement. "Confidential Information" includes oral and written communications, and the exchange of information and documents, whether in draft or in final form, irrespective of the format or medium by which any information or document is created, maintained, stored, or transmitted. Confidential Information also includes, but is not limited to, DATA, research, opinions, information, documents, technical information, factual summaries, data, interview reports, summaries, analyses, compilations, reports, procedure, tactics, products, programs, methods, systems, price-books, rating tools, know-how, plans or policies, and any information about Potential Limited Partners or Limited

**Carson Attachment MM, Page 17 of 26**

Zoho Sign Document ID: 3041BA23-K1P86MH97R2OIF3FPQTILGD5ECVFUJQTD1SQ6HWAPQG

Partners, any information contained on Innovative's software platform, and information concerning any benefits or programs approved by Innovative.

b. Recruiter, its Staff, and Sub-recruiter shall keep all Confidential Information confidential and not use, disclose, disseminate, publish, reproduce, or otherwise make available any Confidential Information to any person, firm, corporation, or other entity, except for the purpose of performing services under this Agreement. Recruiter (and/or Sub-recruiter) also agrees to take reasonable steps to ensure that its Staff does not disclose any Confidential Information, including obtaining enforceable contractual commitments not to disclose the information.

c. Recruiter agrees not to directly or indirectly solicit, request, or encourage anyone to cancel a Limited Partnership, or benefit thereof. Recruiter also agrees not to directly or indirectly recruit, sell, market, or cooperate in the recruitment, sale, or marketing to any Limited Partner on any non-Innovative benefit or program while this Agreement is active and for a period of two (2) years from the date of its termination.

d. Any breach of this Agreement, including an actual or threatened imminent disclosure of Confidential Information in violation of the terms of this Agreement, could not be adequately remedied by damages. Therefore, it is agreed that injunctive relief (temporary, preliminary, and permanent) to enforce specifically the terms of this Agreement would be necessary and appropriate.

e. These provisions survive any termination of this Agreement.

## 17. PRIVACY

Recruiter agrees to abide by all applicable privacy laws and regulations and shall have at all times a compliant Privacy Policy. To the extent Recruiter violates any privacy law or regulation, Recruiter is solely responsible for such violation.

## 18. APPLICABLE LAW AND FORUM

This Agreement shall be governed by, interpreted under, and enforced under the laws of the state of Texas, without regard to conflict of laws principles. Any claims arising out of or related to this Agreement or the provision of services hereunder shall be commenced in federal or state court having jurisdiction over Dallas County, Texas. The prevailing party shall be entitled to recover its attorney's fees and costs.

## 19. ENTIRE AGREEMENT

This Agreement constitutes the entire agreement of the Parties to this Agreement regarding the subject matter herein. No amendment, modification, supplement, or waiver of any provision of this Agreement or any rights or obligations of any Party shall be effective, except pursuant to a writing signed by all Parties, and any such amendment, modification, supplement, or waiver shall be effective only in the specific instance and for the specific purpose stated in such writing.

Page **9** of **10**

**Carson Attachment MM, Page 18 of 26**

Zoho Sign Document ID: 3041BA23-K1P86MH97R2OIF3FPQTILGD5ECVFUJQTD1SQ6HWAPQG

## 20. SEVERABILITY

If any provision of this Agreement is found or deemed to be invalid or unenforceable by law, then such provision will be deemed stricken from this Agreement, and the remaining provisions of this Agreement will continue in full force and effect.

## 21. NOTICES

To the extent that any provision of this Agreement contemplates or requires a Party to provide notice to any other Party to this Agreement, such notice shall be made effective by emailing and certified U.S. mail.

Notice to Innovative Partnership LP.     Notice to Jamal morgan

[ 2234 N Federal Hwy #2862]Boca Raton, FL 33431     [                    ]
contracting@innovativepartnerslp.com

jamal@1waymarketingllc.com

## 22. PERSONAL GUARANTEE

To induce and in consideration of Innovative to enter into this Agreement, the undersigned for Recruiter (herein also referred to as "Guarantor") unconditionally, personally, individually, jointly, and severally guarantees the performance of Recruiter and its Sub-recruiter(s) under this Agreement and the payment and repayment of all sums due, including but not limited to the Incentive Advance.

## 23. Effective Date

The effective date of this Agreement shall be the date the last signature required in the signature blocks below is added to this Agreement.

