AGREEMENT FOR PROFESSIONAL ENGAGEMENT

This Agreement for Professional Engagement ("Agreement") made this 4th day of May 2026, between Kaufman Rossin & Co., a Florida Professional Association, with offices at 3310 Mary Street, Suite 501, Miami, Florida 33133 (hereinafter referred to as the "Firm") and Paul Lopez, with offices at 110 SE Sixth Street, Suite 1500, Fort Lauderdale, Florida 33301 (individually and collectively "Client").

It is agreed as follows:

1. SERVICES

The Firm will provide the services for the Client as outlined in Exhibit 1 attached hereto.

2. TERM

This Agreement shall become effective immediately upon its execution and shall continue in force and effect until such time as either party provides the other with notice of its intent to terminate the agreement within a period of not less than thirty days and payment of all fees for services previously rendered has been made. The fees, however, will be subject to periodic reassessment.

Because there are inherent difficulties in recalling or preserving information as the period after an engagement increases, the Client agrees that, notwithstanding the statute of limitations of the State of the Client's domicile, any claim based on this engagement must be commenced within twelve months after performance of the Firm's service, unless the Client has previously provided the Firm with a written notice of a specific defect in the Firm's services that forms the basis of the claim.

3. CHARGES

➢ For the services outlined in Exhibit 1, the Firm's fees will be billed at the discounted rate of $225 per hour

➢ Monthly cloud based accounts payable software costs estimated at $100 (this amount varies depending on the number of accounts, users, and disbursements). The Client will continue to pay directly for the QuickBooks Online ("QBO") account

Any additional agreed upon services will be billed as hourly work will be submitted on the 1st of the month and are due upon receipt. Payment of the first month's fees are due upon commencement of services. A monthly finance charge of 1.5% will be applied to balances 60 days past due.

The agreed upon services as identified above is predicated on transaction volume outlined in Exhibit 1, and the timely completion of requested information, supporting schedules and other documentation, prepared in an accurate and timely manner necessary for the efficient performance of the services by the Firm. Variances from this understanding, including additional services or increased transaction volumes as the business grows, which require additional professional time may cause additional charges, but only

after consultation with the Client. The Firm will also bill the Client for out-of-pocket costs and expenses incurred on this engagement as well as a _five percent (5%) administration and technology fee_. Any additional permissible services requested during or after the term of this Agreement will be billed at our professional rates. The Firm will be entitled to recover from the Client its professional time, at our professional rates, finance charges and expenses, including all reasonable attorney's fees and costs in connection with any litigation, regulatory investigation or inquiry that may arise out of this Agreement, so long as the Firm is not a party to such litigation, investigation or inquiry.

The Client agrees that the Firm's maximum liability to the Client for any gross negligent errors or omissions committed by the Firm in the performance of the engagement will be limited to the amount of the Firm's fees for this engagement, except to the extent determined to result from the Firm's gross negligence or willful misconduct.

The Firm reserves the right to suspend its work due to nonpayment within terms. In the event that the Firm's work is suspended as a result of nonpayment, or for any other reason, the Client agrees that the Firm will not be responsible for the Client's failure to meet government and other filing and submission deadlines, or for penalties or interest that may be assessed, or other damages that may be sustained by the Client or its owners, resulting from the Client's failure to meet said deadlines.

4.   RESPONSIBILITIES

**The Firm's Responsibilities**

The objective of the engagement is to perform outsourced finance and accounting services for the purpose of assisting Client with the management of certain aspects of the business identified below and to prepare financial statements in accordance with the applicable financial reporting framework based on information provided by the Client. The Firm will conduct the engagement in accordance with the Statements on Standards for Consulting Services issued by the American Institute of Certified Public Accountants ("AICPA").

The Firm is not required to, and will not, verify the accuracy or completeness of the information provided for the engagement or otherwise gather evidence for the purpose of expressing an opinion or a conclusion. Accordingly, the Firm will not express an opinion or a conclusion nor provide any assurance on the financial statements.

The engagement cannot be relied upon to identify or disclose any financial statement misstatements, including those caused by fraud or error, or to identify or disclose any wrongdoing within the Client entity or noncompliance with laws and regulations. However, the Firm will inform the appropriate level of management of any material errors and any evidence or information that comes to its attention during the performance of financial statement preparation procedures that fraud may have occurred. In addition, the Firm will inform management of any evidence or information that comes to its attention during the performance of the financial statement preparation procedures regarding any wrongdoing within the Client entity or noncompliance with laws and regulations that may have occurred, unless they are clearly inconsequential.

The Firm, in its sole professional judgment, reserves the right to refuse to perform any procedure or take any action that could be construed as assuming management responsibilities.

