**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

**CASE NO. 26-60976-CIV-SINGHAL**

FEDERAL TRADE COMMISSION,

      Plaintiff,

v.

INNOVATIVE PARTNERS, LP, d/b/a
INNOVATIVE HEALTH PLAN or
HEALTHCARE PLAN; AMERICAN
COLLECTIVE, LP, d/b/a
ACLP HEALTH PLAN; HEALTH PLAN
ADMINISTRATORS, LLC; PAPYRUS
GREEN INVESTMENTS LLC; AHMED
IBRAHIM SHOKRY;
And AMANI IBRAHIM SHOKRY;

      Defendants.

_____/

**AHMED SHOKRY AND CORPORATE DEFENDANTS'**
**EXPEDITED MOTION TO MODIFY PRELIMINARY**
**INJUNCTION TO RELEASE FUNDS FOR ATTORNEY FEES**

Defendant Ahmed Shokry and Corporate Defendants Innovative Partner, LP, American

Collective, LP, Health Plan Administrators, LLC, and Papyrus Green Investments, LLC

(collectively, "Corporate Defendants", and with Mr. Shokry, "Moving Defendants"), by and

through counsel, seek an order permitting the release of funds from the asset freeze to allow for

payment of attorneys' fees and costs incurred through the entry of the stipulated protective order

in the amount of $146,707. We anticipate that the Receiver too will seek the release of frozen funds

to support its efforts, and as Judge Leibowitz held in *Click Profit,* reasonable attorneys' fees may

be released from the asset freeze for defense. In support thereof, Moving Defendants state the

following:

## INTRODUCTION AND BACKGROUND

On April 7, 2026, the Federal Trade Commission ("FTC") filed this action.  On April 15, 2026, this Court entered an *Ex Parte* Temporary Restraining Order with Asset Freeze, Appointment of Receiver, Other Relief, and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("TRO"), freezing all Moving Defendants' assets. On April 26, 2026, approximately one-week after Moving Defendants were served by the TRO, along with over a thousand pages of exhibits from the FTC's lengthy (*i.e.*, at least 16 month-long) investigation, Sperling Kenny Nachwalter, LLC ("Sperling") began representing Moving Defendants.

At that time a preliminary injunction hearing had been scheduled for April 29, 2026, with numerous other deadlines imposed requiring Moving Defendants' compliance. Given the exigent circumstances, the serious nature of the allegations (which include possible criminal implications), and the impending deadlines—Sperling contacted the FTC on April 27, 2026[1], to agree to extend the existing TRO while counsel could staff the matter to handle the various aspects in a compressed timeframe. The FTC refused.

Sperling then moved this Court to extend the TRO for three weeks and sought an attorney with significant experience at the FTC to further assist. Thus, the Moving Defendants engaged Steve Wernikoff and his firm, Honigman, LLC. As his attached declaration establishes, Mr. Wernikoff has extensive experience with similar FTC investigations, as he was a long-standing member of the FTC's Chicago Office, which filed this action.

While this Court granted Moving Defendants an extension of three weeks [ECF No. 48], the FTC had staked out the position that no such extension should be granted, *inter alia*, because

---

[1]    Prior to April 26, 2026, Defendant Ahmed Shokry and the Corporate Defendants were aided by counsel who had previously represented certain of the Corporate Defendants in ongoing litigation, including several lawsuits filed against call-centers involved in this matter.

documents were thrown away at the office shared by Corporate Defendants Innovative and American Collective. [See ECF No. 45.] As a result of the FTC's submission, the Court ordered a sanctions hearing to proceed the next day—April 29. [ECF No. 48.] At that hearing, the Court determined that the evidence did not support sanctions. However, the Court shortened the schedule, requiring a preliminary injunction hearing on May 6, 2026. [ECF No. 50.]

Counsel for Moving Defendants contacted the FTC the next day, on April 30, to discuss the possibility of a stipulated permanent injunction. On May 1, 2026, counsel for Moving Defendants discussed the matter with both the FTC and the Receiver.

Shortly after those discussions, on May 1, the FTC served a variety of expedited discovery requests on Moving Defendants. That same day, the Receiver moved to compel and for sanctions. [ECF No. 51.] While noting that many of the subjects of that motion were already in Receiver's possession, Moving Defendants' counsel worked all weekend to answer Receiver's requests. The Receiver withdrew its motion. [ECF No. 57.]

At the same time, counsel for Moving Defendants worked through the weekend to revise a potential stipulated permanent injunction, and sent it to the FTC on Sunday, May 3. The parties negotiated several terms, ultimately coming to agreement on a stipulated preliminary injunction. [ECF No. 56.] The FTC additionally agreed to withdraw a deposition and extend the date of requested expedited discovery responses.

