UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FEDERAL TRADE COMMISSION,

               Plaintiff,

vs.

INNOVATIVE PARTNERS, LP, d/b/a
INNOVATIVE HEALTH PLAN or
HEALTHCARE PLAN; AMERICAN
COLLECTIVE, LP, d/b/a
ACLP HEALTH PLAN; HEALTH PLAN
ADMINISTRATORS, LLC; PAPYRUS
GREEN INVESTMENTS LLC; AHMED
IBRAHIM SHOKRY; AMERICAN
COLLECTIVE, LP; PAPYRUS
GREEN INVESTMENTS LLC; and
AMANI IBRAHIM SHOKRY;

               Defendants.

_____/

CASE NO. 26-60976-CIV-SINGHAL

**RECEIVER'S RESPONSE IN OPPOSITION TO AHMED SHOKRY
AND CORPORATE DEFENDANTS' EXPEDITED MOTION TO MODIFY
PRELIMINARY INJUNCTION TO RELEASE FUNDS FOR ATTORNEY FEES**

Paul O. Lopez in his capacity as Receiver (the "Receiver") for Innovative Partners, LP d/b/a Innovative Health Plan or Healthcare Plan; American Collective, LP, d/b/a ACLP Health Plan; Health Plan Administrators, LLC; and Papyrus Green Investments, LLC (collectively, the "Receivership Entities"), as well as Ahmed Ibrahim Shokry ("Shokry"), by his undersigned counsel, files this Response in Opposition to Ahmed Shokry and Corporate Defendants' Expedited Motion to Modify Preliminary Injunction to Release Funds for Attorney Fees ("Motion") [D.E. # 66] and states:

**INTRODUCTION**

1.      On April 15, 2026, this Court entered the Temporary Restraining Order with Asset Freeze, Appointment of a Receiver, Other Relief, and Order to Show Cause Why a Preliminary

1

#3511024v1-221495.0001

Injunction Should Not Issue [D.E. #13] (the "TRO"), appointing Paul O. Lopez as Receiver (the "Receiver") for the Receivership Entities.

2.      On May 7, 2026, the Court entered the Stipulated Preliminary Injunction [D.E.# 64] (the "Preliminary Injunction"), which was agreed upon by Ahmed and Amani Shokry and the Receivership Entities.

3.      On May 8, 2026, Shokry and the Receivership Entities (collectively, the "Moving Defendants") filed the Motion, which requests that the Court unfreeze their assets to allow them to pay their attorneys' fees and costs incurred through the Preliminary Injunction in the amount of $146,707. [D.E. #66, at 1]. For the reasons below, the Court should deny the Motion.[1]

## I.      <u>**The Motion Fails to Establish Sufficient Facts to Justify Unfreezing of Estate Assets.**</u>

As stated by this Court:

> When determining whether to release frozen assets, the Court must consider: (1) the plaintiff's interest in protecting the assets for consumer restitution; and (2) the defendant's interest in having access to the funds. *See* [Fed. Trade Comm'n v. Liberty Supply Co. v. Liberty Supply Co., No. 4:15-CV-829, 2016 WL 4182726, at *2 (E.D. Tex. Aug. 8, 2016)]; *see also Sec. & Exch. Comm'n v. Quiros*, 2016 WL 3032925, at *1 (S.D. Fla. May 27, 2016) ("The Court balances the ability to provide restitution to the victims with the defendants' ability to defend themselves prior to a finding of liability.").

*FTC v. Click Proft, LLC*, No. 1:25-CV-20973, 2025 WL 2256563, *2 (S.D. Fla. June 16, 2025).

As Judge Leibowitz recognized in *Click Profit*, unfreezing assets for payment of attorney's fees is entirely within the Court's discretion. *Id.* ("A district court has the equitable power and discretion to decide whether attorney's fees should be paid from frozen funds." (citing *Commodity Futures Trading Comm'n v. Am. Metals Exch. Corp.*, 991 F.2d 71, 79 (3d Cir. 1993))); *see also*

---

[1] The Motion fails to contain the required certificate of conferral and should be denied on that basis alone. *See* S.D. Fla. L.R. 7.1(a)(3).

*F.T.C. v. RCA Credit Servs., LLC*, No. 8:08-CV-2062-T27MAP, 2008 WL 5428039, at *4 (M.D. Fla. Dec. 31, 2008) ("[A] court may exercise its discretion to forbid or limit payment of . . . attorney fees out of frozen assets." (citing *Commodity Futures Trading Comm'n v. Noble Metals Int'l, Inc.*, 67 F.3d 766, 775 (9th Cir.1995))). The Moving Defendants bear the burden of establishing "entitlement to the payment from the frozen funds and the receivership estate." *See Click Profit, LLC*, 2025 WL2256563, at *2 (quoting *Fed. Trade Comm'n v. Vision Online, Inc.*, No. 6:23-CV-1041-WWB-DCI, 2024 WL 1050518, at *2 (M.D. Fla. Mar. 11, 2024)).