**Innovative Partners LP:**                    **RECRUITER and GUARANTOR:**

By: *Jimmie Sutton*                    By: *Jamal Morgan*

Printed Name: Jimmie Sutton                    Printed Name: Jamal Morgan

Title: General Partner                    Title: CEO

Dated: Sep 27 2024 13:09 EDT                    Dated: Sep 26 2024 15:03 EDT

Page 10 of 10

# EXHIBIT "B"

Zoho Sign Document ID: 3041BA23-YNW29U6ZI_UAD28ZZWK55WA2TPE899V5OQSWBNCEAXU

## UNSECURED PROMISSORY NOTE

$250,000                                                                                          October 1, 2024

FOR VALUE RECEIVED, the undersigned, One Choice Coverage LLC, a [Wyoming        ]
limited liability company ("**Maker**"), promises to pay to the order of Innovative Partners L.P. ("**Payee**"),
the principal sum of Two Hundred Fifty Thousand Dollars ($250,000) (the "**Principal**") plus interest (the
"**Interest**") at such times and in the manner set forth herein. The Principal and Interest are collectively
referred to herein as the "**Obligations**", and all payments thereof shall be payable to Payee in lawful
money of the United States of America at 2234 North Federal Highway, #2862,Boca Raton, Florida
33431 or wherever otherwise designated in writing from time to time by Payee.

The Loan proceeds ("**Loan Proceeds**") evidenced by this Note shall be disbursed by Payee to
Maker upon Maker delivering to Payee at the above referenced address this Note duly executed by Maker
with disbursement of funds subject to the following payment schedule as follows:

1. $75,000 by October 2nd 2024

2. $75,000 by October 10th 2024

3. $100,000 by October 20th 2024

Maker is responsible to provide accurate banking information to Payee or delivery of funds may
be impacted. The Loan Proceeds shall be considered a Non-Advance Incentive as defined in the Recruiter
Agreement, entered into between the parties on or around Sep 27, 2024.

The Loan Proceeds shall be used exclusively by Maker to finance the recruitment of plan
participants in heath insurance plans sponsored by Payee.

As used herein, the term "Event of Default" means:

(i)         Maker breaching any of its covenants under this Note including, without limitation,
            Maker's failure to make any payment due under this Note or Maker's failure to use the
            Loan Proceeds as required under this Note.

(ii)        If Maker (a) applies for or consents to the appointment of a receiver, trustee or liquidator
            of Maker, or of all or a substantial part of its assets, (b) files a voluntary petition in
            bankruptcy, or admits in writing its inability to pay its debts as they come due,(c) makes
            an assignment for the benefit of creditors, (d) files a petition or an answer seeking a
            reorganization or an arrangement with creditors or seeking to take advantage of any
            insolvency law,(e) performs any other act of bankruptcy, or (f) is the subject of an
            involuntary bankruptcy, reorganization or insolvency proceeding, which remains
            unstayed or undismissed  for more than sixty (60) days.

All Principal shall be due and payable on October 1, 2026 (the "**Maturity Date**").  All Principal
outstanding from time to time hereunder shall accrue Interest until paid in full at a rate per annum equal to
four and fifty-seven hundredths percent (4.57%), calculated on the basis of a year of 365 days.  All

1

20162851.1/52888-00000

**Carson Attachment MM, Page 21 of 26**

Zoho Sign Document ID: 3041BA23-YNW29U6ZI_UAD28ZZWK55WA2TPE899V5OQSWBNCEAXU

accrued Interest shall be payable annually in arrears commencing October 2, 2025.

The Obligations will be forgiven by Payee if prior to the Maturity Date, Maker has obtained and maintained continuously for not less than six (6) months at least two thousand five hundred (2,500) "Qualified Participants" (as defined herein). The term "Qualified Participant" means a natural person who is a participant in a health insurance plan sponsored by Payee on a continuous basis for not less than six (6) consecutive months.

Upon the occurrence of an Event of Default, Payee may declare all of the Obligations to be immediately due and payable.

Maker's Federal Identification Number is: [ 995119109 ].

Maker may prepay from time to time all or any portion of the then outstanding Principal without premium or penalty of any kind or nature.  Any accrued Interest on the portion of the Principal which is prepaid shall be paid concurrently with such Principal payment.

If any action is taken on this Note, Maker shall pay all cost of collection incurred by Payee, including, without limitation, reasonable attorneys' fees.

MAKER AND PAYEE HEREBY IRREVOCABLY WAIVE ANY RIGHT MAKER AND PAYEE MAY HAVE TO, AND AGREE NOT TO REQUEST, A JURY TRIAL FOR THE ADJUDICATION OF ANY DISPUTE HEREUNDER OR IN CONNECTION WITH OR ARISING OUT OF THIS  NOTE OR ANY TRANSACTION CONTEMPLATED HEREBY.

This Note is governed by and construed in accordance with the laws of the State of Florida, without giving effect to that State's choice of law rules.

IN WITNESS WHEREOF, Maker has executed and delivered this Note as of the date and year first above written.