**The Client's Responsibilities**

The engagement to be performed is conducted on the basis that the Client acknowledges and understands that the Firm's role is the assistance in management of certain aspects of the business and the preparation of the financial statements in accordance with the applicable financial reporting framework. The Client has the following overall responsibilities that are fundamental to the Firm undertaking the engagement to assist in the preparation the Client's financial statements:

1. The selection of the basis of accounting outlined in Exhibit 1, as the financial reporting framework to be applied in the preparation of the financial statements.
2. The prevention and detection of fraud.
3. To ensure that the Client entity complies with the laws and regulations applicable to its activities.
4. The accuracy and completeness of the records, documents, explanations, and other information, including significant judgments, provided to the Firm for the engagement to prepare financial statements.
5. To provide the Firm with the following:
   a. Documentation, and other related information, that is relevant to the scope of services to be provided;
   b. Additional information that the Firm may request for the purpose of the completing the assignment; and
   c. Unrestricted access to persons within the Client of whom the Firm determines it necessary to make inquiries.

The financial statements will not be accompanied by a report. Client agrees that the financial statements will clearly indicate that no assurance is provided on them.

The Client is responsible for management decisions and functions, and for designating a competent individual, preferably management level, to oversee non-attest services the Firm may provide, including, but not limited to bookkeeping services, financial statement preparation, payroll tax services and income tax services. The Client is responsible for evaluating the adequacy and results of the services performed and accepting responsibility for such services.

The Client acknowledges its responsibility for preparation and timely filing of tax returns and items required to be paid on a timely basis.

The financial statement preparation is intended for the benefit of the Client and will not be planned or conducted in contemplation of reliance by any third party or with respect to any specific transaction. Therefore, items of possible interest to a third party will not be specifically addressed or matters may exist that will be assessed differently by a third party, possibly in connection with a specific transaction.

The Firm may assist with the preparation of the Client's financial statements, but the responsibility for the financial statements remains with the Client. As part of the preparation of the financial statements, the

Firm may propose standard, adjusting, or correcting journal entries to the Client's financial statements. The Client is responsible for reviewing the entries and understanding the nature of any proposed entries, the impact they have on the financial statements and recording such adjustments in the financial statements or otherwise concluding that the effects of the unrecorded adjustments are, both individually and in the aggregate, immaterial to the financial statements taken as a whole. Further, the Client is responsible for designating a qualified management-level individual to be responsible and accountable for overseeing these services.

If the Client intends to publish or otherwise reproduce the financial statements (or make reference to the Firm) in a document that contains other information, the Client agrees to (a) provide the Firm with a draft of the document to read; and (b) obtain the Firm's written approval for inclusion of its report or reference to the Firm before such document is distributed. The Firm, at its discretion, may withhold its consent for inclusion of any financial statements issued by the Firm or reference to the Firm in such document.

The Client agrees not to employ or divert any employee of the Firm. The obligations imposed by this paragraph shall survive the termination of the Agreement and continue for a period of one year following such termination. As liquidated damages for any breach of the obligations imposed by this paragraph, the Client agrees to pay the Firm a fee equal to that individual's annual base compensation at the Firm within 90 days from the time of such breach.

5.   CLIENT ASSISTANCE

In order for the Firm to work as efficiently as possible, it is understood that the Client will provide certain working papers, information, or documentation which shall be discussed with the Client. The services will be completed in as timely a manner as possible consistent with the conditions of the engagement.

6.   CONFIDENTIALITY AND REQUEST FOR INFORMATION

With respect to financial, statistical and personnel data relating to the Client's business which is confidential, and which is submitted to or obtained by the Firm in order to carry out the Agreement, the Firm will instruct its personnel to keep such information confidential.

The Firm may receive requests for information in its possession arising out of this engagement. The requests may come from governmental agencies, courts or other tribunals. If permitted, the Firm will notify the Client of any request for information prior to responding. In certain proceedings an accountant-client privilege may exist. The Client agrees that the Firm is not under any obligation to assert any privilege to protect the release of information. The Client may, prior to the Firm's response to any request, initiate legal action to prevent or limit the Firm's response. Unless the Client promptly initiates such action after the Firm notifies the Client at its last known address as reflected in the Firm's files, the Firm will release the information requested.

In the event the Firm is requested or authorized by the Client or required by government regulation, subpoena, or other legal process to produce the Firm's working papers or the Firm's personnel as witnesses with respect to this engagement the Client will, so long as the Firm is not a party to the

proceeding in which the information is sought, reimburse the Firm for its professional time and expenses, as well as the fees and expenses of the Firm's counsel, incurred in responding to such a request.

The Firm, as well as other accounting firms, participates in a peer review program, covering the Firm's audit and accounting practices. This program requires that once every three years the Firm subjects its system of quality control to an examination by another accounting firm. As part of this process, the other firm will review a sample of the Firm's work. It is possible that the work the Firm performs for the Client may be selected for their review. If it is, they are bound by professional standards to keep all information confidential.