In large part, the stipulation and the withdrawal of the Receiver's motion was made possible by counsel to Moving Defendants' work to supply the FTC and the Receiver with the Sworn Financial Statements of Ahmed Shokry, Financial Statements for each of the Corporate Defendants, and attached supporting documentation. Counsel to Moving Defendants also undertook to conduct a factual investigation and respond to each of the issues identified in the

motion to compel by the Receiver, and to supply significant information. Indeed, counsel for Moving Defendants also coordinated with counsel for Amani Shokry so that the stipulated preliminary injunction could be agreed to by all parties.

Counsel to Moving Defendants undertook this work without a retainer and without payment because of the freezing of all Defendants' access. Without access to assets, Defendants have no ability to pay for counsel.

Therefore, counsel here moves and seeks that the stay be lifted to pay these fees. From April 26 to May 6, Sperling had seven attorneys spend 134.9 hours at its regular rates to represent Moving Defendants for a total of $114,787. *See* Declaration of Jeffrey T. Foreman, Esq., attached as Exhibit 1. Honigman spent 30 hours at $1,064 per hour at discounted rates, totaling $31,920. *See* Declaration of Steven Wernikoff, Esq., attached as Exhibit 2. This totals $146,707 through the entry of the stipulated preliminary injunction.

The amounts sought in this matter are reasonable for the defense of an FTC civil enforcement action in the Southern District of Florida, and Moving Defendants request that the Court exercise its discretion to modify the Stipulated Preliminary Injunction to allow for the release and payment of Defendants' attorneys' fees, just as Moving Defendants expect that the Receiver will seek to have its fees paid from frozen assets. Given the amount of time counsel for Moving Defendants have expended to reach this position, they request that the Court consider this on an expedited basis, because if counsel does not receive reasonable fees, they will be compelled to seek to withdraw. On the other hand, if Moving Defendants' counsel can continue representation, counsel will continue to proceed efficiently. Indeed, at Moving Defendants' direction, Moving Defendants' counsel have requested that FTC staff provide Moving Defendants a draft final permanent injunction for consideration, which would resolve this matter entirely.

**DISCUSSION**

This motion and the attached affidavits track those submitted in a recent matter pending the Southern District of Florida involving the FTC—*FTC v. Click Profit, LLC*, No. 1:25-CV-20973, 2025 WL 2256563, at *2-4 (S.D. Fla. June 16, 2025). In *Click Profit*, Judge Leibowitz confronted a nearly identical situation and faced nearly identical arguments from the FTC. There, as here, the Court entertained a motion to lift an asset freeze imposed by a temporary restraining order, involving assertions and "sworn facts included in the motion for the preliminary injunction—many of which stand unrebutted and establish a record of fraudulent, unfair and deceptive business practices employed against many people who will be looking to the frozen funds to mitigate their losses." *Id*. at *3.

> The Court set out the standards for paying defense counsel from frozen funds:
>
> A district court has the equitable power and discretion to decide whether attorney's fees should be paid from frozen funds. *See Commodity Futures Trading Comm'n v. Am. Metals Exch. Corp.*, 991 F.2d 71, 79 (3d Cir. 1993) (stating the decision to release frozen funds to pay attorney's fees "is entrusted to the discretion of the district court"). "Just as this Court has the authority to freeze assets in a civil enforcement action, it also has the discretion to unfreeze those assets when equity requires." *Fed. Trade Comm'n v. Liberty Supply Co. v. Liberty Supply Co.*, No. 4:15-CV-829, 2016 WL 4182726, at *2 (E.D. Tex. Aug. 8, 2016) (cleaned up). When determining whether to release frozen assets, the Court must consider: (1) the plaintiff's interest in protecting the assets for consumer restitution; and (2) the defendant's interest in having access to the funds. *See id.; see also Sec. & Exch. Comm'n v. Quiros*, 2016, No. 1:16-CV-21301, WL 3032925, at *1 (S.D. Fla. May 27, 2016) ("The Court balances the ability to provide restitution to the victims with the defendants' ability to defend themselves prior to a finding of liability.")

The Court further noted: "To receive fees from frozen assets, the movant must [first] establish entitlement to the payment from the frozen funds and the receivership estate. Then, the court will examine the reasonableness of the requested attorney's hourly rate and hours expended." *Id*. (cleaned up, citations omitted).

5

After evaluating circumstances substantially similar to those found here, Judge Leibowitz determined there was an entitlement to the payment of attorneys' fees from frozen funds and granted the request to modify the asset freeze to release fees in the amount of $211,698 to two defense law firms through the preliminary injunction phase. *See also Fed. Trade Comm'n v. Legion Media, LLC*, No. 8:24-CV-1459-JLB-AAS, 2024 WL 5456293, at *1–2 (M.D. Fla. July 1, 2024) (agreed order for a $50,000 retainer "to pay for legal services" and another "$200,0000 …. to pay for legal and accounting services"); *FTC v. U.S. Mortgage Funding*, No. 11-CV-80155, 2011 WL 2293377, at *1 (S.D. Fl. June 9, 2011) (finding that lifting an asset freeze was not contrary to the purpose of the preliminary injunction, "insofar as it pertains to the frozen assets" the purpose of the injunction "was to prevent the defendants from improperly wasting or concealing their assets before the conclusion of this case" and that allowing defendants "to use some of the frozen assets to fund their defense does not undermine the essential purpose of the Order").[2]