While the Motion dutifully recites the applicable balancing test, it subsequently presents no facts, arguments, or points of equity that would permit the Court to apply the balancing test in the Moving Defendants' favor. The Moving Defendants present no reason why any of the approximately $7.6 million dollars thus far seized by the receivership should be liquidated to pay the Moving Defendants' legal fees, when there may be at least $91 million in claims from the victims of the pre-receivership fraud. *See* Preliminary Injunction [D.E. #64, at 3].

When frozen assets are less than the amount needed to compensate consumers for their losses, a district court can properly refuse to unfreeze assets. *RCA Credit Servs., LLC*, 2008 WL 5428039, at *4. One purpose of the asset freeze is to provide redress to consumers and deny wrongdoers access to their ill-gotten gains. *Id*. "Moreover, while parties to litigation generally may spend their resources as they see fit to retain counsel, they may not use their victims' assets to hire counsel to help them retain the fruits of their violations." *Id*. (citing *S.E.C. v. Quinn*, 997 F.2d 287, 289 (7th Cir. 1993)).

Indeed, courts within this district have repeatedly declined to unfreeze assets for payment of attorney's fees when the defendants did not make the requisite showing that the assets sought to be released were acquired independent of the fraudulent enterprise or when the frozen assets

3

#3511024v1-221495.0001

fall well short of the amount needed to compensate the victims for their losses. *See, e.g.*, *Guzman Mila v. Big Steve's Deli LLC*, No. 20-60367-CIV, 2021 WL 2784553, at *3–4 (S.D. Fla. Apr. 9, 2021), *report and recommendation adopted sub nom. Wilson v. Big Steve's Deli LLC*, No. 0:20-CV-60381, 2021 WL 2783877 (S.D. Fla. July 2, 2021); *Consumer Fin. Prot. Bureau v. Orion Processing, LLC*, No. 15-23070-CIV, 2016 WL 10516183, at *2 (S.D. Fla. Apr. 29, 2016); *F.T.C. v. IAB Mktg. Associates, LP*, No. 12-61830-CIV, 2013 WL 2433214, at *2–3 (S.D. Fla. June 4, 2013); *Fed. Trade Comm'n v. Clean Credit Report Services, Inc.*, No. 08-22922-CIV, 2010 WL 11505557, at *4–5 (S.D. Fla. July 23, 2010); *F.T.C. v. 1st Guar. Mortg. Corp.*, No. 09-61840-CIV, 2010 WL 1854084, at *2 (S.D. Fla. May 3, 2010), *aff'd sub nom. F.T.C. v. Lalonde*, 545 F. App'x 825 (11th Cir. 2013), and *aff'd sub nom. F.T.C. v. Lalonde*, 545 F. App'x 825 (11th Cir. 2013).

The Court should do the same here. In this case, the amount of frozen assets is significantly less than the amount that would compensate the alleged victims for their losses. *See RCA Credit Servs.*, 2008 WL 5428039, at *4; *see also Noble Metals Int'l*, 67 F.3d at 775 ("According to the record, the frozen assets fell far short of the amount needed to compensate [defendants'] customers. This was reason enough in the circumstances of this case for the district court, in the exercise of its discretion, to deny the attorney fee application."). Notably, "once a court enters a preliminary injunction, it has determined that the FTC is likely to prevail on the merits"—a factor that should be considered when determining whether the receivership estate's funds will be sufficient to compensate the alleged victims. *See IAB Marketing Assocs.*, 2013 WL 2433214, at *3. Although the Court in *IAB Marketing* granted the defendants' first motion to unfreeze $75,000 in attorney's fees incurred through the preliminary injunction hearing, the Court denied the subsequent request, noting that the equities weighed against unfreezing assets. *See id.* at *3–4. Like here, the asset freeze in *IAB Marketing* was "not unfair" to the defendants' attorneys "because these attorneys

4

knew that the Court's Temporary Restraining Order (TRO) . . . froze the IAB Defendants' assets before the attorneys agreed to represent them, and therefore these attorneys assumed the risk of not getting paid." *Id.* at \*4 (internal footnote omitted).

Here, the Moving Defendants (particularly Shokry) do not even represent that they are otherwise without the present financial means to compensate their attorneys, which would surely be a threshold showing required to persuade this Court to release funds for their benefit rather than preserve that benefit for their victims. To date, Shokry has not provided the Receiver with a sworn financial statement or any other information about his individual assets, claiming the Fifth Amendment protection as a shield. As noted above, the Moving Defendants fail to articulate why any factors or equities weigh in their favor to unfreeze assets. *See Clean Credit Report Servs.*, 2010 WL 11505557, at \*4.