One Choice Coverage LLC

By: *Jamal Morgan*
Jamal Morgan

Its: CEO
Oct 01 2024 13:58 EDT

By: *Alex Siegel*
Alex Siegel

Its: CTO
Oct 01 2024 14:58 EDT

By: *Victor Padilla*
Victor Padilla

2

20162851.1/52888-00000

**Carson Attachment MM, Page 22 of 26**

Zoho Sign Document ID  3041BA23-YNW29U6ZI_UAD28ZZWK55WA2TPE899V5OQSWBNCEAXU

Its: COO

Oct 01 2024 14:53 EDT

Agreed and Accepted as of
the date first above written.

Innovative Partners L.P.

By: *Arman Motiwalla*

Arman Motiwalla

Its: Chief Operating Officer

Oct 01 2024 15:02 EDT

3

20162851.1/52880-00000

**Carson Attachment MM, Page 23 of 26**

# EXHIBIT "C"



**MITCHELL SILBERBERG & KNUPP LLP**
A LAW PARTNERSHIP INCLUDING PROFESSIONAL CORPORATIONS

Karin G. Pagnanelli
A Professional Corporation
(310) 312-3746 Phone
(310) 231-8346 Fax
kgp@msk.com

December 17, 2024

**VIA E-MAIL ONLY [JAMAL@1WAYMARKETINGLLC.COM; VPADILLA@1WAYMARKETINGLLC.COM; ASIEGEL@1WAYMARKETINGLLC.COM]**

Jamal Morgan, CEO
Alex Siegel, CTO
Victor Padilla, COO
One Choice Coverage LLC

Re:   **Notice of Termination under the Recruiter Agreement Section 16(b) and an Event of Default under the Promissory Agreement**

Dear Mr. Morgan, Mr. Siegel, and Mr. Padilla:

We are litigation counsel for Innovative Partners.  It has come to our attention that all of you willfully and intentionally defrauded Innovative Partners out of $250,000 ("Loan Proceeds"). We hereby terminate the Recruiter Agreement and declare an Event of Default under the Promissory Agreement.  We demand that One Choice Coverage and **each of you individually** immediately return the Loan Proceeds.

Pursuant to the Unsecured Promissory Agreement, dated October 1, 2024, Innovative Partners loaned One Choice Coverage $250K.  Each of you agreed that the "Loan Proceeds shall be used exclusively by [One Choice Coverage] to finance the recruitment of plan participants in health insurance plans sponsored by [Innovative Partners.]" It is clear neither One Choice Coverage, nor any of you individually, intended to use the Loan Proceeds to finance a recruitment plan. Indeed, Mr. Morgan is using the Loan Proceeds for his own personal benefit.  Quite obviously, you all have committed fraud and intentional misrepresented by falsely promising that the Loan Proceeds would be used as part of a health insurance recruitment business.

In addition to committing fraud, intentional misrepresentation and conversion, your conduct is a breach of the Promissory Agreement. See Event of Default (i) (an Event of Default occurs when Once Choice Coverage "failure[s] to use the Loan Proceeds as required under this Note." "Upon the occurrence of an Event of Default, Payee may declare all of the Obligations to be immediately due and payable."  Further, the Loan Proceeds are a "Non-Advance Incentive as defined in the Recruiter Agreement, entered into between the parties on or around Sep 27, 2024." And, because you all have beached the Unsecured Promissory Agreement, One Choice Coverage and Mr. Morgan have also breached the Recruiter Agreement between Innovative Partners and One Choice Coverage LLC and Jamal Morgan, dated September 27, 2024.

2049 Century Park East, 18th Floor, Los Angeles, California 90067-3120
Phone: (310) 312-2000 Fax: (310) 312-3100 Website: WWW.MSK.COM

20384576.1

**Carson Attachment MM, Page 25 of 26**



Jamal Morgan, CEO
December 17, 2024
Page 2

Accordingly, One Choice Coverage and Mr. Morgan's (as a personal guarantor) debts are immediately due and payable.  See Recruiter Agreement 1(I), (L), 8, & 16(b).  Moreover, based on the fraudulent conduct, Innovative is also entitled to punitive damages and attorney's fees.

Innovative Partners takes this matter **very seriously**.  We will use all judicial remedies to ensure Innovative is made whole and that this conduct does not happen to any other unsuspecting business.

We strongly suggest you retain counsel.  All communications must go through me.

Nothing contained in this letter is intended to, nor shall it, constitute a waiver or relinquishment of any rights, claims, defenses, or causes of action possessed by Innovative Partners, all of which expressly are reserved.

Very truly yours,

*Karin Pagnanelli*

Karin G. Pagnanelli
A Professional Corporation of
MITCHELL SILBERBERG & KNUPP LLP

KGP/szm

20384576.1