The Firm may from time to time, and depending on the circumstances, use third-party service providers in serving the Client. The Firm may share confidential information about the Client with the service providers but remains committed to maintaining the confidentiality and security of the information. Accordingly, the Firm maintains internal policies, procedures, and safeguards to protect the confidentiality of the Client's information. In addition, the Firm will secure service-level agreements or confidentiality agreements with all service providers to maintain the confidentiality of the Client's information and the Firm will take reasonable precautions to determine that there are appropriate procedures in place to prevent the unauthorized release of confidential information to others. In the event that the Firm is unable to secure an appropriate service level agreement or confidentiality agreement, the Client will be asked to provide consent prior to the sharing of confidential information with the third-party service provider. Furthermore, the Firm will remain responsible for the work provided by any such third-party service providers.

The Client may also be granted access to certain third-party service provider websites and applications. The Client hereby acknowledges and accepts the terms of such service agreements from third-party service provider websites and applications and agrees to maintain compliance with those terms.

The Firm retains ownership of the working papers produced by it in connection with the performance of services under this agreement. Access to these working papers other than described above may be granted to others upon mutual approval of the Client and the Firm.

In connection with this engagement, the Firm may communicate with the Client or others via e-mail transmission. As e-mails can be intercepted and read, disclosed, or otherwise used or communicated by an unintended third party, or may not be delivered to each of the parties to whom they are directed and only to such parties, the Firm cannot guarantee or warrant that e-mails from the Firm will be properly delivered and read only by the addressee. Therefore, the Firm specifically disclaims and waives any liability or responsibility whatsoever for interception or unintentional disclosure or communication of e-mail transmissions or for the unauthorized use of failed delivery of e-mails transmitted by the Firm in connection with the performance of this engagement. In that regard, the Client agrees that the Firm shall have no liability for any loss or damage to any person or entity resulting from the use of e-mail transmissions, including any consequential, incidental, direct, indirect, or special damages, such as loss of revenues or anticipated profits, or disclosure or communication of confidential or proprietary information.

The Client authorizes the Firm to use any information provided to or obtained by the Firm during the engagement for purposes of mailing to the Client: firm newsletters, surveys, published articles, press releases, information concerning firm seminars, non-engagement related services, and announcements related to firm personnel. The duration of this consent is for the entire period of time that the Client is a client of the Firm or until the Client unsubscribes from any newsletters or other information sent by the Firm.

7. ALTERNATIVE DISPUTE RESOLUTION

Parties to this engagement agree that any dispute that may arise regarding the meaning, performance, or enforcement of this agreement will, prior to resorting to litigation, be submitted to mediation upon the written request of any party to the engagement. All mediation initiated as a result of this engagement shall be administered by the American Arbitration Association. The results of this mediation shall be binding only upon agreement of each party to be bound. Costs of any mediation proceeding shall be shared equally by both parties.

In the unlikely event that differences concerning the Firm's services should arise that are not resolved by mutual agreement, to facilitate judicial resolution and save time and expense of both parties, the Firm and the Client agree not to demand a trial by jury in any action, proceeding or counterclaim arising out of or relating to the Firm's services for this engagement.

This Agreement contains the entire understanding of the parties and may not be varied or modified unless in writing and signed by the party to be charged with such change or modification. If any provision of this Agreement is judicially declared to be invalid or unenforceable then the remaining several provisions hereof will remain in full force and effect.

This Agreement shall be governed, and its terms construed in accordance with the laws of the State of Florida applicable to contracts to be performed in that State. The waiver by any party hereto of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach by any party. This Agreement supersedes all proposals, oral or written, and all other communications between the parties relating to the engagement subject matter. The executed Agreement delivered by fax or other electronic means shall be deemed to be the execution and delivery of an original.

KAUFMAN, ROSSIN & CO., P.A.  
3310 Mary Street, Suite 501  
Miami, Florida 33133  

PAUL LOPEZ  
110 SE Sixth Street, Suite 1500  
Fort Lauderdale, Florida 33301  


By:  _____  
        **Scott Berger**

By:  _____  
        **Paul Lopez**


By:  _____  
        **Todd Kesterson**

Title:  _____


Date:  _____

Date:  _____

**Exhibit 1 – List of Services**

- Review and clean up QBO account
- Set up bill.com account and link to QBO account
- Reset bank links once accounts are moved to new bank
- Set up bill pay approval matrix with the Client
- Download transactions and catch up transaction coding
- Reconcile all financial accounts monthly
- Pay bills following the Client's approval
- Prepare monthly reports based on the Client's specifications