Similarly, the Stipulated Preliminary Injunction should be modified here to release reasonable attorneys' fees. Counsel had to prepare for and appear at three hearings in the course of a week—two of them contested, and one with significant sanctions at risk. All the while, counsel

---

[2] Courts have specifically found it appropriate to release frozen assets for attorneys' fees in the context in which they are initially being sought here. As Judge Leibowitz noted in *Click Profit*:

District courts have found that the equities weigh in favor of unfreezing a defendant's assets to pay attorney's fees through the preliminary injunction stage. *See, e.g., F.T.C. v. IAB Mktg. Assocs., LP*, No. 12-61830-CIV, 2013 WL 2433214, at *3 (S.D. Fla. June 4, 2013) ("[T]he Court believed that fairness dictated granting the IAB Defendants a reasonable amount to pay attorney fees through the preliminary-injunction hearing. ... [I]t was fair to provide this money because in deciding whether to enter a preliminary injunction, the Court must evaluate the likelihood that the FTC will prevail on the action's merits and balance the equities."); *S.E.C. v. Dowdell*, 175 F. Supp. 2d. 850, 856 (W.D. Va. 2001) (modifying asset freeze to allow for attorney's fees because "[t]he court does not believe that it could achieve a fair result at the preliminary injunction hearing were it to deny defendants the ability to retain counsel"). *Click Profit*, 2025 WL 2256563 at *2.

continued working to submit financial information to the FTC and Receiver in the format requested, negotiated and agreed to a preliminary injunction, and obtained significant information for the Receiver, ultimately to the benefit of the consumers for whom the FTC is seeking restitution. Counsel to Moving Defendants attempted to work efficiently, even though the emergency nature of the initial retention, and the multiple events since, required fast paced responses. As demonstrated by the attached affidavit of counsel (Exhibits 1 and 2), counsel to Moving Defendants involved associates to the extent possible and asked the lowest rate counsel appropriate for the work to undertake tasks insofar as the pace allowed.

Additionally, the rates sought by the experienced counsel involved here are reasonable and consistent with prevailing rates for attorneys in South Florida and the rates that courts in this district have approved. *See, e.g., Infogroup Inc. v. Office Depot, Inc.*, No. 23-CV-80358, 2024 WL 4110526, at *2-3 (S.D. Fla. Aug. 21, 2024) (finding reasonable $1,050 and $900 hourly rates for senior partners, and $800-$850 rates for associates to be reasonable in complex civil litigation matters); *United States Sugar Corp. v. Com. & Indus. Ins. Co.*, No. 22-21737-CIV, 2023 WL 4953191, at *4-5 (S.D. Fla. Aug. 3, 2025) (approving hourly rates of $1,058, $995, and $932); *Click Profit*, 2025 WL 2256563, at *3 (citing *U.S. Sugar Corp.* in approving requested hourly rates of $895 for partners and $415 for associates). The hourly rates sought by Moving Defendants' counsel likewise reflect prevailing market rates, and are rates typically charged by those counsel, or in Honigman's case, reflect a discount.[3]

Moving Defendants seek the release of $146,707 in funds. If the Court would like to see unredacted bills in camera, in addition to the affidavits attached here, the undersigned stand ready

---

[3] Indeed, as noted in Exhibit 2, Wernikoff Declaration, Honigman has discounted its rates for typical work by 20% to align the rates with the prevailing rates for attorneys in this district.

to submit those to the Court.[4] Respectfully, we believe that a review of the work will demonstrate that Counsel undertook only necessary tasks, on a breakneck schedule required by the FTC's refusal to agree to a short extension and completed the tasks with a high degree of efficiency—all while dealing with an aggressive schedule. Counsel should be compensated for such work.

<strong><u>CONCLUSION</u></strong>

For the reasons set forth here, Moving Defendants seek that the asset freeze be lifted to order a release of $146,707 for attorneys' fees through the entry of a stipulated preliminary injunction, or such other relief as the Court deems proper. Moving Defendants also request that this motion be expedited so that they can determine whether they should seek a release from the Court and withdraw their appearance.

Dated: May 8, 2026

Respectfully submitted,

*/s/ Jeffrey T. Foreman*
Jeffrey T. Foreman (FBN 612200)
SPERLING KENNY NACHWALTER, LLC
Four Seasons Tower - Suite 1100
1441 Brickell Avenue
Miami, FL 33131
Telephone: (305) 373-1000
Facsimile: (305) 372-1861
jtf@sperlingkenny.com

*Attorney for Moving Defendants*

---

[4]   Likewise, should the FTC wish to see redacted entries, those will be provided. Moving Defendants suggest, however, that the time spent on these matters is facially reasonable given the amount of work undertaken and the pace it was accomplished.