As it stands, the Motion is merely a *pro forma* recitation of applicable law with an attached bill for legal services. It should be denied. At the very least, however, if the Court is inclined to grant the Motion, then the Receiver requests that the grant be conditioned on the Moving Defendants providing the Receiver with a sworn affidavit or sworn financial statement indicating that they have no other source of unfrozen funds from which they may pay their attorneys.

II.    **The Reasonableness of the Attorneys' Fees Asserted Cannot Be Determined from the Motion Anyway.**

Even if the Court generously presumes that the Motion offers a coherent argument in favor of unfreezing assets, the receivership funds can only be unfrozen to pay **reasonable** attorney fees. *See Click Profit*, 2025 WL 2256563, at \*3–4. The Motion does not support finding that the fees claimed are reasonable under the controlling Eleventh Circuit case law.

"[T]he starting point in any determination for an objective estimate of the value of a lawyer's services is to multiply hours reasonably expended by a reasonable hourly rate." *Norman*

*v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). "The next step in the computation of the lodestar is the ascertainment  of reasonable hours. *Hensley* teaches  that  'excessive,  redundant  or  otherwise unnecessary' hours should be excluded from the amount claimed." *Id.* at 1301 (citing *Hensley*, 461 U.S. at 434). "In other words, the Supreme Court requires fee applicants to exercise 'billing judgment.'" *Id.* (citing *Hensley*, 461 U.S. at 437). "This must necessarily mean that the hours excluded are those that would be unreasonable to bill to a client and therefore to one's adversary *irrespective of the skill, reputation or experience of counsel.*" *Id.* (citing *Hensley*, 461 U.S. at 434). "In making adjustments to hours claimed, the district court is charged with deducting for redundant hours. *Redundant hours generally occur where more than one attorney represents a client*." *Id.* at 1301–02 (emphasis added); *see also In re Home Depot Inc.*, 931 F.3d 1065, 1087 (11th Cir. 2019) (applying the *Norman* standard).

Here, the Court cannot grant the Motion without first seeing the Moving Defendants' specific time entries for fees claimed, which are not attached to their Motion. While the Receiver acknowledges that attorneys should be paid for their work, he remains deeply concerned and not entirely convinced that over 134.9 in attorney hours asserted by Sperling Kenny Nachwalter, LLC and an additional 30 hours by Honigman LLP are "reasonable" in light of the short time frame during which that work was performed. *See* [D.E. # 66-1, 66-2]. Instead of providing the Court with timesheets for hours spent and work performed so that the Court may determine the reasonableness of the time spent, the attorneys simply rely upon broad summaries.

With *eight* attorneys working on this matter, the Moving Defendants' claimed fees of more than $146,000 for a few weeks of legal representation undoubtedly contain redundant/duplicative work, unreasonable time spent on tasks, or non-billable work—none of which should be

<div align="center">6</div>

#3511024v1-221495.0001

compensated. But the Receiver and the Court are unable to determine as much without actually seeing the time entries. Although the Moving Defendants offer in a footnote to provide the Court with "unredacted bills in camera," Mot., at 7, the Court should not grant the Motion without first allowing the Receiver to see unredacted time entries and have the opportunity to object to the fees claimed.

Accordingly, because the Moving Defendants have not carried their burden of demonstrating that the fees sought are reasonable, the Court should deny their Motion.

**WHEREFORE**, Paul Lopez in his capacity as Receiver requests that this Court enter an Order (i) denying the Motion, and (ii) granting such other and further relief as may be just and equitable. If the Court is inclined to grant the Motion, then the Receiver requests that the Court's order require (i) Moving Defendants to provide the Receiver with a sworn affidavit or sworn financial statement indicating that they have no other source of unfrozen funds from which they may pay their attorneys; and (ii) Moving Defendants to provide the Receiver with redacted time entries for the attorneys' fees claimed in the Motion and grant the Receiver a reasonable time to object to those entries.

**Dated this 14th day of May, 2026**

<div style="margin-left:50%">

TRIPP SCOTT, P.A.
As Counsel to the Receiver
110 S.E. 6th Street, 15th Floor
Ft. Lauderdale, FL 33301
Phone: (954) 525-7500

By: /s/Charles M. Tatelbaum
Charles M. Tatelbaum, Esquire
Florida Bar No. 177540
cmt@trippscott.com
David A Ray, Esquire
Florida Bar No. 13871
dar@trippscott.com
aaa@trippscott.com

</div>

7

#3511024v1-221495.0001

8

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 14th day of May 2026, I electronically filed the foregoing

document via this Court's CM/ECF system which provided a true copy to all those registered to

receive such notice.

<div align="right">

By: /s/ Charles M. Tatelbaum
David Ray, Esquire
Florida Bar No. 13871

</div>

8

#3511024v1-221495.0001